**Heidi L. Mandt, OSB #953459**
**hmandt@williamskastner.com**
WILLIAMS KASTNER
805 SW Broadway, Suite 2440
Portland, OR 97205-3317
Phone: (503) 228-7967
Fax: (503) 222-7261
*Attorneys for Defendants Grand Management*
*Services, Jerry Mascolo, Leondra Coleman, and*
*Dawn Cockrum*

The Honorable Michael Simon

## UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **PATSY JAY,** | Case No.  3:23-cv-656- SI |
| Plaintiff, | GRAND MANAGEMENT SERVICES AND JERRY MASCOLO, LEONDRA COLEMAN, AND DAWN COCKRUM'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| **GRAND MANAGEMENT SERVICES, INC., EVERGREEN GARDENS LIMITED PARTNERSHIP, JERRY MASCOLO, LEONDRA COLEMAN, and DAWN COCKRUM,,** | Pursuant to Fed. R. Civ. P. 56 |
| | ORAL ARGUMENT REQUESTED |
| Defendants. | |

Pursuant to Fed.R.Civ. P. 56, defendants Grand Management Services, Inc., Jerry

Mascolo, Leondra Coleman, and Dawn Cockrum, by and through their attorneys, hereby move

the Court for an order granting summary judgment on all claims asserted by Plaintiff against

them, or, in the alternative, for partial summary judgment as the law so requires.

Page 1 -   GRAND MANAGEMENT SERVICES AND
          JERRY MASCOLO, LEONDRA COLEMAN,
          AND DAWN COCKRUM'S MOTION FOR
          SUMMARY JUDGMENT

4857-2362-7766.1

## I.  INTRODUCTION AND RELIEF REQUESTED

Pursuant to Fed.R.Civ.P. 56, Defendants Grand Management Services, Inc., Jerry Mascolo, Leondra Coleman, and Dawn Cockrum (collectively referred to as GMS) move this Court for the entry of summary judgment against Plaintiff's Complaint and all claims asserted against the defendants.  GMS further seeks summary dismissal of the individual defendants.

## II.  STATEMENT OF FACTS

Plaintiff Patsy Jay ("Plaintiff") is a tenant at Evergreen Gardens, an apartment complex in Tillamook, Oregon. (ECF No. 1, ¶5). Plaintiff identifies as a person with a disability in that she struggles with mobility and uses a wheelchair on a regular basis.[1]  (ECF No.1, ¶¶13,14). The property is owned by Defendant Evergreen Gardens Limited Partnership and managed by defendant Grand Management Services, Inc.   (ECF No. 1, ¶¶ 6,7).

Evergreen Gardens receives a federal rural development subsidy and is, therefore, subject to USDA rural housing regulations.  (Deposition of Kristin Smith, 68:17-19[2]; Deposition of Leondra Coleman, 16:3-14[3]).  As such, GMS operates according to a comprehensive set of written policies, procedures and training relating to fair housing, in compliance with applicable federal, state and local laws. (Smith Depo., 52:9-10).

When there are issues involving a tenant, GMS must comply with the Rural Development rules and regulations.  (Smith Depo., 15:18-23).  GMS has and does investigate all tenant-on-tenant issues. (Smith Depo., 16:2-6).  The investigation includes speaking with the

---

[1] It is uncontested here that Plaintiff qualifies as a person with a disability.
[2] Attached as Exhibit A to the Declaration of Heidi L. Mandt.
[3] Attached as Exhibit B to the Declaration of Heidi L. Mandt.

Page 2 -    GRAND MANAGEMENT SERVICES AND
JERRY MASCOLO, LEONDRA COLEMAN,
AND DAWN COCKRUM'S MOTION FOR
SUMMARY JUDGMENT

**Williams Kastner**
805 SW Broadway, Suite 2440
Portland, OR 97205-3117
Telephone: (503) 228-7967• Fax (503) 222-7261

4857-2362-7766.1

involved parties and any witnesses, getting a police report if there is one and then determine the

next steps.  (Smith Depo. 16:7-12).  If there is no documented physical violence, GMS will

issue a 14/30 notice, which allows the offender 14 days to cure their behavior or face a 30-day

eviction.  (Smith Depo., 18:20-21). Only if there is documented physical contact does the issue

rise to the level of allowing an eviction for "substantial harm" reasons.  (Smith Depo., 15:1-10;

16:14-16).  Specifically:

> Because you can't evict just for waving a gun or threatening to hurt someone or kill someone or to punch someone.· It has to be, you did it.· And I know that because I've been in this business 30 years and I've tried.· You have to issue a 14/30, that is the RD regulations.· There must be a cure period in subsidized housing, unless there is substantial harm.· Like I said, an assault or a rape or physical action.· It has to have taken place.

(Smith Depo., 37:4-12).

   1.    The Individual Grant Management Defendants

   Defendant Dawn Cockrum is the former Senior Compliance Specialist for GMS.

(Deposition of Dawn Cockrum,[4] 11:6-9).  While she has worked for Neighborworks Umpqua

for over 20 years, she spent two years – from September 1, 2019, through November 10, 2021

– with GMS.  (Cockrum Depo., 10:15-11:5).  As the Senior Compliance Specialist, Cockrum:

> [O]versaw the recertifications, making sure they were being done on time and the paperwork and gave the approval to the managers to close them out.· I reviewed all the violation notices, make sure the language is correct and we were doing what we were supposed to.· And then Jerry Mascolo would be the ultimate overseer of approving those.

(Cockrum Depo., 11:12-18).  Ms. Cockrum estimates that, while she did not review every

"violation notice" that went out, she probably reviewed 85 percent of them.  (Cockrum Depo.,

---

[4] Attached as Exhibit C to the Declaration of Heidi L. Mandt.

Page 3 -    GRAND MANAGEMENT SERVICES AND
JERRY MASCOLO, LEONDRA COLEMAN,
AND DAWN COCKRUM'S MOTION FOR
SUMMARY JUDGMENT

4857-2362-7766.1

Williams Kastner
805 SW Broadway, Suite 2440
Portland, OR 97205-3117
Telephone: (503) 228-7967• Fax (503) 222-7261

12:1-16).  Ms. Cockrum is very familiar with the Fair Housing laws and what investigation

needs to be done when there is a tenant complaint.  (Cockrum Depo., 15:17-16:19).  Ms.

Cockrum did not, however, get involved with responding to tenant complaints until the

investigation had been completed and some action needed to be taken by GMS.  (Cockrum

Depo., 17:19-18:4).

Jerry Mascolo started working for Grand Management Services as a site manager in

approximately 2014.  (Mascolo Depo., 13:11-22[5]).  He is the current portfolio manager for

GMS.  (ECF No. 1, ¶8).

