IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

PATSY JAY,

Plaintiff,

v.

Case No.: 3:23-cv-656

GRAND MANAGEMENT SERVICES, INC., EVERGREEN GARDENS LIMITED PARTNERSHIP, JERRY MASCOLO, LEONDRA COLEMAN, and DAWN COCKRUM,

Defendants.

DEPOSITION OF

DAWN COCKRUM

TAKEN ON

MONDAY, JULY 29,2024

12:59 P.M.

OREGON LAW CENTER

490 NORHT SECOND STREET

COOS BAY, OREGON 97420

APPEARANCES

Appearing on behalf of the Plaintiff:
CARLY CRIPPS, ESQUIRE
Oregon Law Center
230 NE 2nd Avenue, Suite F
Hillsboro, OR 97124
(503) 640-4115
(503) 640-9634 (Fax)
ccripps@oregonlawcenter.org

-and-

Appearing on behalf of the Plaintiff:
NICOLE PRITCHARD, ESQUIRE
WILLIAM B. NIESE, ESQUIRE
Oregon Law Center
490 N. 2nd Street
Coos Bay, OR 97240
(541) 269-1226
(541) 269-1372 (Fax)
npritchard@oregonlawcenter.org
bniese@oregonlawcenter.org

APPEARANCES CONTINUED

Appearing on behalf of Defendant Grand Management, Jerry Mascolo, Leondra Coleman, Dawn Cockrum:
HEIDI L. MANDT, ESQUIRE
Williams Kastner
1515 SW 5th Avenue, Suite 600
Portland, OR 97201
(503) 228-7967
(503) 222-7261 (Fax)
hmandt@williamskastner.com

Appearing on behalf of Defendant Evergreen Gardens Limited Partnership:
NATHAN B. MCCLINTOCK, ESQUIRE
Corrigall & McClintock LLP
936 Central Avenue
Coos Bay, OR 97420
(541) 269-1123
(541) 269-1126 (Fax)
nmcclintock@epuerto.com

EXAMINATION INDEX

| | Page |
|---|---|
| EXAMINATION BY MS. CRIPPS | 7 |

EXHIBIT INDEX

| | Page |
|---|---|
| EX037 Certificate | 14 |
| EX038 Fax Dated 8-27-2021 | 24 |
| EX039 Email Dated 3-14-2019 | 30 |
| EX040 14 Day Status of Eviction Notice | 40 |

DEPOSITION OF
DAWN COCKRUM
TAKEN ON
MONDAY, JULY 29,2024
12:59 P.M.

THE REPORTER: All right. The time is 12:59. We are on the record.

This is the beginning of the deposition of Dawn Cockrum.

Ms. Cockrum, can I have you raise your right hand?

Do you affirm under penalty of perjury the testimony you're about to give will be the truth, the whole truth, and nothing but the truth?

THE DEPONENT: I do.

THE REPORTER: Thank you.

Counsel, please introduce yourselves and state who you represent.

MS. CRIPPS: Carly Cripps, for the plaintiff.

MR. MCCLINTOCK: Nathan McClintock, for Evergreen.

MS. MANDT: Heidi Mandt, for Grand Management Services and the individual defendants.

THE REPORTER: You may proceed.

DAWN COCKRUM, having been first duly affirmed to tell the truth, was examined, and testified as follows:

EXAMINATION

BY MS. CRIPPS:

**Q. Okay. Hi, Dawn. I'm Carly. I'm going to be taking your deposition. Just a few things before we really dive in here. Have you ever had your deposition taken before?**

A. No.

**Q. Okay. Okay. So whenever you answer I'm going to ask that you answer out loud like you just did. No head nodding or mm-hmms. We need verbal yeses or nos.**

**And then as Ryan here mentioned, we're going to try not to talk over each other. And that can be a little bit hard sometimes because, you know, the way conversation works, but we're going to try not to talk over each other.**

**And then if you need a break at any time you're welcome to do so except when a question is pending. So we just need you to answer a question before we take a break.**

**Have you taken any drugs or medication**

**today that would affect your ability to answer the questions completely and truthfully?**

A. No.

**Q. Okay. Okay. Great. And then have you ever been a party or a witness to a lawsuit?**

A. No.

**Q. You've never testified in court. Nothing like that? Okay.**

A. (No audible response.).

**Q. Okay. Great. Can -- did you say and spell your full name already?**

A. (No audible response.)

**Q. No. Can you say and spell your full name?**

A. Dawn A. Cockrum, D-A-W-N, A, C-O-C-K-R-U-M.

**Q. Thank you. And then have you had any prior names?**

A. Yes.

**Q. Okay. Can you tell us what that is?**

A. Last name, Stout, S-T-O-U-T. Last name, Snook, S-N-O-O-K. Maiden name, Potes, P-O-T-E-S.

**Q. Thanks. Okay. And what have you done to prepare for your deposition?**

A. Well, I read the -- the -- the court paperwork on who, you know, Patsy Jay with us and

the explanations of what the language means. Like, complaints and all that. And just trying remember because it's been three years ago.

