```
       IN THE UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF OREGON
              PORTLAND DIVISION


PATSY JAY,

      Plaintiff,

v.                              Case No.: 3:23-cv-656

GRAND MANAGEMENT SERVICES, INC., EVERGREEN GARDENS

LIMITED PARTNERSHIP, JERRY MASCOLO, LEONDRA COLEMAN,

and DAWN COCKRUM,

      Defendants.
```

                                     DEPOSITION OF

                                     JERRY MASCOLO

                                     TAKEN ON

                                     MONDAY, JULY 29,2024

                                     9:00 A.M.


                                     OREGON LAW CENTER

                                     490 NORHT SECOND STREET

                                     COOS BAY, OREGON 97420

EXHIBIT 6 - Page 1 of 6

Page 18

1  A.  Yes.
2  Q.  Did he have keys to apartments?
3  A.  Not that I'm aware of.
4  Q.  Did you receive complaints about -- from
5  tenants about John McKnight?
6  A.  Yes.
7  Q.  Were you aware of any intimate
8  relationships Mr. McKnight had with other tenants at
9  Evergreen?
10 A.  No.
11 Q.  What was your opinion of Mr. McKnight when
12 he worked at Grand Management Services?  And while
13 he was there.
14 A.  He seemed like an all-right guy.  Seemed
15 like he worked and did what he was supposed to do.
16 Q.  Was he a good tenant?
17 A.  Yes.
18 Q.  Do you remember the first complaint that
19 you got about him?
20 A.  Not really.
21 Q.  What is the first complaint that you can
22 recall?  The earliest?
23 A.  Probably with him and Cindy.
24 Q.  And what do you recall of that complaint?
25 A.  That she had claimed that he mistreated

Page 19

1  her.
2  Q.  How?
3  A.  Apparently he bit her on the butt.
4  Q.  And are you aware of another complaint
5  after Cindy?
6      MS. MANDT:  Object to the form.
7  BY MS. PRITCHARD:
8  Q.  Are you aware -- are you aware of any
9  other complaints by tenants?
10     MS. MANDT:  Object to the form.
11     THE DEPONENT:  Repeat the question.
12 BY MS. PRITCHARD:
13 Q.  What's the next complaint that you recall
14 receiving regarding Mr. McKnight?
15 A.  I guess -- Patsy Jay, I guess.
16 Q.  Did you ever see Mr. McKnight with a gun?
17 A.  No.
18 Q.  Do you remember drafting a notice of
19 intent to evict Mr. McKnight in March 2019?
20     MS. MANDT:  Object to form.
21     THE DEPONENT:  I would say I wouldn't -- I
22 didn't draft it.  I -- I looked it over.
23 BY MS. PRITCHARD:
24 Q.  Okay.  Referring to GMS1062, which we'll
25 mark as Exhibit 31.

Page 20

1      MS. PRITCHARD:  I'll hand it to the clerk
2  for -- actually that one has my highlights on it, so
3  let's use Bill's.
4      MR. NIESE:  Yeah.
5      MS. PRITCHARD:  That one is clean, yeah.
6      THE REPORTER:  Exhibit 31 is marked for
7  identification.
8      (WHEREUPON, Exhibit 31 was marked for
9  identification.)
10 BY MS. PRITCHARD:
11 Q.  Do you recognize this document?
12 A.  Yes.
13 Q.  What is it?
14 A.  It's a notice of intent to evict.
15 Q.  Did you write this?
16 A.  It looks like I did.
17 Q.  Is that your signature on Page 4 of 4?
18 A.  Yes, it is.
19 Q.  Do you remember marking boxes
20 corresponding to provisions of the lease agreement
21 that were violated?
22 A.  Yes.
23 Q.  Did you mark the four boxes on the first
24 page?
25 A.  Yes.