Finally, Leondra Coleman is a former GMS employee and was the onsite property

manager at Evergreen Gardens for about one year beginning September 15, 2020.  (Coleman

Depo., 27:15-20).   In this role, Ms. Coleman "lived on the property.· Helped manage the

grounds, I guess, like upkeep the grounds.· And then I had my office portion of the job, which

was recertification for all the tenants, filing complaints, maintenance work orders every day."

(Coleman Depo., 15:3-9).

2.    The John McKnight "Incident"

Plaintiff alleges that on July 12, 2021, she was sexually assaulted in her apartment by a

fellow tenant, John McKnight.  (ECF No. 1, ¶¶16-17). Specifically, Plaintiff alleges that

McKnight returned from walking Ms. Jay's dog and was inside Ms. Jay's apartment standing

near the door "ready to take his leave." (Deposition of Patsy Jay, 23:1-25[6]). Plaintiff alleges

that Mr. McKnight made an off-color comment about another tenant's daughter and that is

---

[5] Attached as Exhibit D to the Declaration of Heidi L. Mandt
[6] Attached as Exhibit E to the Declaration of Heidi L. Mandt

**Williams Kastner**
805 SW Broadway, Suite 2440
Portland, OR 97205-3117
Telephone: (503) 228-7967• Fax (503) 222-7261

when, according to Plaintiff, everything went bad. (Jay Depo., 23:16).  At that point, Mr.

McKnight exposed himself to her, all within a matter of seconds:

> Q.     Okay.· So you screamed.· He has stepped back and put ·his penis back in
> his pants.· Did he zip up his pants?
>
> A.     Yep.· Yes.

(Jay Depo., 27:2-28:7, 32:15-20).

Plaintiff testified that Mr. McKnight had a gun on his person during the time of this

incident, but acknowledges that she was aware that McKnight had a concealed weapons permit

and carried the gun as a matter of course.  (Jay Depo., 32:2-3). In speaking to the police shortly

after the incident, Plaintiff declined to press charges.  (Jay Depo., 86:11-13).

Leondra Coleman, the onsite manager at Evergreen Gardens, was notified of the

incident by the Tillamook Police Department, not by Plaintiff.  (Coleman Depo., 39:3-5).  Even

so, Plaintiff reports that Ms. Coleman was "[v]ery professional" in responding to the incident,

and changed Ms. Jay's door locks the very day of the incident, "right then and there."  (Jay

Depo., 39:5-14, 40:5-7; Coleman Depo., 43:23-44:9).  Plaintiff also reported the incident to

Grand Management on July 15, 2021, in the form of a formal written complaint.[7]

There were lots of communications within GMS relating to Patsy Jay's report.  It was

made clear to Plaintiff that she needed:

> [T]o communicate as clear as possible with Grand Management to notify them
> what was going on, filing everything that they can, rekey Patsy's unit, and that
> they weren't able to do anything.· And specific was that we were not able to
> move forward with any sort of process with John without some type of police
> report or like charges being pressed against John.

---

[7] Attached as Exhibit F to the Declaration of Heidi L. Mandt

Page 5 -    GRAND MANAGEMENT SERVICES AND
JERRY MASCOLO, LEONDRA COLEMAN,
AND DAWN COCKRUM'S MOTION FOR
SUMMARY JUDGMENT

4857-2362-7766.1

**Williams Kastner**
805 SW Broadway, Suite 2440
Portland, OR 97205-3117
Telephone: (503) 228-7967• Fax (503) 222-7261

(Coleman Depo., 45:6-14).

After investigating Plaintiff's report, GMS issued a 14/30 Notice of Lease Violation to McKnight advising that the alleged assaultive behavior was a violation of his lease and giving him a 14-day opportunity to cure the behavior prior to GSM filing an eviction action against him. (Coleman Depo., 47:16-18). GMS was hamstrung and unable to issue a 24-hour eviction notice because there was no physical harm to Plaintiff and, in that situation, RD rules require that he be given the opportunity to cure his behavior. (Smith Depo., 18:20-21, 37:4-12, 47:9-13). Throughout its investigation, GMS was never able to confirm any physical contact between McKnight and Plaintiff. (Smith Depo., 75:24-76:4). In fact, regardless of the number of complaints, GMS was never able to confirm any physical contact between McKnight and any other resident of Evergreen Gardens. (Smith Depo., 81:15-19). If evidence of physical contact between McKnight and another tenant, either through GMS's own investigation or through a police investigation, GMS would have then been able to issue McKnight a 24-hour "substantial harm" eviction notice. (Smith Depo., 81:20-82:1).

Prior to the incident in her apartment, it was well-known around Evergreen Gardens that Plaintiff and McKnight were best friends. (Smith Depo., 78:24-79:2). McKnight walked Plaintiff's dog twice a day. (Jay Depo., 17:22-23). Plaintiff often wrote McKnight notes telling him she loved him and that he was her best friend. (Smith Depo., 79:3-7). In fact, Plaintiff was aware of a previous allegation of assault against McKnight alleged by a former employee of Evergreen Gardens and former girlfriend of McKnight's and was prepared to

Page 6 -    GRAND MANAGEMENT SERVICES AND
JERRY MASCOLO, LEONDRA COLEMAN,
AND DAWN COCKRUM'S MOTION FOR
SUMMARY JUDGMENT

Williams Kastner
805 SW Broadway, Suite 2440
Portland, OR 97205-3117
Telephone: (503) 228-7967• Fax (503) 222-7261

testify as a character witness on McKnight's behalf.  (Jay Depo., 20:13-23, 20:17-25, 21:1-12; Smith Depo., 79:24-80:2).

Ultimately, there is some questions as to whether the incident with John McKnight really occurred.  Shortly after the "incident" occurred, another Evergreen Gardens tenant reported to on-site manager Leondra Coleman that Plaintiff had made the whole situation up. (Coleman Depo., 48:15-20).  Ms. Coleman, in turn, reported what she had learned to the Tillamook County Police Department.  (Coleman Depo., 49:19-21).

Despite having admitted to another resident at Evergreen that the incident with McKnight never happened, Plaintiff obtained a protection order against McKnight on July 16, 2021.[8]  Pursuant to the restraining order, McKnight could not be within 500 feet of Plaintiff's apartment.  (Exhibit G).  McKnight was arrested on August 31, 2021, for violating the terms of the protective order against him.[9]  Because he was unable to comply with the distance requirements of the protective order, McKnight moved out of the apartment complex in October 2021.  (Smith Depo., 75:16-19).