**Q. Okay. What about -- did you look at any documents other than the complaint that you just mentioned?**

A. No.

**Q. Okay.**

A. No.

**Q. Okay. Have you talked to your -- anyone other than your attorney to prepare?**

A. No.

**Q. Okay. When was the last time you spoke with Jerry Mascolo?**

A. Recently. He's -- what is just business-wise. He asked me some opinions on -- on management. And, Grand Management recently purchased three of my company's properties, so nothing to do with this case, just property management.

**Q. Okay. So the two of you are friendly?**

A. Yeah.

**Q. Okay. What about Kristin Smith?**

A. Not really. Besides saying hi and all that when I come here, but, no.

Page 10

Q. Okay.
A. No.
Q. How often do you come here?
A. This is the first time in a year and a half.
Q. Okay. Okay. What about Leondra Coleman? Have you spoken to her?
A. No.
Q. Okay. What about John McKnight?
A. No.
Q. When's the last time you spoke to him?
A. I couldn't --
Q. If you know.
A. -- respond to that. It's --
Q. Okay. Who's your current employer?
A. Neighborworks Umpqua.
Q. Okay. And how long have you worked there?
A. A total of 21 years. I worked there 19 years, left in '19, came to Grand Management for two years, and went back in 2021.
Q. Okay. So can --
A. So a total of 23 -- 21 years.
Q. Okay. Twenty-one years. Can you tell me the dates of your employment with Grand?
A. Mm-hmm. September 1st, 2019, to November

Page 11

10th, 2021.
Q. Okay. November 10th of '21. Okay. So -- and you worked at Neighborworks both before and after that?
A. Mm-hmm.
Q. Immediately before and after. Okay. And then what was your job title when you worked at Grand Management?
A. Senior compliance specialist.
Q. Okay. Can you kind of describe what your role was?
A. I oversaw the recertifications, making sure they were being done on time and the paperwork and gave the approval to the managers to close them out. I reviewed all the violation notices, make sure the language is correct and we were doing what we were supposed to. And then Jerry Mascolo would be the ultimate overseer of approving those.
Q. Okay. And recertifications. Is that of individual tenants?
A. Yes. Every year they have to recertify their income, household composition, because their rent is based off their income. So --
Q. Right.
A. -- it's a requirement.

Page 12

Q. Right. And then violation notices. Is that lease violation notices?
A. Yes.
Q. Okay. So those would be given to individual tenants as well?
A. Yes.
Q. Okay. So you reviewed every violation notice that went out?
A. Not every violation.
Q. Okay. How -- how --
A. The majority of them.
Q. The majority.
A. Mm-hmm.
Q. Okay. Can you give me an estimate, is that like 60 percent, or like 90 percent?
A. I'd say 85.
Q. Okay. Okay. Can you tell me why you ended your employment there?
A. Because my old employer offered me to come back in a better deal.
Q. Okay. Fair enough. So there was no hostility?
A. Oh, no.
Q. Or anything --
A. No.

Page 13

Q. -- like that. Okay. And then senior compliance specialist, is that the only job title you had while you were there?
A. Mm-hmm.
Q. Okay. So you were never promoted or moved to a different --
A. No.
Q. -- position? Okay. And then compliance. Compliance with what? Can you tell me what means?
A. It's very broad. Basically, I oversee all the regulatory requirement paperwork.
Q. Okay. Okay. So that means, like, compliance with the law and compliant with --
A. Mm-hmm.
Q. -- regulatory --
A. Mm-hmm. Reasonable accommodations. Recertifications. Violation notices.
Q. Okay.
THE REPORTER: Just a friendly reminder, you're saying mm-hmm a lot. Remember to say yes or no. It's okay.
MS. CRIPPS: Thanks.
THE REPORTER: Just a friendly reminder.
MS. CRIPPS: It happens. No worries.
BY MS. CRIPPS:

**Q. Okay. As part of your employment did you receive training on fair housing laws?**
A. Yes. I've taken at least two fair housing trainings since 2001, a year.
**Q. Okay. Got it. One second here. Let me dig out a piece of paperwork.**
MS. CRIPPS: Okay. This will be Exhibit 37, 37, right?
(WHEREUPON, Exhibit 37 was marked for identification.)
BY MS. CRIPPS:
**Q. Okay. So this document that I just handed you, can you tell us what it is?**
A. Is a certification of attending a fair housing certification course.
**Q. Okay. And that's dated 2020 --**
A. Mm-hmm.
**Q. -- correct? Okay. So did you do other fair housing training while you were at Grand Management other than the -- this one certification?**
A. I'd already had two certifications when they hired me in '19, so that was sufficient for the year '19.
**Q. Okay.**
A. And I left before they were getting ready

to do the 2021 one, so I did the --
**Q. Okay.**
A. -- 2020 with them.
**Q. Okay.**
A. There. But --
**Q. Got it. So you only did one in 2020?**
A. With --
**Q. You said --**
A. -- Grand Management.
**Q. -- you do two a year.**
A. Yeah.
**Q. Okay. Got it. And as part of the fair housing certification course can you tell us what that covered? What you learned in that course?**
A. In this particular one?
**Q. Yes.**
A. This is the basic fair housing. I take several a year usually. This one goes over the basics of fair housing. It goes over discrimination. It goes over reasonable accommodations. It goes over companion assistance animals versus pets.
It goes over all your discriminations from tenant-on-tenant harassment to racial to gender, all -- all the protected classes.

It goes over the landlord's responsibility to address things and when in the timeframes of it. And then they always give you a few examples of what -- what can happen if you don't comply with what you're responsible to as a landlord.
**Q. Okay. So this training included training on how to deal with tenant-on-tenant conflicts?**
A. Yes.
**Q. Okay. Can you tell us how it -- like, what does it say to do?**
A. It was very basic.
**Q. Okay.**
A. They did encourage you to take -- like, some companies have their lawyers that put on one a year. But the basic was once the landlord or managing agent becomes aware of a tenant-on-tenant harassment we need to do our due diligence, investigate, and see if we have a role to play in that.
**Q. Okay. And does this training kind of give you an idea of what an investigation would entail?**
A. They gave one example of -- of a situation, but that's as far as they go into it.
**Q. Okay.**
A. They always advise you to seek your legal

counsel if you're unsure on how to approach something.
**Q. Okay. And so did this training also cover sexual harassment?**
A. Briefly.
**Q. Briefly.**
A Mm-hmm.
**Q. Okay. And then did it give you kind of instructions on how to investigate tenant-on-tenant sexual harassment?**
A. Briefly.
**Q. Okay. And can you tell us what those instructions were?**
A. You take the resident's complaint. And then you ask around to see if anyone -- any other residents heard it, witnessed it. And then you approach -- you just respond back and it -- it evolves from there.
**Q. Okay. Okay. So if a tenant complained of sexual harassment by another tenant would you be in charge of investigating that?**
A. With Grand Management?
**Q. Yes. As part of your role at Grand Management?**
A. Not at first, no.

**Q. Okay. But eventually the answer would have been yes?**
A. If it came to fruition where it was needed further follow through.
**Q. Okay. What would -- in what circumstance would it come to fruition that needed follow through? What would that be?**
A. I need a specific scenario. That's kind of a vague question.
**Q. Fair enough. Yeah. Okay. We'll go back a little bit. So did this training cover how to a handle situation if a tenant sexually harassed an employee?**
A. No.
**Q. Okay. And in that situation would you be in charge of investigating if that was reported?**
A. Not at first.
**Q. Okay. But eventually in your role at Grand Management if an employee reported sexual harassment by a tenant you would have been in charge of investigating that?**
A. I'm not necessarily sure I'd be in charge, but I would be part of the -- the effort.
**Q. Okay.**
A. -- of --

**Q. So you would have been involved --**
A. Mm-hmm.
**Q. -- in the investigation. Okay. And then would it -- would -- would you also have been involved in the decision on how to respond to that?**
A. I would have.
**Q. Okay. And are you aware of the option under the fair housing laws to give someone a 24-hour eviction notice for outrageous behavior?**
A. Very familiar.
**Q. Okay. Have you ever done that --**
A. Yeah.
**Q. -- in your role with Grand Management?**
A. Not with Grand Management. No.
**Q. Okay. But you have done that at Neighborworks?**
A. Yes.
**Q. Okay. Can you tell me when?**
A. Again, can't get specific, that's -- I do a lot of these notices, hundreds a year. Not 24 hours, but violation notices. I would have to say the last one would have been around February of this year.
**Q. The last violation notice or --**
A. The --