Page 21

1  Q.  What history of violence and harassment
2  had GMS documented at that time?
3  A.  That is just -- that's just a -- a
4  standard form that has that on there.  It doesn't
5  mean that -- you know, that could be one charge.
6  That doesn't necessarily mean that there's multiple.
7  That -- that does -- that's just our form that is
8  already filled out that we just -- the box is next
9  to.  So anybody that conducts a -- a -- a threat to
10 somebody we always put that in there.  Because the
11 -- the -- that would be just standard procedure.
12 Q.  Right.  So do you recall the history of
13 violence you were referring to in that document?
14 A.  Again, that's what I'm saying.  There is
15 no -- I'm not saying there was a history.  I'm
16 saying that's what the paperwork says.  That's just
17 a generic -- we don't -- we don't fill these in.
18 These are preboxed for us.  And ever since I've been
19 here, these have been that way.
20     And then anybody that has, you know,
21 committed some act of harassment or, you know,
22 disturbing the quiet enjoyment it would always say
23 -- as you can see the next question it says, does he
24 have a history of disturbing the quiet enjoyment of
25 neighbors.  That is, you know, doesn't mean that

Page 22

1  there's actually -- you know, one report is
2  considered a history.
3      Q.  Mm-hmm.  So in regards to the second box
4  checked, what was -- what was that history of
5  disturbing the quiet enjoyment of neighbors?
6      A.  Again, that is to do with the fact that he
7  disrupted -- I -- for this instance, I guess, Patsy
8  Jay and her quiet enjoyment of her peaceful place to
9  live.  And again, just because there is -- says
10 history on there, one evidence of something
11 happening is considered history.  Because it
12 happened in the past.
13     Q.  What history of physical violence,
14 criminal activity, or drug-related activity had
15 Grand Management documented at that time?
16         MS. MANDT:  Object to form.
17         THE DEPONENT:  I'd have to look at the
18 file.
19 BY MS. PRITCHARD:
20     Q.  Do you have the file with you?
21     A.  I do not.
22     Q.  I'd direct you to Page 3 of 4.  Ask you to
23 read that and I'll ask you if that refreshes your
24 recollection.
25     A.  Okay.  Yes.  So there's a few things that

Page 23

1  it looked like he had done.
2          MS. MANDT:  Let -- let her ask a question.
3  BY MS. PRITCHARD:
4      Q.  Does that refresh your recollection about
5  the events you were referring to?
6      A.  Yes.
7      Q.  So -- so what was the history of violence
8  and harassment that was documented by Grand
9  Management?
10     A.  I guess, apparently it looks like he was
11 pulling out a gun that was reported.  And he was
12 going into people's -- a person's unit without being
13 invited.
14     Q.  Regarding the July 2021 incident involving
15 Ms. Jay, how did you learn about that incident?
16     A.  I would -- what I can remember, probably
17 from Leo because she would have been the on-site
18 manager, and she would have told us.
19         THE REPORTER:  Did you say, Leo or Lea?
20         THE DEPONENT:  Leo.
21         THE REPORTER:  Thank you.
22         THE DEPONENT:  I guess, it's Leondra, but
23 we all -- everybody called her Leo.
24 BY MS. PRITCHARD:
25     Q.  Okay.  Were you aware of an incident

Page 24

1  report that was made by Patsy Jay in July of 2021?
2      A.  I believe so.
3      Q.  Did you review that incident report at the
4  time that it was made?
5      A.  Yes.
6      Q.  And what steps did you take after you
7  reviewed it?
8      A.  I would say we called John to get his side
9  of the story.  And we probably asked Patsy Jay a
10 little bit about what happened to get a little bit
11 better detail.  And we would have probably told John
12 not to go anywhere near Patsy Jay or any other
13 person.  And we would have waited to see -- we would
14 have asked for a police report.
15         MS. PRITCHARD:  This is -- it's probably
16 already in evidence, right?  Is it marked as an
17 exhibit as far as we know?
18         MS. CRIPPS:  I don't think so.  I don't
19 know.  Oh, this one.  It is already in evidence as
20 Exhibit 15.
21         MS. PRITCHARD:  Okay.  So this has already
22 been marked as Exhibit 15.  I just wanted to
23 identify that for the record.
24 BY MS. PRITCHARD:
25     Q.  And did you speak -- do you recall

Page 25

1  speaking to Mr. McKnight regarding this incident?
2      A.  Yes.
3      Q.  And do you recall what you told Mr.
4  McKnight?
5          MS. MANDT:  Object to form.  Overbroad.
6          THE DEPONENT:  I would have probably told
7  him not to go anywhere near her.  I would have
8  probably told him that, you know, that he's -- that
9  we're going to be waiting on the police report to
10 find out what the police come up with.  And that he
11 probably will be getting a written notice of intent
12 to evict because of this.
13 BY MS. PRITCHARD:
14     Q.  Did you review a complaint from Mr.
15 McKnight at the end of July 2021?
16     A.  Not that I can recall.
17     Q.  Directing you to 1430, GMS1430.
18         MS. PRITCHARD:  Which we'll mark as
19 Exhibit 32, I believe we're on at this point.  All
20 right.  Thank you.
21         THE DEPONENT:  This one from March 7th?
22 BY MS. PRITCHARD:
23     Q.  July 30th, 2021.  It's marked GMS1430 at
24 the bottom.
25         MR. MCCLINTOCK:  We're marking it as