3.     14/30 Notices Issued to Plaintiff

On August 20, 2021, GMS issued Plaintiff a 14/30 Notice of Intent to Evict, specifying various issues with Plaintiff's tenancy giving rise to a potential breach of Plaintiff's lease agreement, including repeated verbal harassment by Plaintiff's caregivers, complaints from other tenants about Plaintiff watching them with binoculars, issues regarding shared space with McKnight given the protective order, and for repeated violations of a rule about her Plaintiff's

[8] Attached as Exhibit G to the Declaration of Heidi L. Mandt
[9] Attached as Exhibit H to the Declaration of Heidi L. Mandt

Page 7 -    GRAND MANAGEMENT SERVICES AND JERRY MASCOLO, LEONDRA COLEMAN, AND DAWN COCKRUM'S MOTION FOR SUMMARY JUDGMENT

4857-2362-7766.1

**Williams Kastner**
805 SW Broadway, Suite 2440
Portland, OR 97205-3117
Telephone: (503) 228-7967• Fax (503) 222-7261

walker being allowed on the front porch.[10]  (Coleman Depo., 67:8-24; 70:25-75:15).  Identical to the one issued to McKnight, the Notice gave Plaintiff fourteen days to discuss the issues with management and to cure the violations, advising that management intended to evict within 30 days if the violations were not cured.  (Cockrum Depo., 69:17-23).

On August 25, 2021, Plaintiff wrote management at GMS a 12 page letter contesting the 14/30 notice.[11]  In that letter, for the first time, Plaintiff asked for a reasonable accommodation to keep her walker on her porch.  (Exhibit J, p. 8).

There were no further notices issued to Plaintiff until March 2023 associated with her failure to provide the necessary recertification paperwork to maintain her eligibility to receive subsidized housing.  (Smith Depo., 71:4-16).  This is an annual process by which each tenant is required to fill out certain paperwork and provide certain information to verify their housing eligibility.  (Smith Depo., 70:2-9).  The tenant has 14 days to complete the required paperwork.  (Smith Depo., 70:15-22).  And, if the paperwork is not returned as required:

> Q.·· And if she did not respond within those 14 days, what would occur?
>
> A.·· She would get the violation notice that she received, and there's also a 60-day notice of recertification and a 30 day.· Those 60 days and 30 days are standard forms.· They're in the RD handbook, they're required.· It basically states if you don't get the information in, your rent is going to go to market.

(Smith Depo., 71:8-16).  Without completing the paperwork, Plaintiff would have lost her subsidy.  (Smith Depo., 71:17-20).  If GMS does not send out the required notices to get the paperwork completed, it would be in violation of RD requirements.  (Smith Depo., 73:9-14).

---

[10] Attached as Exhibit I to the Declaration of Heidi L. Mandt
[11] Attached as Exhibit J to the Declaration of Heidi L. Mandt

Page 8 -    GRAND MANAGEMENT SERVICES AND
JERRY MASCOLO, LEONDRA COLEMAN,
AND DAWN COCKRUM'S MOTION FOR
SUMMARY JUDGMENT

**Williams Kastner**
805 SW Broadway, Suite 2440
Portland, OR 97205-3117
Telephone: (503) 228-7967• Fax (503) 222-7261

There was nothing special or untoward about Plaintiff getting the notice and the issuance of the notice had absolutely nothing to do with Plaintiff's HUD complaint. (Smith Depo., 74:20-25). Plaintiff eventually provided the documents and the violations were cleared. (Smith Depo., 56:7-17).

## III.  POINTS AND AUTHORITIES

A.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case, or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden of persuasion at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. *Id.* at 585-87.

**Williams Kastner**
805 SW Broadway, Suite 2440
Portland, OR 97205-3117
Telephone: (503) 228-7967• Fax (503) 222-7261

In supporting a factual position, a party must "cit[e] to particular parts of materials in the record . . .; or show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co*., 475 U.S. at 585. "[T]he requirement is that there be no genuine issue of material fact. . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original).

The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). The nonmoving party cannot "defeat summary judgment with allegations in the ECF No.1, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Nor may the nonmoving party merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc*., 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888–89, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

/ / /

/ / /

B.    PLAINTIFF'S FIRST CLAIM FOR RELIEF FOR A FAILURE TO
       ACCOMMODATE CLAIM LACKS MERIT.

While Plaintiff's First Claim for Relief indicates that relief is being sought for

"disability discrimination," it is really a failure to accommodate claim.  (*See*, ECF No.1, ¶48).

The FHA makes it unlawful to "discriminate against any person ... in the provision of

services or facilities in connection with [his] dwelling, because of a handicap" of that person or

any person associated with that person. 42 U.S.C. § 3604(f)(2). Discrimination includes "a

refusal to make reasonable accommodations in rules, policies, practices, or services, when such

accommodations may be necessary to afford [a disabled] person equal opportunity to use and

enjoy a dwelling."  42 U.S.C. § 3604(f)(3)(B); 24 C.F.R. § 100.204.  An accommodation is

"reasonable" if it does not impose "undue financial and administrative burdens" or constitute a

"fundamental alteration in the nature of [defendants'] program." *Giebeler v. M & B Assocs*.,

343 F.3d 1143, 1157 (2003) (*quoting Southeastern Commun. Coll. v. Davis*, 442 U.S. 397, 410

(1979).)

To establish a *prima facie* case for failure to make a reasonable accommodation, the

plaintiff must show that: (1) he or she suffers from a "handicap" as defined by 42 U.S.C. §

3602(h); (2) the defendants knew or should reasonably be expected to know of the plaintiff's

handicap; (3) the accommodation of the handicap "may be necessary" to afford the plaintiff an

equal opportunity to use and enjoy the dwelling; (4) the accommodation is reasonable; and (5)

the defendants refused to make such accommodation. *DuBois v. Ass'n of Apartment Owners of

2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006).  "The reasonable accommodation inquiry

is highly fact-specific, requiring case-by-case determination." *United States v. Cal. Mobile Home Park Mgmt., Co.*, 107 F.3d 1374, 1380 (9th Cir. 1997).

Summary judgment is appropriate because there was never any denial of a reasonable accommodation request by GMS. It is undisputed that when Plaintiff made a request for an accommodation to keep her walker on her front porch, it was granted.

Pursuant to Section 2R of the "Ground Rules" incorporated into every GMS lease agreement, all tenants were obligated to comply with the following rule, among others:

> R. Patios and Decks. Patios and entrances to apartments are to be kept clean and free of debris and cobwebs. Only patio type furniture and planters are allowed on patios or decks. * * * Storage of household items, including refrigerators and freezers, is not permitted outside of units.[12]

Despite her lease obligations, it was Plaintiff's "preference" to keep her walker on her porch because she uses this device to stabilize herself and avoid falling from the porch while tending to her plants and because it was more convenient to use when transporting large objects. (ECF No.1, ¶25). Plaintiff did not, however, seek accommodation from GMS to keep her walker on her porch, at least not until she received a written warning requiring her to remove it. (Smith Depo., 54:20-25).