**Q. -- the last --**
A. -- 24-hour.
**Q. Okay. And can you tell me what happened that -- what was the outrageous behavior that required the 24-hour notice?**
A. Meth lab in the unit.
**Q. Okay. That will do it. Okay. So let's see. Any duties of your job that we haven't covered that you can think of?**
A. No.
**Q. While you were at Grand, I mean.**
A. No.
**Q. Okay. Okay. And what was the location in which you worked for Grand Management?**
A. At the office here.
**Q. Okay. Here in --**
A. Mm-hmm. Coos Bay. Right there, 420.
**Q. Okay. Did you ever go to Evergreen Gardens?**
A. I did not.
**Q. Okay. Oh, how would you receive complaints from tenants?**
A. Several ways. The lease states all complaints need to be in writing, so they would go to the manager and the manager would email them to

me.
**Q. Okay.**
A. Occasionally you'd get a phone call.
**Q. Phone call from who?**
A. The -- the complainer. The complainter (sic).
**Q. From the tenant?**
A. Yes.
**Q. Okay.**
A. Mm-hmm.
**Q. What about through AppFolio?**
A. No.
**Q. Okay.**
A. We log notes in AppFolio on correspondences where I would keep a record of what was said because I always have to tell the tenant, please, put this in writing.
**Q. Mm-hmm.**
A. I'll take your note, but, yeah.
**Q. Okay. So you reviewed AppFolio and the notes in AppFolio?**
A. Occasionally, yes.
**Q. Okay. So when someone entered a note about a tenant in AppFolio did you get a notification regarding that?**

A. They allow -- it was when I was there.
**Q. Okay.**
A. Mm-hmm.
**Q. Is that the policy for -- in every situation?**
A. When I was there, yes.
**Q. Okay. So every time someone violated the lease they received a courtesy notice --**
A. It would --
**Q. -- for the --**
A. -- depend on the violation.
**Q. Okay. Sorry. If GMS was going to evict someone, would they send a courtesy notice in every situation?**
A. I can't answer that right now.
**Q. Okay.**
A. When I was there, we were doing it. I don't know what they're doing now.
**Q. Okay. Thank you. I did -- I worked that poorly, thank you for answering that well. Okay. Okay.**
MS. CRIPPS: Okay. I think that's all my questions.
MR. MCCLINTOCK: I don't have any questions.

MS. MANDT: No questions.
MS. CRIPPS: Okay.
THE REPORTER: All right. That concludes the deposition.
Ms. Cripps, would you like to order the transcript?
MS. CRIPPS: Yes, please.
THE REPORTER: Ms. Mandt --
MS. MANDT: Yes.
THE REPORTER: -- would you like a copy?
And, Mr. McClintock.
MR. MCCLINTOCK: Yes.
THE REPORTER: Alrighty. Going off the record at 1:53.
(WHEREUPON, the deposition of DAWN COCKRUM was concluded at 1:53 p.m.)

CERTIFICATE

I, Ryan Batterson, do hereby certify that I reported all proceedings adduced in the foregoing matter and that the foregoing transcript pages constitutes a full, true and accurate record of said proceedings to the best of my ability.

I further certify that I am neither related to counsel or any party to the proceedings nor have any interest in the outcome of the proceedings.

IN WITNESS HEREOF, I have hereunto set my hand this 15th day of August, 2024.

Ryan Batterson

Ryan Batterson

CORRECTION SHEET

Deposition of: Dawn Cockrum Date: 07/29/24
Regarding: Jay vs. Grand Management Services, Inc.
Reporter: Batterson / Munro

______________________________________________

Please make all corrections, changes or clarifications to your testimony on this sheet, showing page and line number. If there are no changes, write "none" across the page. Sign this sheet and the line provided.

Page Line Reason for Change
____ ____ ____________________________________
____ ____ ____________________________________
____ ____ ____________________________________
____ ____ ____________________________________
____ ____ ____________________________________
____ ____ ____________________________________
____ ____ ____________________________________
____ ____ ____________________________________
____ ____ ____________________________________
____ ____ ____________________________________
____ ____ ____________________________________
____ ____ ____________________________________

Signature: ________________________
Dawn Cockrum

DECLARATION

Deposition of: Dawn Cockrum Date: 07/29/2024

Regarding: PATSY JAY vs GRAND MANAGEMENT SERVICES

Reporter: Ryan Batterson

___________________________________________________

I declare under panalty of perjury the following to be true:

I have read my deposition and the same is true and accurate save and except for any corrections as made by me on the Correction Sheet herein.

Signed at ____________________________, _____________

on the ____________ day of __________________, 20____.

Signature: ___________________________

Dawn Cockrum