Page 26

```
 1  Exhibit 32?
 2          MS. PRITCHARD:  Yes.
 3          MR. MCCLINTOCK:  Thank you.
 4          THE REPORTER:  Exhibit 32 is marked.
 5          (WHEREUPON, Exhibit 32 was marked for
 6  identification.)
 7  BY MS. PRITCHARD:
 8      Q.  Do you recall reviewing this complaint?
 9      A.  Vaguely.
10      Q.  And -- let's see here.  Did you tell Mr.
11  McKnight that he was guilty?
12      A.  I don't remember saying that.
13      Q.  And did you tell Mr. McKnight he just
14  hadn't been caught yet?
15      A.  No.  I don't remember saying that either.
16      Q.  I would refer to Page 3.  If you could
17  read that to yourself.
18      A.  Okay.  I've read it.
19      Q.  Does that refresh your recollection?
20      A.  No.
21      Q.  Okay.  Turning to GMS1272, which we're
22  going to mark as Exhibit 33.
23          (WHEREUPON, Exhibit 33 was marked for
24  identification.)
25  BY MS. PRITCHARD:
```

Page 27

```
 1      Q.  Do you recognize this document?
 2      A.  It's an email.
 3      Q.  And is that your email address,
 4  jerry@grandmanagement.com?
 5      A.  Yes.
 6      Q.  And what did you mean by your comment,
 7  fuel for the case?
 8      A.  I don't know.  It's just missing the rest
 9  of the -- the email.
10      Q.  Is there more to this email?
11      A.  I don't know.  It just says, fuel for the
12  case.  I -- no idea.  I would just say that I guess
13  it's because --
14          MS. MANDT:  Don't guess.
15          MR. MCCLINTOCK:  Yeah.
16          THE DEPONENT:  I have no idea then.
17  BY MS. PRITCHARD:
18      Q.  And what did you mean by your comment,
19  looks like they never pressed charges against him,
20  so I would say there is not a treat then.
21      A.  I would say that's probably supposed to be
22  not a threat.
23      Q.  And, I'd also like to take a look at
24  GMS985 and 968, which may have been marked
25  previously.
```

Page 28

```
 1          MS. CRIPPS:  Ah, yes.
 2          MS. PRITCHARD:  Yes.  It looks like it was
 3  previously marked as Exhibit 24, so I'll note that.
 4  BY MS. PRITCHARD:
 5      Q.  Do you recognize this document?
 6      A.  Yes.
 7      Q.  And what is it?
 8      A.  Text messages back and forth to John
 9  McKnight, it looks like.  Or, no, these look like
10  notes.
11      Q.  And where would these notes have been
12  taken?
13      A.  During AppFolio.
14      Q.  And I would direct your attention to page
15  -- the page numbers at the bottom of the page.
16      A.  Uh-huh.
17      Q.  Do you see that it's Page 1 of 7?
18      A.  Yes.
19      Q.  And the second page is Page 2 of 7?
20      A.  Uh-huh.
21      Q.  Have you reviewed the rest of the pages?
22      A.  Not recently.
23      Q.  Are you aware that those pages haven't
24  been provided to our side?
25      A.  I don't know that.
```

Page 29

```
 1      Q.  Would you be willing to produce those
 2  pages?
 3      A.  I guess.
 4      Q.  Going back to July 2021, GMS1491.
 5          MS. PRITCHARD:  This -- I don't believe
 6  we've entered as an exhibit yet.  So I will be
 7  marking this one, Exhibit 34.
 8          THE DEPONENT:  Which one?
 9  BY MS. PRITCHARD:
10      Q.  GMS1491 and 1492.
11          THE REPORTER:  Exhibit 34.
12          (WHEREUPON, Exhibit 34 was marked for
13  identification.)
14  BY MS. PRITCHARD:
15      Q.  Okay.  Do you -- did you review this
16  written complaint?
17      A.  Yes.
18      Q.  And what steps did you take after
19  reviewing it?
20          MS. MANDT:  Object to form.  Assumes
21  facts.
22          THE DEPONENT:  July 15th.  So from what I
23  remember, is that I asked -- I told Patsy Jay to
24  file a restraining order against John with the
25  police.
```