On or about May 13, 2021, Plaintiff was given notice of what items she was able to keep on her front porch. (Coleman Depo., 71:11-22; Jay Depo., 71:7-15). Subsequently, on August 17, 2021, management again noticed that Plaintiff was keeping her walker on her front porch in violation of the rules. Plaintiff was subsequently issued a Notice of Intent to Evict – also referred to as a 14/30 notice – on August 20, 2021, addressing her lease violation as well

---

[12] Attached as Exhibit K to the Declaration of Heidi L. Mandt

Page 12 - GRAND MANAGEMENT SERVICES AND
JERRY MASCOLO, LEONDRA COLEMAN,
AND DAWN COCKRUM'S MOTION FOR
SUMMARY JUDGMENT

4857-2362-7766.1

**Williams Kastner**
805 SW Broadway, Suite 2440
Portland, OR 97205-3117
Telephone: (503) 228-7967• Fax (503) 222-7261

as several other issues she needed to address.  (Exhibit I; Smith Depo., 54:15-19; Coleman Depo., 70:25-75:17).

Plaintiff admits that she never made a verbal request for a reasonable accommodation to keep her walker on her front porch. (Jay Depo., 83:15-25, 84:22-25). While Plaintiff *asserts* that she filled out a reasonable accommodation form and turned it into the office, she does not know when she did so and there is no written documentation of such a request being made. (Smith Depo., 54:20-25).  She does admit, however, that she never verbally made such a request to GMS.  *(*Jay Depo., 83:15-25, 84:1-10).

In fact, in the thousands of pages of documentary evidence produced in this case, the only evidence of a written accommodation request relating to Plaintiff's walker is in a 12-page letter she sent to management on August 25, 2021, ***after*** the issuance of the 14/30 notice on August 20, 2021.  (Smith Depo., 54:20-23; Coleman Depo., 81:1-9).  When GMS received Plaintiff's learned of her request to be accommodated in that regard, they granted her request. (Smith Depo., 54:20-25).

GMS cannot be liable, as matter of law, for failing to respond to a request for accommodation when one was never made.   When the request was finally made, it was granted.  Plaintiff's "failure to accommodate" cause of action fails, making summary judgment appropriate.

C.    GMS DID NOT CREATE NOR PERPETUATE A HOSTILE LIVING ENVIRONMENT FOR PLAINTIFF.

Plaintiff's Second Cause of Action alleges a "hostile living environment."  Specifically, Plaintiff alleges that GMS "created a hostile living environment for Ms. Jay by permitting her

Page 13 -   GRAND MANAGEMENT SERVICES AND
JERRY MASCOLO, LEONDRA COLEMAN,
AND DAWN COCKRUM'S MOTION FOR
SUMMARY JUDGMENT

**Williams Kastner**
805 SW Broadway, Suite 2440
Portland, OR 97205-3117
Telephone: (503) 228-7967• Fax (503) 222-7261

4857-2362-7766.1

to be harassed and intimidated based on her sex and by failing to take prompt remedial action reasonably certain to end the harassment after they knew or should have known about the harassment." (ECF No.1, ¶25). While GMS disputes that it has liability for any tenant-on-tenant harassment perpetuated by McKnight or Jay, it does not matter. There is still insufficient evidence that Plaintiff was subjected to a hostile living environment.

To proceed with a hostile living environment claim, the plaintiff must demonstrate: (1) she is a qualified individual with a disability; (2) she was subject to unwelcome harassment; (3) the harassment was based on a disability or request for accommodation; (4) the harassment was sufficiently severe or pervasive to alter the plaintiff's living conditions and create an abusive environment; and (5) either the harassment was committed by a landlord or his agent/employee, or the landlord knew or should have known of the third-party harassment and had the power to correct it.[13] *Neudecker v. Boisclair Corp.*, 351 F.3d 361, 364-65 (8th Cir. 2003). *See, Hicks v. Makaha Valley Plantation Homeowners Ass'n*, 2015 U.S. Dist. LEXIS 85101, *31 (D. Haw. June 30, 2015) (collecting cases); *see also, DiCenso v. Cisneros*, 96 F.3d 1004, 1008 (7th Cir. 1996) (recognizing a claim for a hostile housing environment as a result of sex discrimination by applying Title VII standards).

---

[13] Plaintiff contends that, at the time of the July 2021 incident, GMS was "aware of at least two prior similar incidents of sexual assault and intimidating behavior by John McKnight against female tenants at the premises." (ECF No. 1, ¶18). Plaintiff may not, however, predicate her claims of discrimination based on any actions directed at other tenants. What may have gone on between McKnight and another tenant is insufficient to establish an FHA violation in regard to Plaintiff's claim of tenant-on-tenant harassment. *Johnson v. Brenneke*, 2022 WL 981295, at *3 (D. Or. Feb. 23, 2022), *report and recommendation adopted* 2022 WL 980879 (D. Or. Mar. 31, 2022).

Page 14 -   GRAND MANAGEMENT SERVICES AND
             JERRY MASCOLO, LEONDRA COLEMAN,
             AND DAWN COCKRUM'S MOTION FOR
             SUMMARY JUDGMENT

**Williams Kastner**
805 SW Broadway, Suite 2440
Portland, OR 97205-3117
Telephone: (503) 228-7967• Fax (503) 222-7261

4857-2362-7766.1

While the behavior Plaintiff claims to have been directed towards her could be classified as ill-mannered and rude, there is no evidence that any of McKnight's behavior was due to Plaintiff's disability.  Nor is there any evidence that Plaintiff was subjected to "sufficiently severe and pervasive" harassment which unreasonably interfered with Plaintiff's use and enjoyment of her residence.  Plaintiff's cause of action fails on the third and fourth elements.

    1.    <u>No Action of McKnight Was Based on Plaintiff's Disability.</u>

As a threshold matter, before even determining whether McKnight's alleged behavior was severe or pervasive, the Court must determine whether conduct he engaged in includes the necessary disability-related connotations to be actionable.  *See*, *Pardo-Pena*, 2023 WL 2202515, at *7 (C.D. Cal., January 26, 2023).

    **a.  There is Insufficient Evidence as to Alleged Incidents to Give Rise to a Claim.**

Plaintiff identified four allegedly harassing scenarios engaged in by McKnight: "pretending to shoot at [her] apartment" and "pantomiming an assault" while looking at her apartment (*Jay Dep.*, 41:6-9); standing outside her window at night (Jay Depo., 68:10-11); making a single comment to the effect of "are you sure you're not talking too much" (Jay Depo., 69:20-21); and, finger shooting gestures when McKnight would drive by in his truck. (Jay Depo., 48:11-12).