Page 30

BY MS. PRITCHARD:
Q. Did you look into the allegation that Mr. McKnight has done this to others?
A. I'm not really understanding the question.
Q. Referring to Page 2, the last paragraph.
A. What? I mean, the second paragraph doesn't really --
Q. It's the third paragraph.
A. Oh. I'm not really understanding. Like, so I don't recollect other charges against him that I would have looked at.
Q. Did you see where it says, now I understand others have had it done and he can't be stopped unless someone charges?
A. Mm-hmm.
Q. Did you look into that allegation that others have had it done?
MS. MANDT: Object to form.
THE DEPONENT: I would say, yes.
BY MS. PRITCHARD:
Q. What did you do?
A. I looked through his file to see if there was anything that had been recorded before.
Q. And what did you find?
A. There were, I think, one other case that

Page 31

was dropped, and that was all I remember seeing.
Q. After this incident or this report from Ms. Jay did Ms. Jay talk to you about Mr. McKnight standing in front of her window?
A. Not that I recall.
Q. And did Mr. -- or did Grand Management issue Mr. McKnight an eviction notice?
A. Yes.
Q. And what type of notice?
A. A notice of intent to evict.
Q. And was that 24-hour notice?
A. No.
Q. And why -- what type of notice was it?
A. A 14/30.
Q. And who made the decision to issue the 14/30?
A. I did.
Q. And why did you order -- why did you serve a 14/30 rather than a 24-hour notice?
A. Because a 24-hour notice doesn't do anything.
Q. What do you mean by that?
A. So we're federally subsidized. You have to give a tenant an opportunity to cure. And I've been doing this long enough that I just -- we just

Page 32

had it happened here and the guy got shot -- shot somebody with a gun --
MS. MANDT: Well, just answer her question, please. We don't need to go into what other people have done.
THE DEPONENT: It just doesn't work. Because the court has to -- the court has to -- the court has to set a court date. And they take anywhere from 7 to 14 days.
So a 24-hour notice, you would serve the tenant. You go to court. And if he doesn't leave you can't evict him until you go to court. And that only works for somebody that actually does physical harm to somebody.
BY MS. PRITCHARD:
Q. Let's see. Looking at GMS987. Let's see if we have this one already entered. We should.
MS. CRIPPS: No, we don't have it.
MS. PRITCHARD: Okay. I will mark this as Exhibit 35.
MR. NIESE: Which one is it, 9 --
MS. PRITCHARD: 987 --
MR. NIESE: Okay.
MS. PRITCHARD: -- to 994.
(WHEREUPON, Exhibit 35 was marked for

Page 33

identification.)
BY MS. PRITCHARD:
Q. Do you recognize these documents?
A. Yes.
Q. Did Mr. McKnight provide this to Grand Management?
A. Yes.
Q. Do you know what Mr. McKnight referred to on 988 where he refers to another Eleanor in 5B?
A. I do not.
Q. Further down that same page he refers to someone at GMS as a classic bully. Do you know who he's referring to there?
MS. MANDT: Can you let him read it, please?
MS. PRITCHARD: Absolutely.
THE DEPONENT: I do not.
BY MS. PRITCHARD:
Q. Okay. Do you know who Monte is?
MR. MCCLINTOCK: Where?
BY MS. PRITCHARD:
Q. Regarding Page 990?
A. She was a tenant at Evergreen.
Q. And underlined on that page, I'd ask you to read that to yourself.

```
 1                      CERTIFICATE
 2
 3       I, Ryan Batterson, do hereby certify that I
 4  reported all proceedings adduced in the foregoing
 5  matter and that the foregoing transcript pages
 6  constitutes a full, true and accurate record of said
 7  proceedings to the best of my ability.
 8
 9       I further certify that I am neither related
10  to counsel or any party to the proceedings nor have
11  any interest in the outcome of the proceedings.
12
13       IN WITNESS HEREOF, I have hereunto set my hand
14  this 15th day of August, 2024.
15
16
17          [signature: Ryan Batterson]
18
19              Ryan Batterson
20
21
22
23
24
25
```