Each of the alleged incidents described by Plaintiff lack sufficient details, such as the date the incidents occurred, necessary to create a genuine issue of material fact. *See, FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving

**Williams Kastner**
805 SW Broadway, Suite 2440
Portland, OR 97205-3117
Telephone: (503) 228-7967• Fax (503) 222-7261

affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."); *Ford v. West*, 222 F.3d 767, 777 (10th Cir. 2000) (affirming summary judgment in a hostile work environment case where the plaintiff's claim was "vague and conclusory, without reference to specific dates or circumstances").

While Plaintiff did mention one instance of McKnight's bad behavior to the on-site property manager, neither Plaintiff nor Coleman can confirm a date that this conversation took place. (Coleman Depo*.*, 10-13; Jay Depo., 42:14-19). Plaintiff did not submit a formal complaint to management regarding the finger guns incident. In fact, Plaintiff never submitted a written complaint, regarding ***any*** of the allegedly harassing behavior by McKnight following the July 12, 2021, incident. (Jay Depo., 77:8-14). Plaintiff kept no notes of the allegedly harassing interactions, and cannot give specific dates for any harassing contact. (Jay Depo., 68:12-21, 69:6-7, 84:9-17). No formal written complaint was ever lodged against McKnight, a crucial step in GMS's investigation of Plaintiff's allegations. (Coleman Depo., 75:18-25).

Even if more specific information concerning the incidents was provided, none of the alleged incidents constitute actionable disability discrimination.

### b. Any Alleged Harassment was Not "Based Upon" Plaintiff's Disability

Nor is there any evidence that the alleged harassment was due to Plaintiff's disability. Harassment based upon a disability includes "negative or offensive remarks or jokes about a person's disability or need for a workplace change, and other verbal or physical conduct based on a person's disability." www.eeoc.gov/youth/disability-discrimination#Q1 "*Based upon a person's disability*" is the crux of the Court's evaluation.

Page 16 -   GRAND MANAGEMENT SERVICES AND
            JERRY MASCOLO, LEONDRA COLEMAN,
            AND DAWN COCKRUM'S MOTION FOR
            SUMMARY JUDGMENT

4857-2362-7766.1

**Williams Kastner**
805 SW Broadway, Suite 2440
Portland, OR 97205-3117
Telephone: (503) 228-7967• Fax (503) 222-7261

Plaintiff's own lack of McKnight's standing by or even peering into Plaintiff's windows sufficient to establish a claim of disability discrimination. *See, McGee v. Poverello House*, 2021 WL 3602157, at *23 (E.D. Cal. Aug. 13, 2021). Nor is his pretending to shoot at Ms. Jay's apartment, pantomiming an assault and making finger shooting gestures. Precedent makes clear that tenant behavior does not fall within the ambit of the FHA if it is "mean-spirited, but ... not inherently discriminatory." *See, Johnson v. Brenneke*, 2022 WL 981295, at *6 (D. Or. Feb. 23, 2022), *report and recommendation adopted*, 2022 WL 980879 (D. Or. Mar. 31, 2022). *See also*, *Neudecker v. Boisclair Corp.*, 2005 WL 1607409, *2 (D. Minn. July 7, 2005) (granting summary judgment on remand in regard to incidents of harassment that were "unrelated to [the plaintiff's] OCD"). Rude or boorish behavior by a neighbor is simply not actionable discrimination. *See, Honce v. Vigil*, 1 F.3d 1085, 1090 (10th Cir.1993) (rejecting hostile housing environment claim that was based, in part, on "arguments over plumbing, stepping stones and a fence"); *see also, Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'") *quoting Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)).

Because there is no evidence that McKnight's alleged harassment of Plaintiff was based on her disability, summary judgment is appropriate.

/ / /

/ / /

/ / /

**Williams Kastner**
805 SW Broadway, Suite 2440
Portland, OR 97205-3117
Telephone: (503) 228-7967• Fax (503) 222-7261

2.    <u>The Alleged Harassment was Neither Severe Nor Pervasive</u>

Taking the Court's analysis to the fourth prong of the applicable test, there is no

evidence that Plaintiff was subjected to "sufficiently severe and pervasive" harassment which

unreasonably interfered with Plaintiff's use and enjoyment of her residence.

"Harassment is severe or pervasive if it objectively interferes with the enjoyment of the

premises or inhibits the privileges of rental." *Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901

F.3d 856, 862 (7th Cir. 2018) *citing DiCenso,* 96 F.3d at 1008 ). "It is not sufficient if the

harassment is isolated or trivial." *Honce,* 1 F.3d at 1090.  "[W]hether an environment is

'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may

include the frequency of the discriminatory conduct; its severity; whether it is physically

threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

interferes [with a housing environment]." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993);

s*ee Wetzel*, 901 F.3d at 862; *DiCenso*, 96 F.3d at 1008.

The behavior about which Plaintiff complains occurred over a very short time frame –

between July 12, 2021[14] (the initial incident), and August 31, 2021.  (ECF No.1, ¶¶ 20, 22).

Over this three month period, Plaintiff contends that McKnight stood at her window at night,

made finger shooting gestures towards her and pretended to shoot at her apartment.  Plaintiff

does not provide any evidence as to how often or for how long these behaviors occurred.

Because the allegedly harassing conduct described by Plaintiff was infrequent and of a short

---

[14] While the initial encounter may be defined as sexual harassment, a single incident of sexual
harassment is insufficient to establish a claim under the FHA.  *See, e.g. Dominguez-Curry v. Nev.
Transp. Dep't*, 424 F.3d 1027, 1034 (9th Cir. 2005) ("Simple teasing, offhand comments, and isolated
incidents" insufficient to amount to discriminatory conduct).

Page 18 -   GRAND MANAGEMENT SERVICES AND
JERRY MASCOLO, LEONDRA COLEMAN,
AND DAWN COCKRUM'S MOTION FOR
SUMMARY JUDGMENT

4857-2362-7766.1

duration, the required showing of severity is heightened. *See, Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir. 1991) ("[T]he required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct.") (citation omitted).

Plaintiff contends that, on July 15, 2021, McKnight stood outside Plaintiff's apartment and made "threatening hand gestures imitating a shooting."  (ECF No. 1, ¶20).  Then, between July 15 and August 31, "on multiple occasions" McKnight stood "at a distance in front of Ms. Jay's window and made threatening hand gestures imitating the use of firearms and 'beating.'" (ECF No. 1, ¶22).  Plaintiff does not contend that these behaviors occurred hourly, daily, weekly or even monthly or that they occurred between August 31 and October 15, 2021, when McKnight moved from Evergreen Gardens.  In fact, there is no evidence that these behaviors occurred once or more than once.

Plaintiff cannot establish that McKnight's behavior created a hostile housing environment. *See, Westendorf v. W. Coast Contractors of Nev., Incorp.*, 712 F.3d 417, 422 (9th Cir. 2013) (affirming the district court's grant of summary judgment in favor of the defendant on a Title VII hostile work environment claim because four "crude and offensive remarks," including comments about breast sizes, tampons and orgasms, and gender-based stereotypes, were not "sufficiently severe or pervasive"); *see also McGee*, *supra*, 2021 WL 3602157 at *22 (four sex-based comments by another tenant within a 10 month period at a women's shelter were inadequate to establish the fourth prima facie element).  Viewing the record in the light

**Williams Kastner**
805 SW Broadway, Suite 2440
Portland, OR 97205-3117
Telephone: (503) 228-7967• Fax (503) 222-7261

most favorable to Plaintiff, there is simply insufficient evidence to raise a triable issue of fact

on the hostile living environment cause of action.  Summary judgment is warranted.

D.    THERE IS NO COMPETENT EVIDENCE THAT GMS TOOK ANY ACTION FOR
      THE PURPOSE OF INTERFERING WITH PLAINTIFF'S FHA RIGHTS.

To make out a claim under Section 3617, a plaintiff must show that the defendant's

actions affected the "exercise or enjoyment of ... any right granted or protected" by provisions

of the FHA.  *Morris v. W. Hayden Ests. First Addition Homeowners Ass'n, Inc*., 104 F.4th

1128, 1143 (9th Cir. 2024).  It is Plaintiff's burden to demonstrate that (1) that she engaged in a

protected activity, (2) an adverse housing consequence was casually linked to that activity and

(3) resulting damage.  *San Pedro Hotel Co., Inc. v. City of Los Angeles*, 159 F.3d 470, 477 (9th

Cir.1998).  Here, Plaintiff alleges that GMS retaliated against her for "having exercised and

enjoyed her Fair Housing rights…" when she complained about John McKnight and obtained a

restraining order against him.  (ECF No. 1, ¶¶55-58).  Even assuming *arguendo* that filing for a

protective order and filing a police report qualify as a "protected activity," there is no

competent evidence from which a reasonable factfinder could conclude that GMS issued the

two 14/30 day notices with the intent to "coerce, intimidate, threaten or interfere" with

Plaintiff's exercise of those rights.

In the context of a Section 3617 claim, the alleged adverse action must be in the form of

"coerc[ion], intimidat[ion], threat[s], or interfere[nce]."  42 U.S.C. §3617.  The statute does not

provide any definition for these statutory terms.  Therefore, in determining what the terms

means, "we look first to the plain language of the statute, construing the provisions of the entire

law, including its object and policy, to ascertain the intent of Congress." *Northwest Forest Res.*

**Williams Kastner**
805 SW Broadway, Suite 2440
Portland, OR 97205-3117
Telephone: (503) 228-7967• Fax (503) 222-7261

*Council v. Glickman*, 82 F.3d 825, 830 (9th Cir.1996) (internal quotation marks and citation

omitted). "Interference" is "the act of meddling in or hampering an activity or process."

*Walker v. City of Lakewood*, 272 F.3d 1114, 1129 (9th Cir. 2001), *citing* Webster's Third New

Int'l Dict. 1178 (14th ed.1961). To "coerce" is "to compel to an act or choice by force, threat,

or other pressure." *Id*. "Coercion" includes "the application of sanctions or force by a

government [usually] accompanied by the suppression of constitutional liberties in order to

compel dissenters to conform." *Id.* Finally, a "threat" is "an expression to inflict evil, injury, or

other damage on another." *Id.*

      GMS did not engage in a series of actions designed to coerce or intimate Patsy Jay into

discontinuing her activities as those pertained to John McKnight. Nor would there be any

plausible reason for it to want to do so.

      As to the August 2021 notice, Plaintiff contends:

> Just one month after Ms. Jay had reported the incident with Mr. McKnight, on
> August 20, 2021, Ms. Coleman, on behalf of Defendant Grand Management,
> issued Ms. Jay a termination notice with a 14-day right to cure. As the bases for
> the termination, the notice alleged that Ms. Jay had a walker on her front patio;
> followed Mr. McKnight with her phone and threatened to call the police on him
> in the community room; invaded other tenants' privacy by watching them with
> binoculars; and, that her caregiver had demanded management act based on the
> restraining order and respond to Ms. Jay's complaints of harassment by Mr.
> McKnight.

(ECF No. 1, ¶28). Under Plaintiff's retaliation theory, she was issued a 14/30 notice because

she obtained a protective order against McKnight and made at least one complaint about

McKnight to the onsite property manager, Leondra Coleman. Yet, once the issues raised in the

notice were cured, there was no further issue and eventually McKnight moved from the

premises.

Page 21 -  GRAND MANAGEMENT SERVICES AND
           JERRY MASCOLO, LEONDRA COLEMAN,
           AND DAWN COCKRUM'S MOTION FOR
           SUMMARY JUDGMENT

**Williams Kastner**
805 SW Broadway, Suite 2440
Portland, OR 97205-3117
Telephone: (503) 228-7967• Fax (503) 222-7261

As to the issuance of the Notice in March 2023, Plaintiff ties it to her filing of a HUD complaint in August 2022, almost eight months earlier. (ECF No. 1, ¶¶35-38). However, the March 2023 notice related to a paperwork issue which was promptly corrected by Plaintiff and no further action was taken. (Smith Depo., 56:7-17).

The record is wholly devoid of any evidence demonstrating that, following the incident with McKnight, that Plaintiff was treated in a manner different from any other resident of Evergreen Gardens.[15]  Eviction proceedings were never commenced.  Plaintiff's rent was never increased.  She was not denied further housing.  Maintenance requests did not go responded to or delayed.  Plaintiff was not denied use of the common areas.  Her apartment was not allowed to fall into disrepair while the rest of the complex was maintained.  All-in-all, there was no adverse action taken against Plaintiff.

Plaintiff has created a harassment/intimidation claim out of whole cloth.  No evidence supports a cause of action under 42 U.S.C. Section 3017.  Accordingly, GMS respectfully requests summary judgment on Plaintiff's Third Claim for Relief.

E.     PLAINTIFF'S NEGLIGENCE CLAIM FAILS AS A MATTER OF LAW.

Every discussion of Oregon negligence law invariably starts with reference to the following passage from *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 17 (1987):

> [U]nless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff. The role of the court is what it ordinarily is in cases involving the evaluation of particular situations under

---

[15] In fact, Plaintiff admits that, when the property manager learned of McKnight's behavior, the locks were changed on her apartment "then and there".  (Jay Depo. 45:5-11).

GRAND MANAGEMENT SERVICES AND
JERRY MASCOLO, LEONDRA COLEMAN,
AND DAWN COCKRUM'S MOTION FOR
SUMMARY JUDGMENT

4857-2362-7766.1

**Williams Kastner**
805 SW Broadway, Suite 2440
Portland, OR 97205-3117
Telephone: (503) 228-7967• Fax (503) 222-7261

> broad and imprecise standards: to determine whether upon the facts alleged or
> the evidence presented no reasonable factfinder could decide one or more
> elements of liability for one or the other party.

*Fazzolari* abandoned the familiar duty-breach-causation analysis in common law negligence

cases in favor of a foreseeability-causation approach:

> [T]he more traditional duty-breach analysis in an ordinary negligence claim is
> supplanted by the question whether the defendant's conduct resulted in a
> foreseeable and unreasonable risk of harm of the kind that the plaintiff suffered.

*Towe v. Sacagawea, Inc.*, 357 Or 74, 86 (2015); *Solberg v. Johnson*, 306 Or 484, 490-91 (1988)

(stating that the elements of a negligence claim include "that defendant's conduct caused a

foreseeable risk of harm, that defendant's conduct was unreasonable in light of the risk, [and]

that plaintiff was within the class of persons and plaintiff's injury was within the general type of

potential incidents and injuries that made defendant's conduct negligent").

     This unique Oregon approach is subject to the caveat that duty is not always subsumed

in a foreseeability analysis when "the nature and scope of the duty owed by the defendant to the

plaintiff can be created, defined, or limited based on, among other things, the relationship

between or status of the parties. *Towe*, 357 Or at 86. "So understood, [the court's] threshold

inquiry is whether plaintiff has invoked a particular status or relationship that affects [its]

analysis." *Piazza v. Kellim*, 360 Or 58, 71 (2016). Here, it is undisputed that the landlord-tenant

relationship is a special relationship. *McPherson v. Oregon Dept. of Corrections*, 210 Or App

602, 609-10 (2007).

     In cases, involving the failure to warn about the actions of a third person, a defendant is

not subject to liability absent proof that the defendant knew or reasonably should have known

that the particular person presented a risk of harm of the type that befell the plaintiff.  *See, e.g.,*

**Williams Kastner**
805 SW Broadway, Suite 2440
Portland, OR 97205-3117
Telephone: (503) 228-7967• Fax (503) 222-7261

*McAlpine v. Multnomah County,* 166 Or App 472, 483 (2000) (defendant knew the parolee's

violent history); *Brown v. Washington County*, 163 Or App 362, 372 (1999) (defendant knew

its inmate had a violent history, was agitated, and was likely to go to the address where the

plaintiff was injured); *Allstate Ins. Co. v. Tenant Screening Services, Inc.*, 140 Or App 41, 51-

52 (1996) (plaintiff's sexual assault by a third-party tenant whom the defendant had negligently

screened as having a "clear record" was not foreseeable as a matter of law in part because the

plaintiff did not plead facts showing that the assailant had been convicted of any offenses

suggesting "an inclination to commit the serious sexual crimes of sodomy and sexual abuse").

Here, *Miller v. Tabor West Investment Co.,* 223 Or App 700 (2007), is instructive as to

how the rule plays out within the landlord-tenant relationship. In *Miller*, plaintiff claimed that

his landlord was liable for an off-premises assault at a convenience store by another tenant of

the same apartment complex, who had a known  "criminal history" and "psychiatric

problems." *Id.* at 713, 715. Plaintiff alleged that the landlord was negligent failing to warn the

other tenants of the tenant's allegedly violent nature and in failing to protect plaintiff from him

after he assaulted her in her apartment.  *Id.* at 713. In *Miller*, the landlord knew that the tenant

had psychiatric problems, and was a former Marine who had recently been released from the

state hospital where he was held after assaulting a woman. Still, the Court concluded that:

> [E]ven recognizing that the concept of foreseeability refers to generalized risks
> of the type of incidents and injuries that occurred rather than predictability of the
> actual sequence of events, in the absence of more specific knowledge of the risk
> of the type of harm that befell plaintiff, we conclude that defendants' conduct
> constituted "mere facilitation" of Woods's intervening criminal conduct. *Thus,*
> *as a matter of law, Woods's attack on plaintiff was not a 'reasonably*
> *foreseeable' consequence of defendants' failure to warn or otherwise protect*

Page 24 -   GRAND MANAGEMENT SERVICES AND
JERRY MASCOLO, LEONDRA COLEMAN,
AND DAWN COCKRUM'S MOTION FOR
SUMMARY JUDGMENT

**Williams Kastner**
805 SW Broadway, Suite 2440
Portland, OR 97205-3117
Telephone: (503) 228-7967• Fax (503) 222-7261

4857-2362-7766.1

> *plaintiff. Defendants cannot therefore be liable for damages based on that failure.*

*Id.* at 713–14. (Emphasis added).  (Internal citations omitted).

In affirming dismissal of the case at summary judgment, the court noted that [a]lthough foreseeability is generally a fact question for the jury and thus not a likely candidate for summary judgment, that rule is not absolute." *Id*. at 711. The court framed the facts of the facts of the case, a tenant sexually assaulted by a fellow tenant in their apartment, as unforeseeable to the plaintiff's landlord as a matter of law.

It has been explained that, in our society it is foreseeable that crimes may occur and that the criminals perpetrating them may cause harm. *Buchler v. State By & Through Oregon Corr. Div.*, 316 Or 499, 511 (1993).  Thus, in a general sense, it is foreseeable that anyone whose conduct may in any way facilitate the criminal in committing the crime has played some part in the resulting harm. *Id.*  But, mere "facilitation" of an unintended adverse result, where intervening intentional criminality of another person is the harm-producing force, does not cause the harm so as to support liability for it.  *Id.* at 511-512.  The same outcome is warranted in this case.

GMS is not going to present McKnight as a boy scout, as he certainly was not. However, despite the complaints lodged against McKnight by other tenants, most were "he said/she said" situations that could never be verified and no criminal charges were ever lodged against McKnight.  (Smith Depo., 58:16-21).

None of the complaints GMS received about McKnight were related to his exposing himself or sexually assaulting anyone.  As in *Miller*, nothing about his past behavior gave GMS

**Williams Kastner**
805 SW Broadway, Suite 2440
Portland, OR 97205-3117
Telephone: (503) 228-7967• Fax (503) 222-7261

a reason to believe that McKnight would be sexually indecent with Plaintiff, who most individual defendants knew to be a great friend and defender of McKnight's. McKnight was frequently at and inside Plaintiff's apartment, and had his own key. (Coleman Depo., 44:3-17). In fact, some days, McKnight would let himself into Plaintiff's apartment before she was even up! (Jay Depo., 40:10-11).

Accordingly, GMS asks the Court to dismiss Plaintiff's common law negligence claims as alleging "mere facilitation" on the part of GMS, for which they cannot be liable as a matter of law.

F.     DISMISSAL OF THE INDIVIDUAL GMS DEFENDANTS IS ALSO WARRANTED.

Plaintiff's theory of liability against the individual defendants is unclear but appears grounded in negligence. Plaintiff alleges:

> All Defendants were negligent with regard to either the lack of policies regarding sexual harassment at Grand Management, or their failure to follow such policies. ***Defendants violated their duty of care as managers, employers and as residential property owners***.

> Defendants' unlawful conduct caused Ms. Jay to suffer loss and injury, mental anguish, humiliation, embarrassment, insult, indignation, fear, anxiety, nightmares, flashbacks, and nervousness for which she should be compensated at trial.

(ECF No. 1, ¶¶40-41). (Emphasis added).

To prevail on her claims against the individual GMS defendants, Plaintiff must establish (1) the applicable standard of care; (2) that the individual defendant(s) conduct fell below the applicable standard of care; and (3) that the failure to meet the standard of care caused her some damages. *Adams v. United States*, 2022 WL 1538649, at *14 (D. Or. May 16, 2022).

**Williams Kastner**
805 SW Broadway, Suite 2440
Portland, OR 97205-3117
Telephone: (503) 228-7967• Fax (503) 222-7261

Plaintiff alleges that the defendants "violated their failed to comply with their obligations under both state and federal law. (ECF No. 1, ¶39). Plaintiff must first establish the standard of care applicable to them and then demonstrate that the actions of each of them fell below that standard in some way. In most negligence actions against professionals, expert testimony is necessary to inform the jury of the applicable standard of care. *Id.* While there are some instances when the breach of the duty of care is within the ordinary knowledge and experience of lay persons and in such cases a jury could determine the reasonableness of professional conduct without expert testimony, a jury generally is not able to determine what is reasonable conduct for a professional without such testimony. *Id.*

Plaintiff has not presented an expert in support of her claims against the individual defendants. The failure to do so is fatal to the claims against the individual defendants, entitling Dawn Cockrum, Jerry Mascolo and Leondra Coleman to summary judgment.

G.    PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES MUST BE STRICKEN.

Plaintiff requests punitive damages. For all the reasons already described, these claims fail on the merits and should be dismissed. But even if the claims go to a jury, the question of punitive damages should not.

Punitive damages are reserved for cases where the defendants' conduct is reprehensible enough to justify a sanction on top of compensatory damages. *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 576 (1996). That type of conduct involves "evil motive or intent, or . . . reckless or callous indifference to the federally protected rights of others." *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 969 (9th Cir. 2001) (*quoting Smith v. Wade*, 461 U.S. 30, 56 (1983)); see also Or. Rev. Stat. § 31.730(1) (requiring "clear and convincing evidence" of

**Williams Kastner**
805 SW Broadway, Suite 2440
Portland, OR 97205-3117
Telephone: (503) 228-7967• Fax (503) 222-7261

malice, recklessness, or outrageous indifference). A plaintiff must prove her entitlement to punitive damages in addition to the elements of her underlying claim. *See, Dubner*, 266 F.3d at 969 (reversing dismissal of § 1983 claims but affirming dismissal of punitive damages claim); *see also, Williamson v. Munsen Paving, LLC*, 2010 WL 4340473 (D. Or. Oct. 22, 2010) (granting summary judgment on a claim for punitive damages despite defendant's admission of negligence).  None of the facts adduced by Plaintiff meet the heightened, clear-and-convincing standard for punitive damages. *See, Thompson ex rel. Thorp Family Charitable Remainder Unitrust v. Federico*, 324 F. Supp. 2d 1152, 1170 (D. Or. 2004) ("Moreover the evidentiary standard governing a punitive-damages request under Oregon law is more rigorous than the standard governing the analysis of the underlying substantive claims . . . . [E]specially given the heightened burden of proof, more must be shown to justify an award of punitive damages.").  "Misjudgment and negligence do not rise to the point of punitive damages by prefixing a quantifier like 'gross.'" *Andor by Affatigato v. United Air Lines, Inc.*, 303 Or. 505, 739 P.2d 18 (1987).

Even if it were a close call on the merits of Plaintiff's FHA and negligence claims (it is not), her proof would not come near showing that GMS or the individual GMS employees acted with an evil motive or callous indifference towards Plaintiff.

The claim for punitive damages must be dismissed.

/ / /

/ / /

/ / /

Page 28 -   GRAND MANAGEMENT SERVICES AND
JERRY MASCOLO, LEONDRA COLEMAN,
AND DAWN COCKRUM'S MOTION FOR
SUMMARY JUDGMENT

4857-2362-7766.1

Williams Kastner
805 SW Broadway, Suite 2440
Portland, OR 97205-3117
Telephone: (503) 228-7967• Fax (503) 222-7261

## IV.  <u>CONCLUSION</u>

For the reasons set forth herein, defendants Grand Management Services and Jerry Mascolo, Leondra Coleman, and Dawn Cockrum ask the Court to grant their motion for summary judgment as to each of Plaintiff's claims asserted against them.

DATED this 12th day of November, 2024.

WILLIAMS KASTNER

/s/ Heidi L. Mandt
Heidi L. Mandt, OSB #953459
(503) 228-7967
*Attorneys for Defendants Grand Management Services and Jerry Mascolo, Leondra Coleman, and Dawn Cockrum*

**Williams Kastner**
805 SW Broadway, Suite 2440
Portland, OR 97205-3117
Telephone: (503) 228-7967• Fax (503) 222-7261

<u>**CERTIFICATE OF SERVICE**</u>

I certify that I served the foregoing GRAND MANAGEMENT SERVICES AND

JERRY MASCOLO, LEONDRA COLEMAN, AND DAWN COCKRUM'S MOTION FOR

SUMMARY JUDGMENT via the court's ECF service on the parties below on this 12th day of

November, 2024:

 

**_Attorneys for Plaintiff:_**
Carly Cripps
Edward Johnson
Nicole Pritchard
Email: ejohnson@oregonlawcenter.org
npritchard@oregonlawcenter.org
ccripps@oregonlawcenter.org
jtrinkle@oregonlawcenter.org
Erena-dozier@oregonlawcenter.org

**_Attorneys for Defendant Evergreen Gardens_**
Nathan B. McClintock
nmcclintock@epuerto.com

WILLIAMS KASTNER

By  /s/ Heidi L. Mandt                     
   Heidi L. Mandt, OSB #953459
   hmandt@williamskastner.com

*Attorneys for Defendants Grand Management Services, Inc.,
Jerry Mascolo, Leondra Coleman, and Dawn Cockrum*

**Williams Kastner**
805 SW Broadway, Suite 2440
Portland, OR 97205-3117
Telephone: (503) 228-7967• Fax (503) 222-7261