CONFIDENTIAL



*PROPERTY MANAGEMENT & DEVELOPMENT*
420 Park Avenue        Coos Bay, Oregon 97420
Tel: 541-269-5561    Fax: 541-269-2481   711 TTY
www.grandmgmt.com

 

### SUBSIDIZED HOUSING LEASE AGREEMENT

This lease is for the rental of apartments that have been constructed with the assistance of federal funding. It contains special provisions concerning your income, the basis for determining your rent, and other factors that may be different from leases that you have previously signed. **Your signature indicates that you have read these provisions. Please read this document carefully before signing, and ask questions if there are any sections that you do not understand.** In areas with a concentration of non-English speaking populations as determined by the Department of Housing and Urban Development guidelines, lease and occupancy rules will be available in English and the non-English language when needed.

**1. PARTIES.** This lease is between the following parties.

| LANDLORD | MANAGEMENT AGENT | TENANT |
|---|---|---|
| Owner ID # Evergreen Gardens | Grand Management Services | John R. McKnight |
| c/o Grand Management Services | 420 Park Avenue | 3810 12th Street #11A |
| 420 Park Avenue | Coos Bay, Or. 97420 | Tillamook, OR  97141 |
| Coos Bay, Oregon  97420 | 541-269-5561 | |

"Landlord" refers to the Landlord and/or the Management Agent as identified above. "Tenant" refers to the occupants of the household as identified as Tenant above. Each Tenant and all Tenants are fully responsible for specific performance under this agreement. "Premises" refers to the Tenant's apartment unit individually and the apartment complex "footprint", grounds, and total area.

**2. APARTMENT UNIT.** Landlord agrees to lease Tenant the following rental unit:

Unit #: 11A        # of bedrooms 1 Bed

Project Name: Evergreen Gardens Apartments        Project Address: 3810 12th Street #11A, Tillamook, OR  97141

**3. TERMS.** This lease term shall be for the period of one-year.

Lease term begins on 05/01/2018        and ends on 04/30/2019 (12 months).

After the initial lease term ends (as identified above), this Agreement shall be automatically renewed for subsequent year to year terms. Termination, following the initial lease term, by either the Landlord or the Tenant requires a written notice of no less than 30 days. This renewal is conditional upon the Lease not being terminated in accordance with 7 CFR 3560.158 or 159.

**4. OCCUPANTS.** Tenant agrees that only the person(s) listed below shall occupy the apartment. Any change in occupancy must have the Landlord's prior approval.

| | Full Name | Date of Birth | Social Security Number | Relationship to Head of Household |
|---|---|---|---|---|
| 1. | John R. McKnight | ███████ | ███████ | *Head of Household* |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | | | | |
| 7. | | | | |

**The addition of a new household member is prohibited, without the express written permission of the Landlord, except for children born to a member of the original household during the lease term.**
Should the apartment unit become overcrowded or should the Tenant no longer meet the eligibility requirements of the project during the term of the lease agreement, he/she may be required to vacate the unit at the end of the lease term unless eligibility can be established following specified steps, such as moving to an appropriate size unit, or an exception is granted by management.

**EXHIBIT 7 - Page 1 of 48**
GMS 001158

**5. ELIGIBILITY**. This apartment project is subject to occupancy rules established by the Landlord:

A. <u>Determination of eligibility:</u> The determination of eligibility of the above person(s) to be occupant(s) of the apartment is based on the information provided by the Tenant, regarding income and assets and household size. Each year, Tenant agrees to provide, upon request, updated information on a form provided by Landlord. Tenant agrees that all such information regarding household income and assets provided to Landlord is true, complete, and correct to the best of Tenant's knowledge. Tenant further agrees that failure to provide such information, or providing false or misleading information, may result in the termination of Tenant's occupancy and eviction from the premises. Tenant understands that fraud or misrepresentation could result in legal action. Tenant agrees that all information supplied by Tenant shall be subject to inspection and verification by representatives from any applicable governmental entity charged with administering government housing programs, and that the households tenancy is subject to compliance with the terms of all applicable assistance programs covering the unit and/or the project. Tenants who are no longer eligible for occupancy under the housing project's occupancy rules or do not meet the criteria set forth in Rural Development Regulation §3560.155(c) and (e) must vacate the property within 30 days of being notified by the borrower that they are no longer eligible for occupancy, or at the expiration of their lease, whichever is greater, unless the conditions cited in §3560.158(c) exist.

B. <u>Smoking:</u> The Landlord has set forth rules regarding smoking policies at this property. This property has been designated as <u>Smoke Free</u>. Smoking is not permitted inside any apartments, outside on any common areas, parking lots, entryways, patios, balconies, or public buildings, including the community room, laundry, and restrooms. You must go off of the property and at least 25 feet away from any building to smoke. Failure to comply with this policy will be a violation of this lease agreement and the property ground rules. Exposure to second hand smoke has been shown to cause adverse health outcomes and we have adopted smoke free policies that pertain to our buildings, grounds and common areas. Within their units, residents are responsible for enforcing the policy for all inhabitants, guests and visitors. If you violate this rule and you allow smoking in the rental unit, you will be responsible for all costs associated with removing smell, stain, and other damage that can reasonably be attributed to smoking.

C. <u>Guests:</u> Anyone who stays in the apartment and is not listed on this lease will be treated as a guest. The apartment is to be used only as Tenant's private dwelling, and Tenant may not sublease or take in lodgers. If a guest stays longer than 14 days and/or nights in a 45-day period, that guest will be considered a household member and the Tenant must request approval to add the new member to the lease in accordance with all other terms of this lease agreement. An exception to the fourteen (14) day limit will be granted when a household member requires care during physician certified illness or recuperation from illness or injury. Written permission must be obtained from the Landlord for this exception.

D. <u>Length of Tenancy:</u> Tenancy shall begin when Landlord gives actual notice to the Tenant that the Tenant has the right under the lease to occupy the dwelling unit, and the Landlord delivers keys for the dwelling unit to Tenant. The tenancy shall terminate when one of the following occurs:
(1) The Tenant gives actual notice to the Landlord that the Tenant has surrendered any right to occupy the dwelling unit or the Tenant returns the keys to the dwelling unit;
(2) After the expiration date of an outstanding termination of tenancy notice or the end of a term and the Landlord reasonably believes under all circumstances that Tenant has surrendered or no longer claims the right to occupy the dwelling unit.
(3) The Landlord reasonably knows of the Tenant's abandonment of the dwelling unit. After Tenant's tenancy has terminated, any property or possessions left in the premises will be handled in accordance with applicable Oregon Landlord/Tenant law.

**6. RENT**. Tenant shall pay to Landlord as rent the sum of $526.00 per month, based on Tenant adjusted income. Rent shall be paid by personal check, cash, money order or bank check only. Rent is due on the first day of each month at the Management Agent's office address shown on the 1st page of this agreement, or at such other place as may be designated by Landlord. **Cash should not be mailed and change will not be given. If Tenant pays too much rent, a credit on the Tenants account will reflect the overpayment.** Rent for the second and last months of the Lease term shall be prorated on a daily basis if the Lease commences or terminates on a day other than the first day of the month. The prorated daily basis will be determined by dividing the monthly rent by thirty and multiplying by the number of days of occupancy in the month. **All payments shall be made payable to Grand Management Services.** Tenant contribution may be increased or decreased because of changes in Tenant's household income or by the number and ages of the people living in the apartment. Tenant contributions may be modified without the 30-day notice described herein if household income or number of people living in the apartment changes. As a result of these changes, monthly Tenant contribution may be no less than $526.00 (basic rent) nor more than $726.00 (note rate rent), unless the government subsidizing agency approves a change in these amounts. No increases in Tenant contribution to rent will take place due to prepayment of the federal loan during the term of the lease.

A. <u>Rent Escalation Clause.</u> It may become necessary to change (increase or decrease) rent prior to the expiration of this lease due to changes in utility or other operational costs. All changes will take effect after a 30-day written notice has been given stating the intent to change the rent, even if the lease term has not expired.

**EXHIBIT 7 - Page 2 of 48**
GMS 001159

B. <u>Rent Increases.</u> The Landlord reserves the right to increase the monthly rent after giving a 30-day written notice stating the intent to increase the rent.

C. <u>Reporting Changes in Household Composition and Receipt of HUD Assistance.</u> Tenant shall notify the Landlord immediately in writing if Tenant's household size changes, Tenant's income changes or Tenant begins to receive HUD assistance. Landlord may adjust Tenant's rent and/or utility allowance to reflect Tenant's status as a HUD-assisted Tenant.

D. <u>Recertification of Eligibility and Misrepresentation by Tenant.</u> Landlord will calculate your rent at least once a year or more often, if any of the changes listed above occur. Tenants are required to recertify when a change in income occurs by $100 or more per month or if requested by Tenant with a change in income of $50 or more per month. Tenant agrees to provide us with certification and income verifications so Landlord can complete these recalculations. If Tenant misrepresents the facts upon which Tenant rent and eligibility determinations are made, Tenant understands and agrees that Tenant may be required to repay rent reductions to which Tenant was not entitled. Tenant understands that fraud or misrepresentation could result in legal action if there are intentional misrepresentations or falsifications, Tenant may also subject himself/herself to federal penalties. Intentional misrepresentation of facts used to determine Tenant eligibility may also be considered material non-compliance of the lease and subject to termination of tenancy.

E. <u>Permanent Occupancy.</u> Tenant must notify Landlord in writing if Tenant intends to be absent from the apartment unit for more than seven (7) consecutive days. Such notice must be given no later than the 1st day of each absence.

**7. LATE CHARGES OR DISHONORED CHECKS.** If Tenant rent is received in the Manager's office or the Management Agent's office after the 10th of any month, Tenant will be assessed a $10 late charge. Late rent payments are subject to eviction as stated in Section 23b. Any dishonored check shall be treated as unpaid rent and is subject to a $35 charge for non-sufficient funds – NSF check fee.

**8. PAYMENTS.** Any failure by Tenant to pay rent and other charges or to comply with any terms and conditions specified herein, may terminate this tenancy at the option of the Landlord subject to provisions of the Landlord/Tenant Law. Management will accept the Tenant contribution toward rent charges prior to payment of other charges owed. However, management may seek legal remedy for collecting any and all other charges accrued by Tenant.

**9. PARTIAL PAYMENTS.** Landlord accepting partial payment does not waive the right of the Landlord to proceed with eviction if the balance of the rent is not paid as agreed in writing.

**10. ASSIGNMENTS AND SUBLEASE.** No part of the premises may be assigned, mortgaged, or subleased, nor may a right of use of any portion of the premises be conferred to any third person, without the prior written consent of the Landlord, which may be withheld or granted at Landlord's sole discretion. No consent in one instance shall prevent this provision from applying to a subsequent instance.

**11. APPLIANCES AND UNIT PROPERTY.** This dwelling unit is supplied with the following appliances and unit property belonging to the owner:
☒ Refrigerator   ☒ Stove   ☐ Dishwasher   ☐ Disposal   ☒ Window Blinds   ☐ Other: _____

**12. UTILITIES.** Landlord and Tenant agree to pay for the following utilities as indicated:

| **LANDLORD** | **TENANT** |
|---|---|
| Water and Sewer | Electricity, Natural Gas |
| Garbage | Telephone, Television Cable, Other |

Tenant agrees to participate in an annual utility survey to determine a fair and equitable utility allowance to be deducted from gross median rent. Tenant is required to arrange for the electricity of the unit to be placed in his/her name immediately upon possession of the unit and shall be responsible for the costs of electricity as they become due. Payment for other optional services such as telephone and television cable is the responsibility of the Tenant. Failure to maintain electricity to the unit will be grounds for eviction.

**13. SIZE OF APARTMENT.** Overcrowding in an apartment unit shall occur when the occupancy would be deemed to exceed maximum occupancy as established by local fire district regulations. There shall be a minimum of 1 person and a maximum of three people for each 1 bedroom dwelling. There shall be a minimum of 2 people and a maximum of five people for each 2 bedroom apartment. There shall be a minimum of 3 people and a maximum of seven people for each 3 bedroom apartment. If at any time the unit becomes underutilized or overcrowded, it is Tenant's responsibility to move to an appropriate size unit within 30 days of notice from Landlord, when it becomes available.

**14. TENANT DUTIES.** Tenant is obligated to comply with the following duties:

A. <u>Cleaning.</u> Tenant must keep his/her apartment clean at all times. Tenant shall be financially liable for any violation of health or safety codes caused by Tenant or a person in Tenant's control. The Landlord definition of "clean" shall be the final definition.

**EXHIBIT 7 - Page 3 of 48**
GMS 001160

B. <u>Safety</u>. Tenant shall not use the apartment for any purpose considered dangerous to health or safety of persons or property. Tenant shall take particular caution with any fire hazards, and smoking is prohibited. Tenant shall not store flammable or hazardous materials.
C. <u>Garbage</u>. Tenant must regularly dispose of garbage in a sanitary manner. Garbage shall be bagged before placement in the garbage receptacles provided by the Landlord. If Tenant fails to properly dispose of garbage, Tenant will be required to pay for all costs of pest extermination or receptacle cleaning.

D. <u>Use of Property</u>. Tenant must properly use Landlord's property, including heaters, plumbing, appliances, and any other items. Tenant shall report leaky or defective faucets at once. If caused by Tenant, household member or guest, any expense or damage caused by stoppage of waste pipes or overflow of bathtubs, toilets or wash basins must be paid by the Tenant as well as any damage to the building or furnishings other than ordinary wear and tear. In severe weather, reasonable precautions will be taken by Tenant (ie. leave water dripping, keep heat on) to keep pipes from freezing. Report immediately, in writing, all malfunctions of equipment, failure of essential services, or need for repair. Tenant shall not tamper with the smoke detector, heaters, refrigerator, locks, appliances, hot water heater, etc., and shall not make any alterations of any nature to the premises. Tenant agrees to use the premises only as a dwelling. Disorderly conduct shall be grounds for eviction. Tenant shall restrict all noise to a reasonable level. Tenants and their guests shall conduct themselves in a manner that will not disturb their neighbors' peaceful enjoyment of the premises.

E. <u>Damage to Apartment/Property</u>. Tenant must not damage or remove any of Landlord's property or permit any family member or person that Tenant has invited onto property to do so. Tenant will pay for any damages caused by Tenant, Tenant's family, or any person Tenant invited onto the property.

F. <u>Nuisance</u>. Tenant shall not do anything which interferes with the right of other Tenants to have a safe, healthy and comfortable place to live, or which disturbs the quiet enjoyment of their apartments.

G. <u>Utilities</u>. Tenant must not waste the utilities paid by Landlord.

H. <u>Appliances</u>. Tenant must not install a dishwasher, washing machine, dryer, air conditioner, etc; including portable appliances such as a portable dishwasher or washing machine.

I. <u>Fixtures</u>. Tenant must not attach anything to the apartment building, or construct a fence, without Landlord's prior written approval; prior written approval will not be unreasonably withheld. Tenant must remove any such items when Tenant leaves, without damage to Landlord's property, unless Landlord permits it to remain.

J. <u>Alterations</u>. Tenant must not alter, paint, or in any way change the property, including changing of door locks or installing of additional locks without Landlord's prior written approval; prior written approval will not be unreasonably withheld.

K. <u>Locks</u>. Doors of Tenant's dwelling should be kept locked. Tenant shall notify Landlord in writing if locks fail to operate. The Landlord will not be liable or responsible in any way for loss or damage to articles or property belonging to Tenant. Tenant should maintain fire and theft insurance for his/her personal property.

L. <u>Waterbeds, Aquariums, Pianos or Organs</u>. No waterbeds, aquariums, pianos or organs are allowed without written consent of the Landlord.

M. <u>Pets</u>. Tenant must not have pets or other animals without Landlord's prior written approval, except that a Tenant may keep a seeing eye, hearing ear animal or other assistance animal as required by such Tenant. Tenant shall be permitted to have an assistance animal on the premises only with the prior written approval of Landlord. Written consent shall only be provided when Tenant has furnished documentation that an assistance animal is medically necessary for the well-being of the Tenant or household member. Form of documented need is available from the manager and must be completed and signed by a qualified person.

N. <u>Prior Approval</u>. The following items have the Landlord prior written approval (describe the time, date of approval and place initials below): All required forms must be attached to this lease.

_____
_____
_____

O. <u>Exceptions</u>. If Landlord gives special permission or fails to enforce these duties against some Tenants, it does not mean that they do not bind Tenant. If Tenant has any problems or concerns, please discuss them with Landlord.

P. <u>Failure of Tenant to Comply with Tenant Duties</u>. Failure of Tenant to comply with any provision in this provision 14 shall be cause for termination of this lease in accordance with provision 24.

**EXHIBIT 7 - Page 4 of 48**
GMS 001161

Q. Unit Inspections. Tenant shall allow Landlord and government to inspect the interior of the apartment on a periodic basis, following notice in accordance with provision 20.

**15. LANDLORD'S DUTIES.** In addition to other duties in this Lease, Landlord agrees to do the following:

A. Maintenance. Maintain the apartment building and common areas in a decent, safe, and sanitary condition, and abide by all local and state codes and requirements, Agency regulations and Federal fair housing requirements.

B. Infestation. Exterminate all insects, rodents and other pests. If infestation is due to fault of Tenant, Tenant will be charged with the cost of extermination services.

C. Locks. Provide adequate locks and furnish initial keys to Tenant.

D. Garbage. Provide and maintain garbage receptacles.

E. Documents. Give Tenant copies of the lease, annual Tenant certification and any other requested documents applicable to the Tenant's occupancy within 10 days of request.

**16. APARTMENT INSPECTION REPORT.** Before Tenant moves in, both Tenant and Landlord will inspect Tenant's apartment for dirt, defects, and other damage. Tenant and Landlord will then complete and sign an Apartment Inspection Report; Tenant and Landlord will each receive copies. By signing the Apartment Inspection Report, Tenant agrees that Tenant is satisfied with the condition of the apartment and that Landlord will not be required to repaint, re-plaster, or perform any other work, except for those items specified on the report. If the need for such work arises later in the tenancy, through no fault of the Tenant, the Landlord is obligated to perform such work. Quarterly inspections may be made to make sure your apartment remains in satisfactory condition. When Tenant leaves the apartment, Tenant and Landlord will inspect the apartment and complete and sign the Apartment Inspection Report. It is Tenant's duty to leave the apartment in as good condition as received, normal wear and tear excepted. This inspection report will assess whether Tenant has damaged or failed to clean the apartment, and any withholding of money from Tenant's security deposit will be based on this report. In the event Tenant terminates the lease agreement without an inspection, Landlord will make the inspection, provide a copy to the Tenant, and will notify Tenant of any charges that are to be deducted from the deposit in accordance with item 17f. of this agreement.

**17. SECURITY / DAMAGE DEPOSITS.**

A. Amount. Tenant must pay a refundable security deposit of $300.00. If Tenant shows that Tenant cannot afford to pay all of the security deposit at move-in, Landlord may work out a reasonable monthly payment program, preferably in three equal payments. All other Tenants will pay the full security deposit prior to moving in.

B. Where Kept. Landlord will place Tenant's security deposit in a trust account at Umpqua Bank, Coos Bay, Oregon.

C. Your Duties. When Tenant leaves the apartment, Landlord may retain a portion or all of Tenant's deposit for the following expenses:
(1) Any rent, late fees or other charges Tenant owes will be deducted.
(2) Tenant has been given two keys to the front door of the apartment. At the termination of the lease, Tenant shall return all keys to Landlord. Any key not returned will result in a $5 charge per key being deducted from the Tenant's security deposit. If no keys are returned, a $40 charge per lock mechanism will be deducted from the Tenant's security deposit.
(3) Tenant shall clean and restore the apartment to its original condition except for normal wear and tear. (Landlord will review the first and final Apartment Inspection Reports). If the apartment is not cleaned, the cost of cleaning will be deducted.

D. Negligence. Tenant shall not store flammable materials on the premises. All damages (i.e. carpets, countertops, etc.) caused by carelessness shall be repaired or replaced at the Tenant's expense.

E. Limited Liability. The Landlord shall not be liable for damages of any kind caused by the lack of heat, refrigeration or other services to the premises arising out of any accident, act of God, or occurrence beyond the control of the Landlord. The Tenant shall be limited to the rights and remedies specified in the Oregon Landlord/Tenant Act.

F. Refunds. Tenant must provide Landlord with a forwarding address so that Landlord can send Tenant an accounting of the security deposit and any refund due. Landlord will return The Tenant's security deposit within 31 days of the move-out date recorded by the Landlord, or send a full statement specifying grounds for retaining any or all of the deposit along with a listing of items and their costs. If Tenant does not provide Landlord with a forwarding address, Landlord will send the deposit and/or statement to Tenant's last known address. If Tenant owes Landlord funds after security deposit refund has been processed, the Landlord reserves the right to forward the balance owing to collections within 7 days.

**EXHIBIT 7 - Page 5 of 48**
GMS 001162

**18. LIABILITY TO THIRD PERSONS.**

A. Liens. Except with respect to activities for which Landlord is responsible, Tenant shall pay as due all claims for work done on and for services rendered or material furnished to the premises and shall keep the premises free from any liens caused by Tenant's failure to meet Tenant's obligations.

B. Indemnification. Tenant shall indemnify, defend, and hold Landlord harmless from any claim, loss or liability arising out of or related to any activity on the premises of Tenant and any person who comes on the premises at the invitation or with the acquiescence of Tenant. Tenant's duty to indemnify shall not apply to or prevent any claim by Tenant against Landlord for injury or damage to Tenant or Tenant's property for which Landlord may be liable as a result of Landlord's negligence or willful misconduct.

**19. REPAIRS.** Tenant must pay the cost of repair for anything that Tenant damages. Landlord is responsible for all other repairs, including those items that break down due to old age or defect. Tenant agrees to notify Landlord in writing of what repairs expects, unless there is an emergency. Landlord will attempt to repair loss of heat, water, or a life threatening condition within 24 hours. Landlord will attempt to restore hot water or electricity within 48 hours. Most other repairs that are Landlord's responsibility will be investigated and repaired within 30 days. If Tenant damages something that substantially affects the health or safety of other Tenants, and fails to pay for repair by a contractor approved by the Landlord, Landlord may serve Tenant with a written notice specifying what repairs are to be made and what the Tenant will be billed for the repairs. Tenant must pay this bill, on the next rent due date, unless both Landlord and Tenant make a written agreement specifying some other terms of payment. If Tenant fails to pay, Landlord may evict Tenant under the procedures described in this lease. If the items Tenant has damaged do not substantially affect the health or safety of our other Tenants, Tenant must nevertheless arrange for repairs through a contractor approved by the Landlord in a timely manner. If Tenant fails to do so, the Landlord can make necessary repairs and charge the Tenant in the manner described in the preceding paragraph, or may pursue a legal agreement through the court system.

**20. LANDLORD'S RIGHT OF ACCESS.** Except in the case of emergency, agreement to the contrary, Landlord shall give Tenant at least 24 hours prior written notice of Landlord's intent to enter premises. Landlord may enter the premises only at reasonable times. Landlord may notify Tenant whenever periodic inspections are planned, and Tenant shall allow access to the premises. Landlord may enter the dwelling unit or premises under the Tenant's exclusive control without Tenant's consent in the case of an emergency; in the case of Tenant's absence in excess of seven days if Landlord was not notified as required by the lease and ORS 90.322; in the case of abandonment or surrender of the premises by the Tenant as described in ORS 90.410 (3); or pursuant to court order.

**21. INSURANCE.** The Landlord will not be liable or responsible in any way for loss or damage to articles or property belonging to the Tenant or guests of the Tenant. Tenant is responsible to maintain fire and theft insurance for personal property. Tenant is also responsible for liability coverage for damage or fire caused by Tenant or Tenant's guests and due to Tenant's (or guest's) negligence or damage caused by Tenant's (or guest's) pets.

**22. TENANT'S RIGHT TO TERMINATE LEASE.** After the initial 12 month term, the Tenant may terminate this lease by giving Landlord thirty (30) days' notice in writing. If the Tenant wishes to terminate lease during the initial 12 month term, good cause must be given in order to avoid liability on the remaining portion of the lease. Tenant is responsible for unpaid rent through the balance of the term of the lease, as stated in Section 3, or until the unit is re-rented, whichever occurs first. Notice may be given on any day of the month.

**23. LANDLORD'S RIGHTS TO TERMINATE LEASE.** Tenant agrees that this lease may be terminated by Landlord upon notification in accordance with Oregon law. This includes whenever any action or conduct of the Tenant has disrupted the livability of the project by adversely affecting the health or safety of any Tenant; interfered with the right of any Tenant to the quiet enjoyment of the premises; or otherwise breached any portion of this lease.

If rent is unpaid when due, Landlord may take the following courses of action:

(a) If the rent is not paid by the eighth (8th) day of the rental period, the Landlord may give a seventy-two (72) hour written notice of non-payment indicating that Landlord intends to terminate the lease agreement if the rent is not paid within seventy-two (72) hours; or

(b) If the rent is not paid by the fifth (5th) day of the rental period, the Landlord may give a one hundred forty-four (144) hour written notice of non-payment that will indicate that the Landlord intends to terminate the lease agreement if the rent is not paid within one hundred forty-four (144) hours.

If Tenant fails to pay the rent within the time set forth in the notice given by Landlord to Tenant, the Landlord may terminate the lease and take appropriate legal action to evict Tenant. Eviction will be handled according to the Residential Landlord/Tenant law and other applicable regulations.

**24. NON-COMPLIANCE WITH LEASE.** Any non-compliance with the lease will result in termination of the lease pursuant to Oregon Residential Landlord/Tenant Law (ORS 90.392 to ORS 90.415).

A. Good Cause. The Landlord may terminate this lease at any time, by the giving of written notice to the Tenant not less than thirty (30) days prior to termination. Such notice may only be given for good cause, such as serious or repeated damage to the premises, creation of physical hazards, refusal to follow project rules, or due to violations of government regulations or over-income status. Expiration of this lease shall not be good cause. The notice shall clearly state the reasons for the termination. The Tenant shall have fourteen (14) days within which to cure the violation. The notice will provide the date by which the Tenant must vacate the apartment if Tenant fails to cure the violation. The notice shall state that a recurrence of the violation within a six (6) month period shall be cause for termination of the lease agreement.

B. Outrageous Conduct. Landlord may immediately terminate the lease and take possession after twenty-four (24) hours written notice if:

(1) Tenant, or someone under Tenant's control, or the Tenant's pet threatens to immediately inflict personal injury or actually inflicts substantial personal injury upon the Landlord or the Landlord's employees or any other Tenant or any neighbor living in the immediate vicinity,
(2) Tenant, someone under Tenant's control, or Tenant's pet intentionally inflicts any substantial damage to the premises, or
(3) Tenant has vacated the premises, and a person is holding possession, contrary to a written lease agreement that prohibits subleasing the premises without written permission of the Landlord and the Landlord has not knowingly accepted rent from the person in possession, or
(4) Tenant, or someone under Tenant's control commits any act that is outrageous in the extreme. An "act outrageous in the extreme" includes, but is not limited to, the following acts that Tenant or person in Tenant's control has in fact committed on the premises or in the immediate vicinity of the premises:
[a] Prostitution or promotion of prostitution, as described in ORS 167.007 and 167.012.
[b] Manufacture or delivery of a controlled substance, as described in ORS 475.005, but including delivery as described in ORS 475.9992 (2)(b).
[c] Intimidation, as described in ORS 166.165, or
[d] Burglary, as described in ORS 164.225.

With regard to "acts outrageous in the extreme" as described in this subsection "B" an act can be proven to be "outrageous in the extreme" even if it is one that does not violate a criminal statute. In addition, notwithstanding the reference in subsection "B" of this section to existing criminal statutes, the Landlord's standard of proof in an action for possession under this subsection remains the civil standard, providing proof by a preponderance of the evidence.

If a good faith effort by a Landlord to terminate a tenancy pursuant to subsection (24B) of this section and to recover possession of the rental unit pursuant to ORS 105.168 fails by decision of the court, the Landlord may not be found in violation of any state statute or local ordinance requiring the Landlord to remove the Tenant upon threat of fine, abatement or forfeiture as long as the Landlord continue to make a good faith effort to terminate the tenancy.

C. Notice of Intent to Evict for Cause. The notice of intent to evict for cause shall describe the reasons for the termination and eviction and shall refer to portions of the lease which Tenant has violated. The notice shall also specify that Tenant shall have fourteen (14) days within which to cure such violations. If the violation of the Lease is one that ORS 90.392 allows to cure, the notice will state that the violation can be cured and describe at least one way to cure the violation. The notice shall indicate the date by which Tenant must vacate the apartment if Tenant fails to cure. The notice shall indicate that the recurrence of such violations within a six (6) month period shall be cause for termination of the lease agreement.

D. Keeping a Pet. If Tenant keeps a dog, cat, or other pet on the premises in violation of this lease, Landlord may deliver a written notice to Tenant specifying the violation, and stating that the lease will terminate on a date not less than ten (10) days after receipt of the notice, unless Tenant removes the pet from the premises prior to the date specified.

E. Misstatement on Application. Tenant has delivered to Landlord an application to rent. Landlord has relied reasonably on the accuracy of Tenant's application and the facts set forth therein in entering into this lease. Tenant's application is incorporated into this lease by this reference. The parties agree that any material misstatement of fact by Tenant on the application shall also be a breach of this lease. Landlord may deliver written notice to Tenant stating the material misstatement of fact and that the lease will terminate on a date not less than thirty (30) days after Tenant's receipt of the notice.

F. Other Breaches. In the case of any material non-compliance by Tenant with the terms of the lease or any noncompliance with ORS 90.325 materially affecting health and safety, Landlord may deliver a written notice to Tenant specifying the acts and omissions

**EXHIBIT 7 - Page 7 of 48**
GMS 001164

constituting the breach and indicating that the lease will terminate on a date not less than thirty (30) days after receipt of notice, if the breach is not remedied by the date specified.

G. Non-Handicapped Tenant in a Handicapped Unit. Tenants not benefitting from the modifications of a handicap unit agree to surrender possession of the unit to the Landlord not later than thirty (30) days after Landlord notifies Tenant that the handicapped unit is needed for a family that would benefit from the modifications of the unit and that another non-handicapped unit is available, appropriate for the size of the non-handicapped family or the individual that is not benefiting from the modified unit. Tenant shall bear all cost associated with said transfer of units.

H. Manner of Taking Possession. In the event of termination of the lease pursuant to the provisions of this Section 25, Landlord may take possession in the manner provided in ORS 105.105.165 or in any other manner, including voluntary surrender by Tenant.

I. Landlord's Right to Sue for Unpaid Rent. Landlord shall be entitled to bring action against Tenant at any time to recover unpaid rent. If Landlord has elected to bring an action because of Tenant's breach, Landlord shall be entitled to bring an action for unpaid rent for the remainder of the lease term or until re-rented, whichever occurs first. If Tenant refuse to move out of the apartment, Landlord may seek to force Tenant to move by filing an eviction suit against Tenant in state court. If Landlord brings an eviction suit against Tenant in state court and the Landlord is successful, the judge may order Tenant to pay all court costs and Landlord expenses, including reasonable attorney fees. Tenant will be given a chance to present a defense during this court action.

J. Abandoned Property. Property of Tenant left on the premises, after surrender or abandonment of the premises or termination of this lease by any means, shall be deemed abandoned and, after proper notice as required by law, shall be disposed of in accordance with ORS 90.425.

K. Letter of Priority Entitlement. Tenants who hold a Letter of Priority Entitlement (LOPE) issued according to §3560.655(d) and are temporarily occupying a unit for which they are not eligible must move when a suitable unit becomes available in the housing project.

L. Restrictive Use Modification. If loan prepayment occurs and the Premises become subject to restrictive use provisions, this Lease, and all renewals hereto, shall be amended in writing to include terms protecting Tenant under 7 CFR 3560.651-700.

**25. ILLEGAL CONTROLLED SUBSTANCES.** It is understood that the use, or possession, manufacture, sale, or distribution of an illegal controlled substance (as defined by local, State, or federal law) while in or on any part of this apartment complex or cooperative is an illegal act. It is further understood that such action is a material lease violation. Such violations (hereafter called a "drug violation") may be evidenced upon the admission to or conviction of the use, possession, manufacture, sale, or distribution of a controlled substance (as defined by local, state, or Federal law) in any local, state, or Federal court. It is further understood that domestic violence will not be tolerated on Rural Development properties, and that such action is a material lease violation. All perpetrators will be evicted, while the victim and other household occupants may remain in the unit in accordance with eligibility requirements.

The Landlord may require any lessee or other adult member of the Tenant household occupying the unit (or other adult or non-adult person outside the Tenant household who is temporarily occupying the unit) who commits a drug violation or domestic violence to vacate the leased unit permanently; within timeframes set by the Landlord; and not thereafter to enter upon the Landlord's premises or the lessee's unit without the Landlord's prior consent as a condition for continued occupancy by the remaining members of the Tenant's household. The Landlord may deny consent for entry unless the person agrees to not commit a drug violation or domestic violence in the future and is either actively participating in a counseling or recovery program, complying with court orders related to a drug violation or domestic violence, or has successfully completed a counseling or recovery program.

The Landlord may require any lessee to show evidence that any non-adult member of the Tenant household occupying the unit, who committed a drug violation or domestic violence, agrees to not commit a drug violation or domestic violence in the future, and to show evidence that the person is either actively seeking or receiving assistance through a counseling or recovery program, complying with court orders related to a drug violation or domestic violence, or has successfully completed a counseling or recovery program within timeframes specified by the Landlord as a condition for continued occupancy in the unit. Should a further drug violation or domestic violence be committed by any non-adult person occupying the unit the Landlord may require the person to be severed from tenancy as a condition for continued occupancy by the lessee.

If a person vacating the unit, as a result of the above policies, is one of the lessees, the person shall be severed from the tenancy and the lease shall continue among any other remaining lessees and the Landlord. The Landlord may also, at the option of the Landlord, permit another adult member of the household to be a lessee.

Should any of the above provisions governing a drug violation be found to violate any of the laws of the land the remaining enforceable provisions shall remain in effect. The provisions set out above do not supplant any rights of Tenants afforded by law.

**EXHIBIT 7 - Page 8 of 48**
GMS 001165

**26. TENANT AGREES AS FOLLOWS: (All Tenants)** I understand that I will no longer be eligible for occupancy in this project if my income exceeds the maximum allowable adjusted income as defined periodically by Rural Development. I agree I must immediately notify the Landlord when there is a change in my gross income or adjustment to income, or when there is a change in the number of persons living in the household. I understand my rent or benefits may be affected as a result of this information. I understand that fraud or misrepresentation could result in legal action. I also understand that failure to report such changes may result in my losing benefits to which I may be entitled or may result in the Landlord taking corrective action if benefits were mistakenly received. I understand the corrective action the Landlord may take includes the initiation of a demand for repayment of any benefits or rental subsidies improperly received, initiation of a notice to cancel any rental assistance of Section 8 assistance being received for the balance of my certification period, initiation of a notice to increase my monthly rent to $526.00 per month (note rate rent for Plan II projects or 125 percent of rent in Plan I projects), or initiation of a notice of termination. I understand that one or more of these remedies may be initiated at the option of the Landlord. I understand that I must promptly notify the Landlord of any extended absences and that if I do not personally reside in the unit for a period exceeding 60 consecutive days, for reasons other than health or emergency, my net monthly Tenant contribution shall be raised to $726.00 per month (note rate rent for Plan II projects or 125 percent of rent in Plan 1 projects) for the period of my absence exceeding 60 consecutive days. I also understand that should any rental assistance be suspended or reassigned to other eligible Tenants, I am not assured that it will still be available to me upon my return. I also understand that if my absence continues, that as Landlord, you may take the appropriate steps to terminate my tenancy. I understand that should I receive occupancy benefits to which I am not entitled due to my/our failure to provide information or due to incorrect information provided by me or on my behalf by others, or for any other household member, I may be required to make restitution and I agree to pay any amount of benefits to which I was not entitled. I understand that income certification is a requirement of occupancy and I agree to promptly provide any certifications and income verifications required by the Owner or Landlord to permit determination of eligibility and, when applicable, the monthly Tenant or member contribution to be charged.

**27. TENANTS ON RENTAL ASSISTANCE.** I understand and agree that as long as I receive rental assistance, my gross monthly contribution (as determined on the latest Form RD 3560-8, which must be attached to this lease) for rent or occupancy charge and utilities will be $584.00. If I pay any or all utilities directly (not including telephone or cable T.V.), a utility allowance of $58.00 will be deducted from my gross monthly contribution and my resulting net monthly contribution will be $526.00. If my net monthly contribution would be less than zero, the Landlord will pay me $58.00. I also understand and agree that my monthly contribution under this lease may be raised or lowered, based on changes in my household income or adjustments to income, failure to submit information necessary to certify income, changes in the number and ages of persons living in the household, and on the escalation clause in this contract. Tenant may always request re-certification and Management will provide Tenant with recertification packet in accordance with Rural Development policies. Should I no longer receive rental assistance as a result of these changes, or the rental assistance agreement executed by Owner and RD expires, I understand and agree that my monthly contribution may be adjusted to no less than $526.00 (basic rent) nor more than $726.00 (note rate rent) during the remaining term of this lease, except that based on the escalation clause in this contract, these rates may be changed by a Rural Development approved rent or occupancy charge change. I understand that every effort will be made to provide rental assistance so long as I remain eligible and the rental assistance agreement between the Owner and RD remains in effect. However, should this assistance be terminated, I may arrange to terminate this contract, giving proper notice as set forth elsewhere in this lease. If Federal subsidies paid to the borrower on behalf of the Tenants are suspended or cancelled due to Federal budget issues, my monthly payments will not change for the term of the lease. In addition, no change in the Tenant contribution will occur due to monetary or non-monetary default or when rental assistance or interest credit, is suspended, canceled, or terminated due to the borrower's fault.

It is understood by all parties to this lease that this apartment complex is financed by the Rural Development branch of the United States Department of Agriculture, and the Agency has the right to further verify all information provided by the Tenant.

**28. TENANTS AT BASIC AND OVER.** I understand and agree that my gross monthly Tenant contribution as determined on the latest Form RD 3560-8 (attached) for rent and utilities will be $584.00. If I pay any or all utilities directly (not including telephone or cable T.V.) a utility allowance of $58.00 will be deducted from my gross monthly Tenant contribution, except that I will pay not less than the basic rent nor more than the market rent stated below. My net monthly Tenant contribution will be $526.00. I understand that should I receive rental subsidy benefits (interest credit) to which I am not entitled, I may be required to make restitution. I also understand and agree that my monthly Tenant contribution under this lease may be raised or lowered based on changes in my income, changes in the number and age of family members living in my household, my failure to submit information necessary to certify income, and on the escalation clause in this lease. The monthly payment will not, however, be less than $526.00 (basic rent), nor more than $726.00 (note rate rent) during the term of this lease, except that based on the escalation clause in this lease, these rental payments may be changed by a Rural Development approved rent change. I also understand that fraud or misrepresentation could result in legal action.

**29. SMOKE DETECTOR.** Tenant hereby acknowledges the presence of a smoke detector in good working condition in the rental unit. Tenant acknowledges to have been instructed in how to test this detector and is aware that Tenant is responsible for testing this detector at least once a month, but preferably every week. Tenant will notify the Landlord if the smoke detector is not operating. There is a $250 fine for tampering with a smoke detector or removing its battery. The Landlord may conduct quarterly inspections to make sure smoke detectors are operating properly.

(Rev. 6/13) Subsidized Lease Agreement                                                                                                    - 9 -

**EXHIBIT 7 - Page 9 of 48**
GMS 001166

**30. RULES AND REGULATIONS**. Tenant will receive a copy of the Landlord's rules and regulations (ground rules) before Tenant signs this lease. By signing this lease, Tenant agrees to abide by those rules. Landlord may change the rules and regulations, but only after giving Tenant 30 days written notice and an opportunity to offer comments and suggestions.

**31. DESTRUCTION OF UNIT**. If the apartment or unit becomes uninhabitable because of fire or other disaster, Landlord or Tenant may terminate the lease according to state law. If the Landlord chooses to repair the unit, such repair must occur in a reasonable time period.

**32. EMINENT DOMAIN**. If a condemning authority takes all of the premises or a portion sufficient to render the remaining premises reasonably unsuitable for Tenant's use as a dwelling unit, the lease shall terminate as of the earlier of the date that title or possession is taken by the condemning authority. Landlord shall be entitled to all of the proceeds of condemnation and Tenant shall have no claim against Landlord as a result of the condemnation.

**33. ATTORNEY FEES AND COSTS**. In the event any suit or action is brought to collect any of said rents or to enforce any provision of the agreement or to repossess said premises, reasonable attorney's fees may be awarded by the trial court to the prevailing party in such suit or action together with costs and necessary disbursements; and on appeal, if any, similar reasonable attorney's fees, costs and disbursements may be awarded by the appellate court to the party prevailing on such appeal.

**34. NOTICES**. Notices shall be either verbal or written as provided by ORS 90.150 and ORS 90.155. All notices from the Landlord to the Tenant may be served by personal delivery, first class mail, or by first class mail and attachment to the main entrance of that portion of the premises to which the Tenant has possession. All notices from the Tenant to the Landlord may be served by personal delivery, first class mail, or first class mail and attachment to the address indicated on page one of this agreement.

**35. SUCCESSION**. Subject to the provisions of Section 10, this lease shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns. This Lease will transfer if the housing project is sold to an Agency approved buyer.

**36. COMPLIANCE WITH RESIDENTIAL LANDLORD AND TENANT ACT**. This lease is intended to comply with the provisions of ORS 90.100 to 90.475, in effect on the date first written above. If a court determines that any provision in this lease conflicts with the act, the provisions of the Landlord/Tenant act shall apply. This lease shall be deemed to be amended to comply with any statutory changes in the act if such changes apply retroactively to existing leases, but not otherwise. In the event that a court determines that any provision in the lease conflicts with the act, or if statutory changes are enacted, the Landlord will amend the lease form or issue an addendum to the form, and a renewal lease or lease addendum will be required at the conclusion of the lease term.

**37. REQUIRED DISCLOSURES AND LANDLORD INDEMNIFICATION**. As a part of this lease agreement, Landlord has provided Tenant with information regarding lead paint and optional information regarding Stachybotrys mold. Tenant shall have the obligation to report any mold growth to Landlord so that Landlord has an opportunity to address repairs that may lead to or cause mold growth. Tenant shall indemnify, defend, and hold Landlord and agent harmless from any claim, loss, or liability for injury or damage to Tenant, unless such injury or damage is due to Landlord's negligence or willful misconduct.

**38. NONDISCRIMINATION**. This housing project is financed by USDA Rural Development and is subject to Title VI of the Civil Rights Act of 1964, Title VIII of the Fair Housing Act, Section 504 of the Rehabilitation Act of 1973, the Age Discrimination Act of 1975 and the Americans with Disabilities Act. All complaints are to be directed to the Administrator, Rural Development, USDA, Washington DC 20250. However, complaints of Fair Housing violations may be sent directly to the Secretary of Housing and Urban Development, Washington DC 20410.

**39. TENANT GRIEVANCES AND APPEAL**. If Tenant has a grievance, Tenant has the right to request a hearing in accordance with Rural Development regulation 3560.160 which is available upon request. Grievance forms are available in the laundry room and/or community room or from the manager or from the Landlord. A hearing request may be sent to:

_Grand Management Services, 420 Park Avenue, Coos Bay, Oregon 97420._

In Tenant's request, Tenant should explain Tenant's interpretation of the circumstances surrounding the appeal or grievance. Tenant should attach any information supporting the grievance. Within 10 days of the receipt of the grievance, a meeting will be held by the Landlord to review your request.

**40. PRIOR AGREEMENTS**. This document is the entire, final, and complete agreement of the parties pertaining to the lease and supercedes and replaces all written and oral agreements heretofore made or existing by and between the parties or their representatives insofar as the lease or the leased premises are concerned (save and except for the application, if any, recited in this lease). No modification of this lease shall be valid unless in writing and signed by the parties hereto.

---

**41. REPORTING TO CREDIT BUREAU**.    The attached Fair Credit Reporting Act Data Furnisher Policy was designed for a particular

residential rental property management company that furnishes information to Experian RentBureau ("RentBureau") regarding the company's transactions and experiences with consumers relating to their payment histories for residential properties that the company and others have rented to such consumers. In this regard, the Policy was designed for this company to comply with the requirements that the federal Fair Credit Reporting Act ("FCRA") imposes on it with respect to the furnishing of information to consumer reporting agencies. Notable among these is the requirement that each furnisher establish and implement reasonable written policies and procedures regarding the accuracy and integrity of the information relating to consumers that it furnishes to a consumer reporting agency. *See, e.g.*, 15 U.S.C. § 1681s-2; 16 C.F.R. pt. 660.

The attached Policy was designed to take into account this particular company's actual practices and procedures. As a result, the attached Policy is provided for illustrative purposes only, although there will be numerous similarities in practice among RentBureau contributors because of the common technology platform. In this regard, the federal rules implementing the FCRA require that each furnisher must establish and implement reasonable written policies and procedures regarding the accuracy and integrity of the information relating to consumers that it furnishes to a consumer reporting agency. *See, e.g.*, 16 C.F.R. § 660.3(a). Further, the federal rules provide that a furnisher's policies and procedures must be appropriate to the nature, size, complexity and scope of the furnisher's activities. *Id.* Specifically, the federal rules require that a furnisher's policies and procedures be tailored to the furnisher's own activities. As a result, while the attached Policy may serve as a model for other property management companies that furnish information to RentBureau, each furnisher should consider the relevant requirements of the FCRA and adopt a furnisher policy that is tailored to address its specific activities.

### Fair Credit Reporting Act Data Furnishing Policy

I.  Background.
- **A.  In General.** **Grand Management Services** is engaged in, among other things, the business of managing residential rental properties owned by others. As part of this management business, **Grand Management** collects rental payments from consumers with respect to these rental properties. **Grand Management** intends to furnish information to Experian RentBureau ("RentBureau"), a consumer reporting agency, regarding **Grand Managements'** transactions and experiences with consumers relating to their payment histories for residential properties that **Grand Management** and others have rented to such consumers.
- **B.  Purpose.** This Fair Credit Reporting Act Data Furnishing Policy ("Policy") is designed to comply with the requirements that the federal Fair Credit Reporting Act ("FCRA") imposes on furnishers of information to consumer reporting agencies, including the federal rules implementing the FCRA requirement that each furnisher must establish and implement reasonable written policies and procedures regarding the accuracy and integrity of the information relating to consumers that it furnishes to a consumer reporting agency. *See, e.g.*, 15 U.S.C. § 1681s-2; 16 C.F.R. pt. 660.
- **C.  Process.** In developing this Policy, **Grand Management** has:
    1.  considered the requirements that the FCRA imposes on furnishers of information to consumer reporting agencies;
    2.  conferred with RentBureau regarding how **Grand Management** can furnish the type of information required by RentBureau in an appropriate form, format and manner.

II.  **Objectives.** This Policy is designed to ensure, among other things, that:
- **A.**  information furnished by **Grand Management** to RentBureau identifies the appropriate consumer, reflects the terms of, and liability for, the consumer's rental agreement and reflects the consumer's performance with respect to such rental agreement;
- **B.**  information furnished by **Grand Management** to RentBureau is substantiated by **Grand Management's** records at the time it is furnished;
- **C.**  information is furnished by **Grand Management** to RentBureau in a form and manner that is designed to minimize the likelihood that the information may be incorrectly reflected in a consumer report by, among other things, being furnished in a standardized and clearly understandable form and manner and with a date specifying the time period to which the information pertains;
- **D.**  information furnished by **Grand Management** to RentBureau is updated, as necessary, so that it reflects the current status of the consumer's account; and
- **E.**  **Grand Management** conducts reasonable investigations of consumer disputes regarding information that **Grand Management** has furnished to RentBureau, where required, and takes appropriate actions based on the outcomes of such investigations.

III.  **Furnishing Generally.**
- **A.  In General.**  **Grand Management** will not furnish any information relating to a consumer to RentBureau that **Grand Management** knows is not accurate or that **Grand Management** has specific knowledge that would cause a reasonable person to have substantial doubts about the accuracy of the information.
- **B.  Method.**  **Grand Management** will furnish information to RentBureau in an automated and electronic fashion. Specifically, RentBureau will electronically collect information from **Grand Management's** account management system. The data transmission mechanism has been designed by RentBureau specifically to allow furnishers, like **Grand Management** to provide RentBureau with the data types that RentBureau requires in an automated, electronic and standardized form and format.
- **C.  Frequency.  Grand Management** will furnish information to RentBureau on a daily basis. As a result, any changes made by **Grand Management** to information regarding a consumer in its account management system and regarding which **Grand Management** furnishes to RentBureau generally will be transmitted to RentBureau within **one day** of such information being updated or entered into the account management system.

**EXHIBIT 7 - Page 11 of 48**
GMS 001168

    **D.  Data.** **Grand Management** will furnish the following types of information, where applicable, regarding a consumer that has a rental agreement for a residential property managed by **Grand Management**

        1.  the identifying information relating to the consumer that is requested by RentBureau, specifically: (a) first and last name; (b) date of birth; and (c) full address for place of residence (street, city, state and zip code);

        2.  identifying information relating to the property rented by the consumer, including: (a) property name; (b) property address (street, city, state and zip code); and (c) property phone number; and

        3.  information regarding the rental agreement and the consumer's payment performance with respect to the rental agreement, including: (a) status (current (open) or historical (closed)); (b) lease start and end dates; (c) move-in date; (d) date of last activity; (e) monthly rent amount; (f) date of last payment; (g) late payment status; and (h) information regarding late payment history (*e.g.*, total number of late payments in the most recent 24 months).

## IV.  Procedures.

    **A.  Rental Agreements.** The **Grand Management** employee or other personnel ("Property Manager") shall follow standard **Grand Management** procedures with respect to, and shall be responsible for, entering each new and amended rental agreement with a consumer into the account management system.

    **B.  Rental Payments.** When a consumer makes a rental payment, the Property Manager responsible for the property shall enter a record of such rental payment into the account management system.

    **C.  Discrepancies.** Whenever **Grand Management** has reason to believe that any information provided by an employee may not be accurate (*e.g.*, a record of payment is not consistent with a copy of payment or the deposit), **Grand Management** shall reconcile the discrepancy and, where appropriate, enter updated and accurate information into the account management system.

    **D.  Updates.** **Grand Management** shall, as appropriate, delete, update and correct information in the account management system regarding a consumer where necessary to ensure that information contained in the account management system regarding such consumer is accurate. By correcting information in the account management system, such information will be promptly updated at RentBureau.

    **E.  Recordkeeping.** **Grand Management** shall maintain a record of each rental agreement and rental payment for a period of not less than **6 years** following the consumer's move-out date from the relevant property.

    **F.  Disputes. Grand Management** shall conduct reasonable investigations of consumer disputes regarding information **they have** furnished to RentBureau, in accordance with the requirements of Subsection V of this Section 41.

    **G.  Testing.** Not less than annually Grand Management shall verify the accuracy of a random sample of information provided to RentBureau.

    **H.  Training. Grand Management** shall provide training to its staff regarding **Grand Management**'s standard procedures for entering rental agreement and payment records into the account management system, including verifying information where discrepancies are identified and updating information where appropriate, and the need for entering accurate information into the account management system.

## V.  Consumer Disputes.

    **A.  In General. Grand Management** will conduct a reasonable investigation of:

        1.  any consumer dispute regarding the accuracy or completeness of information furnished to RentBureau by **Grand Management** that is forwarded to **Grand Management** by RentBureau; and

        2.  any dispute submitted directly to **Grand Management** by a consumer concerning the accuracy of any information furnished to RentBureau, contained in a RentBureau consumer report and pertaining to an account that **Grand Management** has or had with the consumer ("Direct Dispute") that relates to:

            **a.**  the consumer's liability for a rental agreement, such as a Direct Dispute relating to whether there is or has been identity theft or fraud against the consumer or whether there is individual or joint liability for the rental agreement;

            **b.**  the terms of a rental agreement with **Grand Management** such as a Direct Dispute relating to the balance or scheduled payment amount on the account; or

            **c.**  the consumer's performance or other conduct concerning a rental agreement with **Grand Management,** such as a Direct Disputes relating to the current payment status, amount owed, the date or amount of a payment or the date the agreement was terminated.

    **B.  Grand Management's Dispute Address. Grand Management** will provide RentBureau with a **correct** address that RentBureau will include in all consumer reports provided to end users that include information furnished by **Grand Management** and to which consumers may submit Direct Disputes to **Grand Management** regarding information that **Grand Management** has provided to RentBureau.

    **C.  Resolving Disputes.** After receiving a consumer dispute from RentBureau or receiving a Direct Dispute from a consumer, **Grand Management** will:

        1.  review all relevant information provided by, as applicable, RentBureau or the consumer;

        2.  conduct a reasonable investigation with respect to the disputed information;

        3.  complete the investigation within thirty (30) calendar days; and

        4.  if the investigation finds that the information reported was not accurate or complete, promptly update the account management system.

**EXHIBIT 7 - Page 12 of 48**
GMS 001169

D. **Investigations of Direct Disputes Not Required. Grand Management** will not investigate a Direct Dispute if the Dispute relates to the following information included in a RentBureau report or a report using RentBureau data:

1. the Dispute relates to the consumer's identifying information, such as name, telephone number or address as reflected in a RentBureau report;
2. the Dispute relates to the identity of the consumer's past or present employer as reflected in a RentBureau report;
3. the Dispute relates to inquiries or requests for a consumer report;
4. the Dispute relates to information related to fraud alerts or active duty alerts;
5. the Dispute relates to information provided to RentBureau by another furnisher;
6. if the consumer did not provide sufficient information to identify the rental agreement that is in dispute, the specific information that the consumer is disputing or an explanation of the basis for the dispute or any supporting documentation or other information reasonably required by **Grand Management** to substantiate the basis of the dispute;
7. the Dispute is substantially the same as a dispute previously submitted by, or on behalf of, the consumer, either directly to **Grand Management** or through RentBureau, with respect to which **Grand Management** has already satisfied the applicable requirements of this Subsection V, provided that a Direct Dispute is not substantially the same as a dispute previously submitted, if the Dispute includes information listed in Subsection V.D.7 that had not previously been provided to **Grand Management**

**42. SIGNATURE CLAUSE.** I/We certify that I/we are legally capable, have read this lease, and agree to be bound by its provisions. The parties have executed this residential lease agreement on the date first written below. The term of the lease begins on the date stated in section 3 of the agreement. I/We further agree that we have read and agree to be bound by any signed attached agreement that is a part of this lease.

**MANAGEMENT AGENT (Representing the Landlord)**

| | | |
|---|---|---|
| _Cindy D. Fargher_ | Cindy Fargher | _4-27-18_ |
| Signature | Printed Name | Date |

**TENANT(S)**

| | | |
|---|---|---|
| _John McKnight_ | John McKnight | _4-27-18_ |
| Signature | Printed Name | Date |

| | | |
|---|---|---|
| | | |
| Signature | Printed Name | Date |

(Rev. 6/13) Subsidized Lease Agreement

- 13 -

**EXHIBIT 7 - Page 13 of 48**
GMS 001170

**CONFIDENTIAL**

## Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards

**Lead Warning Statement**

*Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, Landlords must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Tenants must also receive a federally approved pamphlet on lead poisoning prevention.*

**Landlord's Disclosure**

(a) Presence of lead-based paint and/or lead-based paint hazards (check (i) or (ii) below):

      (i) ☐ Known lead-based paint and/or lead-based paint hazards are present in the housing  (explain): _____

                **OR**

      (ii) ☒ Landlord has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b) Records and reports available (check (i) or (ii) below):

      (i) ☐ Landlord has provided the Tenant with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing, list documents: _____

                **OR**

      (ii) ☒ Landlord has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Tenant's Acknowledgment (initial)**

(c) _JM_ Tenant has received copies of all information listed above.

(d) _X_ Tenant has received the pamphlet *Protect Your Family from Lead in Your Home.*

**Agent's Acknowledgment (initial)**

(e) _XCf_ Agent has informed the Landlord of the Landlord's obligations under 42 U.S.C. 4852d and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

_John McKnight_ (signature)

Tenant Signature

John McKnight

Printed Name

4-27-18

Date

_____

Tenant Signature

_____

Printed Name

_____

Date

_Cindy Fargher_ (signature)

Agent Signature

Cindy Fargher – Site Manager

Printed Name and Title

4-27-18

Date

(Rev. 6/13)  Subsidized Lease Agreement

- 14 -

**EXHIBIT 7 - Page 14 of 48**

GMS 001171

## Disclosure of Information on Stachybotrys Mold and/or Mold Hazards

**Mold Warning Statement**

*Over the past several years, there have been a number of young infants (most under 6 months old), in the eastern neighborhoods of Cleveland, who have been coughing up blood due to bleeding in their lungs. Some infants have died and more infants continue to get ill. This bleeding, a disorder called Pulmonary Hemorrhage appears to be caused by something in their home environments, most likely toxins produced by an unusual fungus called* Stachybotrys chartarum *or similar fungi. While* Stachybotrys chartarum (atra) *occurs widely in North America, it is probably rather uncommon to find it in homes. It requires water soaked cellulose (wood, paper, and cotton products) to grow. While wet it looks black and slimy perhaps with the edges white, and when dry it looks less shiny.* **It is not the only or the most common black mold to be found in these conditions.**

**What is Pulmonary Hemosiderosis and what are the symptoms?**   Bleeding in the lungs. Severe bleeding can cause coughing up blood or nose bleeds. This is particularly concerning in infants under 6 months old. Chronic, low grade bleeding can cause chronic cough and congestion with anemia.

**What Causes The Bleeding?**   Most likely, toxins made by an unusual fungus or mold *Stachybotrys*. When infants breathe in the toxins, the blood vessels in their lungs may become fragile. The weak vessels may be bothered by cigarette smoke or stresses from other illnesses and start to bleed. You cannot see the toxins in the air rather they are carried in the microscopic fungal spores.

**How Do I Know If The Fungus Or Mold Is In My House?**   This fungus or mold grows only on wood or paper that have gotten very wet for more than a few days or so. (It does **NOT** grow on plastic, vinyl, concrete products, or ceramic tiles). If the wood/paper gets wet and is not cleaned up and dried, the fungus may grow and spread. The fungus is black and slimy when wet. It is **NOT** found in the green mold on bread or the black mold on the shower tiles (but the shower tiles should be kept clean too). If you have had plumbing leaks, roof leaks, flooding in the basement (even if you don't use the basement), or sewer backup in the past year, look for mold or a musty odor.

**Common Areas for This Mold Growth:**   Water soaked wood, ceiling tiles, wall paneling, unpainted plaster board surfaces, cotton items, cardboard boxes, and stacks of newspapers. If these areas have been very wet, usually for longer than one week, check for mold. After the area dries, the fungus will not continue to grow, but the black dust caused by the fungus can be sucked up by the furnace blower and spread throughout the house. Be sure and check your basement for the black mold. If you do not have access to the basement, ask your Landlord for assistance. **Note: not all black mold is *Stachybotrys*, but moldy homes are not healthy homes.**

**Heating Systems:**   If you have mold in your basement, check to see if there is any way that your forced air furnace can send the mold dust up to the living spaces. Is there ductwork connecting the cold air returns to your furnace or does your furnace pull air from the basement? The latter is the case if you can seen the furnace filter face on (rather than just the edge).

**How To Clean-up Fungal Growth:**   If you have more than two square feet of mold growth you should seek professional advice on how to perform the clean-up.  The source of the water problem must first be corrected. All roof or plumbing leaks/flooding must be fixed. All moldy surfaces should be cleaned with a household bleach (like Clorox) and **water mix = 1 cup of bleach mixed in 1 gallon of water.** You can add a little dish soap to the bleach water to cut dirt and oil on the wall that can hold mold. With good ventilation, apply the bleach water mix to the surface with a sponge, let it sit for 15 minutes, then thoroughly dry the surface. **Be sure to wear a dust mask, rubber gloves and open lots of windows when cleaning with bleach water.**  If the area cannot be cleaned (like some wet broken ceiling tiles), is too damaged, or is disposable (like cardboard boxes) discard them and replace with new ones.  It may be necessary to do more clean up in the home (carpets, crawl spaces, heating ducts) if you have a bad mold problem.

**Certification of Accuracy**
The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

**MANAGEMENT AGENT (Representing the Landlord)**

| | | |
|---|---|---|
| *Cindy Fargher* (signature) | Cindy Fargher – Site Manager | 4-27-18 |
| Signature | Printed Name | Date |

**TENANT(S)**

| | | |
|---|---|---|
| *John McKnight* (signature) | John McKnight | 4-27-18 |
| Signature | Printed Name | Date |

| | | |
|---|---|---|
| | | |
| Signature | Printed Name | Date |

(Rev. 6/13) Subsidized Lease Agreement



**GRAND MANAGEMENT SERVICES**
420 PARK AVE. COOS BAY, OREGON 97420
541-269-5561 PHONE/ 541-435-7132 FAX/711 TTY
www.grandmgmt.com

# LEASE ADDENDUM - SMOKE DETECTOR

Date:                    05-01-2018

This form was sent via:    [ X ]  Hand-delivered    [   ]  1ˢᵗ Class Mail

To:                      John R. McKnight
                         3812 12ᵗʰ Street #11A
                         Tillamook, OR 97141

**You are hereby notified that the Landlord intends to amend your Tenant/Landlord Lease Agreement establishing your tenancy at:**

        Evergreen Gardens Apartments                    (Description of Premises)
        3812 12ᵗʰ Street #11A
        Tillamook, OR 97141

This lease agreement addendum will serve to update your original lease agreement. All changes reflected in the current addendum are now binding as of the following effective date:

**Effective Date of Lease Addendum**                    **05-01-2018**

1.  SMOKE DETECTOR. The Tenant acknowledges that as of this date, the rental unit is equipped with a smoke detector. The Tenant has inspected the smoke detector and has found it to be in good working order.

2.  REPAIR. The Tenant agrees that it is his or her duty to regularly test the smoke detector and agrees to notify the Landlord immediately in writing of any problem, defect, malfunction or failure of the smoke detector. Within seven days of receipt of such written notification, the Landlord shall repair or replace the smoke detector, assuming the availability of labor and materials.

3.  MAINTENANCE.
    A.  The Tenant Agrees to replace the smoke detector battery, if at any time the existing battery becomes unserviceable.
    B.  If, after replacing the battery, the smoke detector will not operate, the Tenant must inform the Landlord immediately in writing of any deficiencies.

4.  REPLACEMENT. The Tenant agrees to reimburse the Landlord, upon request, for the cost of a new smoke detector and the installation thereof in the event the existing smoke detector becomes damaged by the Tenant or the tenant's guests or invitees.

5.  DISCLAIMER.
    A.  The Tenant acknowledges and agrees that the Landlord is not the operator, manufacturer, distributor, retailer or supplier of the smoke detector. The Tenant acknowledges and agrees that the Tenant assumes full responsibility for all risk and hazards attributable to, connected with or in any way related to the operation, malfunction or failure of the smoke detector, regardless of whether such malfunction or failure is attributable to, connected with, or in any way related to the use, operation, manufacture, distribution, repair, servicing or installation of said smoke detector.
    B.  No representation, warranties, undertaking or promises, whether oral or implied, or otherwise have been made by the Landlord, its agents or employees to the Tenant regarding said smoke detector, or the alleged performance of the same. The Landlord neither makes nor adopts any warranty of any nature regarding the smoke detector and expressly disclaims all warranties of fitness for a particular purpose, of habitability, or any and all other express or implied warranties. The Landlord shall not be liable for damages or losses to person or property caused by the Tenant's failure to regularly test the smoke detector, the Tenant's failure to notify the

**EXHIBIT 7 - Page 16 of 48**
GMS 001173

CONFIDENTIAL

Landlord of any problem, defect, malfunction, or failure of the smoke detector, or by the theft of the smoke detector or its serviceable battery, and/or by false alarms produced by the smoke detector.

6.    ENTIRE AGREEMENT.  The parties acknowledge that this written addendum is the entire agreement of the parties relative to the smoke detector in the above referenced unit.  Any agreement that in any way varies the terms of this addendum shall be unenforceable and completely void unless such agreement is in writing and signed by both parties.

7.    TERM.  The term of this addendum shall be the same term as the lease or any renewal or extension of the lease.

8.    SIGNATURE CLAUSE.

Landlord certifies that Landlord has gone over this Lease Addendum with the Tenant. Tenant certifies that Tenant is legally capable, has read the lease addendum and understands how it modifies the lease agreement.  Tenant acknowledges that he or she is responsible for and has a duty to regularly test the smoke detector and report all malfunctions of the same to the Landlord in writing.

Both the Landlord, for himself, his heirs, successors and assigns and Tenant certify that they are legally capable, have read this Lease Addendum and agree to be bound by its provisions.  In the event Owner sells the project or transfers Management, the lease will be transferred to the new Owner and/or Management Agent who will be bound by its terms.

In witness whereof, this agreement is executed by the parties hereto this __1st__ day of __May, 2018.__

AGENT and/or MANAGER for APARTMENT COMPLEX _____

All Adult Occupants of Apartment must sign:

TENANT _____    TENANT _____

TENANT _____    TENANT _____

Page 2 of 2

**EXHIBIT 7 - Page 17 of 48**
GMS 001174



Here is better here.

**GRAND MANAGEMENT SERVICES**
420  Park Avenue. Coos Bay, OREGON 97420
541-269-5561 PHONE/ 541-435-7132 FAX/ 711 TTY
Website: www.grandmgmt.com
Email: Kristin@grandmgmt.com

# ELIGIBILITY CRITERIA, RULES & PROCEDURES

### *Application Processing*

In order for a residency application to be processed, it must be returned complete.  An application that is incomplete will not be processed and the applicant will not be considered for tenancy until the application is complete. If an incomplete application is received, the applicant will be informed in writing a list of items necessary to complete the application.  A completed application must include:

1.  All blanks must be filled in.  All requested information must be provided.
2.  All names, birth-dates and social security numbers of the applicant, co-applicant, and all others seeking occupancy under this application.
3.  A mailing address, a current physical address and (if available) a contact phone number for the applicant.
4.  Photo and legal identification for each adult member of the household.
5.  At least two (2) verifiable personal and/or credit references.
6.  At least three (3) verifiable previous landlord references in lieu of a mortgage or references accounting for 5 consecutive years of occupancy.  In the absence of two landlord references, a co-signer may be accepted upon management discression and approval.  The appointed person in charge of making this decision is the property manager.
7.  A current accounting of all sources of income, as detailed in the application.
8.  A signed Authorization for Release of Information form for each adult in the household.
9.  A money order or cashiers check, made payable to Grand Management Services, in the amount of $25 for each adult member of the household.  This is a pass-through expense to check criminal background, credit history, eviction history, income verification, landlord references and eligibility determination.  If you are renting an apartment through Housing and Urban Development, this fee will not be charged. Cash will also be accepted as legal tender for this fee.
10. The signature of the applicant and any other adult members of the household and the date they signed the application.

### Selection Criteria

1.  Applications will be accepted from anyone who wishes to apply for residency.  Based on the information submitted on the application and verified by the Management Agent, the applicant will be notified that they appear eligible and will be placed on the waiting list OR they will be notified that they are not eligible with the reasons for the rejection of the application and information concerning the procedures for appeal of this decision.  Applicants will be selected for residency on a first come, first serve basis, as modified by a preference system established for renting to families that qualify under federal guidelines regarding income levels as well as for a preference system for particular units, including units designed to accommodate disabled individuals or individuals that would benefit from a modified unit.  An applicant will be offered an available unit or rejected before the unit is offered to the next applicant on the waiting list.  If an applicant turns down an available apartment, for a non-medical reason, their name will be withdrawn from the waiting list and they will be required to reapply for residency.  An applicant who rejects a unit for medical reasons, may only turn down an available apartment three times before their name is removed from the waiting list.  If an applicant is removed from the waiting list, such notification will be made in writing and mailed to the applicant via certified mail, return receipt requested.  A copy of such proof will be kept in the central office of Grand Management Services Inc.
2.  The household must have enough disposable income to pay all debts, rent, and normal household expenses. As a general guideline, the applicant's after-tax net income must be at least two and a half (2.5) times the rent level.  Food stamps will be included in meeting this income requirement.  This requirement will be waived for applicants who currently have a HUD based certification or voucher, or other form of tenant-based assistance.  This assistance includes Rural Development rental assistance.  The applicant's total debt, including rent payments, should not exceed 70% of the household gross income.  The sources of income and employment must be verifiable.
3.  This complex is financed through the U.S. Department of Agriculture Rural Development Multifamily housing program or The Department of Housing and Urban Development.  Under regulations, eligibility is restricted to households whose gross annual income or adjusted gross annual income falls below the median income limits for the area.  A copy of the income limits are available, upon request, by contacting Grand Management Services at 541-269-5561.
4.  The household must meet the occupancy guidelines for the project.  In the 2-bedroom units, there shall be no less than 1 adult.  A single person can only occupy a two-bedroom unit when there are no other qualifying applicants with a minimum household size of two household members or if the single person would somehow benefit from the two bedroom (example: if the two bedroom was modified for a disabled person and a single would benefit from the modifications).  If a single is allowed to move into a two-bedroom unit simply because there are no other eligible qualified applicants, the single individual could reside in the unit only until an eligible family applies and is approved for

Page 1 of 4

**EXHIBIT 7 - Page 18 of 48**
GMS 001175

the unit – in this instance, the single individual will be required to move to a smaller size unit when such a unit becomes available.

5.  Potential tenants must indicate a purposeful intention to report information in a true and complete manner. Potential tenants who provide inaccurate or false information will be deemed ineligible for occupancy. Using false names or social security numbers is an example of dishonesty in reporting.

6.  Each potential tenant is required to list three previous landlord references in lieu of a mortgage. These landlord references may not include landlords related to the potential tenant by blood, marriage, or other close ties. At least the previous five of occupancy must be reported. In the absence of these three landlord references a co-signer may be needed, if management will accept a co-signer. In regard to landlord references, potential tenants or members by be rejected according to:
    •  A history of unjustified and chronic nonpayment of rent and financial obligations.
    •  A history of violence and harassment of neighbors.
    •  A history of disturbing the quiet enjoyment of neighbors.
    •  A history of violations of the terms of previous rental agreements such as the destruction of a unit or failure to maintain a unit in a sanitary condition.
    •  An FED eviction

7.  Each potential tenant is required to list at least two personal or credit references. These reference individuals must not be related to the potential tenant by blood, marriage, or other close ties. The applicant shall not have a national credit risk rating of more than 3 non-medical delinquent credit accounts or collection accounts to qualify. Potential tenants may be rejected according to:
    •  A history of unjustified and chronic nonpayment of rent and financial obligations.
    •  A history of violence and harassment of other individuals.
    •  Negative Credit. Negative credit is defined as: a) Bankruptcy reported within 1 year of date of application. b) Bankruptcy reported prior to 1 year from the date of application and negative information or no credit information reported following the bankruptcy c) Disturbing repossession or voluntary repossession within the last 10 years. d) More than 3 non-medical collection accounts. e) only negative accounts – medical or non-medical with no positive credit reported.

8.  No applicant that uses, possesses, manufactures, sells or distributes illegal controlled substances (as defined by local, state or federal law) or has been convicted and/or jailed, within the last five years, of using, attempting to use, possessing, manufacturing, selling or distributing illegal controlled substances (as defined by local, state or federal law) shall be eligible for tenancy. Any applicant currently using illegal drugs, possessing illegal drugs or reporting a conviction by any court of competent jurisdiction for the illegal manufacture, possession or distribution of a controlled substance shall be denied occupancy. If our review of this application indicates that the applicant may constitute a direct threat to the health and safety of our residents or management staff or whose tenancy would adversely affect the physical condition and reputation of the complex, then the applicant will be denied tenancy. Any applicant that has been convicted of and/or jailed for murder, rape, arson, child molestation, felony assault, or manufacturing and delivery of controlled drugs, within the last ten years will be denied occupancy. These crimes are examples and our residency standards are not limited to this negative history, but may also include other examples which will be considered in the analysis as to whether an applicant will pose a health or safety concern at this project.

### Eligibility at Initial Occupancy

When an apartment becomes available, the selection criteria will be verified again and updated. The tenant/applicant will be required to:
1.  Sign a Tenant Certification.
2.  Sign a Written lease and all attachments.
3.  Sign the project occupancy rules.
4.  Pay, in advance, a Security Deposit, the balance of which will not be carried over 90 days.
5.  Pay the first month's rent, In advance.
6.  Have utilities immediately placed in your name and provide the Management Agent with verification that this action has been completed.
7.  Complete and sign a move-in inspection form, verifying the condition of the apartment upon move-in.

### Continuing Eligibility

Continuing occupancy at the project is subject to additional rules and regulations.
1.  This complex is financed through the U.S. Department of Agriculture Rural Development multifamily housing program or The Department of Housing and Urban Development. Under regulations, eligibility is restricted to households whose gross annual income or adjusted gross annual income falls below the median income limits for the area. A copy of the income limits are available, upon request, by contacting Grand Management Services at 541-269-5561.
2.  The household must meet the occupancy guidelines for the project. In the 2-bedroom units, there shall be no less than 1 adult. A single person can only occupy a two-bedroom unit when there are no other qualifying applicants with a minimum household size of two household members or if the single person would somehow benefit from the two bedroom (example: if the two bedroom was modified for a disabled person and a single would benefit from the modifications). If a single is allowed to move into a two bedroom unit simply because there are no other eligible qualified applicants , the single individual could reside in the unit only until an eligible family applies and is approved for the unit – in this instance, the single individual will be required to move to a smaller size unit when such a unit becomes available
3.  Tenant eligibility is restricted by a preference system established for renting to families that qualify under federal guidelines regarding income levels as well as for a preference system for particular units, including units designed to accommodate disabled individuals. An existing tenant may be asked to transfer or move to accommodate this preference system. A lease agreement attachment will be signed at the time of move-in that informs a Tenant if they

**EXHIBIT 7 - Page 19 of 48**
GMS 001176

are currently ineligible for the unit they will occupying, lists the reasons for this ineligibility, and advises them of the procedure for transfer or move-out if a qualifying applicant is waiting for this apartment unit.

4. A tenant who does not personally reside in a rental unit for a period exceeding 60 consecutive days, for reasons other than health or emergency, is considered ineligible and shall be required to pay market rent. If the tenant continues to be absent from the unit, the Management Agent will notify the tenant by first class mail at least 30 days prior to the end of the lease period, advising the tenant that he/she must occupy the living unit or shall be required to vacate the unit as per the lease agreement.

5. The household must have enough disposable income to pay all debts, rent, and normal household expenses. As a general guideline, the tenant's after-tax net income must be at least two and a half (2.5) times the rent level. Food stamps will be included in meeting this income requirement. This requirement will be waived for tenants who currently have a HUD based certification or voucher, or other form of tenant-based assistance. The tenant's total debt, including rent payments, should not exceed 70% of the household gross income. The sources of income and employment must be verifiable and must indicate steady employment and income for the previous six months.

6. Tenants must indicate a purposeful intention to report information in a true and complete manner. Tenants who provide inaccurate or false information will be deemed ineligible for occupancy. Using false names or social security numbers is an example of dishonesty in reporting.

7. Tenants may be considered ineligible for continued occupancy according to the following criteria:
   - A history of unjustified and chronic nonpayment of rent and financial obligations.
   - A history of violence and harassment of neighbors.
   - A history of disturbing the quiet enjoyment of neighbors.
   - A history of violations of the terms of the rental agreement such as the destruction of a unit or failure to maintain a unit in a sanitary condition.

8. No tenant that uses, possesses, manufactures, sells or distributes illegal controlled substances (as defined by local, state or federal law) or has been convicted and/or jailed, within the last five years, of using, attempting to use, possessing, manufacturing, selling or distributing illegal controlled substances (as defined by local, state or federal law) shall be eligible for tenancy. Any tenant currently using illegal drugs, possessing illegal drugs or reporting a conviction by any court of competent jurisdiction for the illegal manufacture or distribution of a controlled substance shall be denied continued occupancy. If our review of the tenant's file indicates that the tenant may constitute a direct threat to the health and safety of our residents or management staff or whose tenancy adversely affects the physical condition and reputation of the complex, then the tenant will be denied continued occupancy. Any tenant that has been convicted of and/or jailed for murder, rape, arson, child molestation, felony assault, or manufacturing, possession and delivery of controlled drugs, within the last ten years will be denied occupancy. These crimes are examples and our residency standards are not limited to this negative history, but may also include other examples which will be considered in the analysis as to whether a tenant will pose a health or safety concern at this project.

9. Tenants must abide by the covenants of the lease agreement and all attachments, or they will be considered ineligible for occupancy and will be notified to vacate the unit as explained in detail through the lease agreement.

10. A tenant may be considered ineligible for occupancy if
    - Management is unable to contact the tenant to verify eligibility information, for reasons other than hardship, as determined by the management agent. An example of hardship is documented health problems.
    - The tenant fails to respond to our request for more information, to sign a tenant certification, to verify eligibility, to sign a lease agreement, or to complete other necessary paperwork, within a reasonable time frame.

**Tenant Grievance and Appeals**

Any notice of adverse action will be delivered to you by certified or first class mail. We will give you a specific reason for the rejection of your application or for a determination of ineligibility. We are advising you that you have the right to respond to these notices within 10 calendar days after receipt of the notice. You shall personally present to the management designee, either orally or in writing, any grievance or response. The Management designee is Kristin Smith, c/o Grand Management Services, 420 Park Avenue, Coos Bay, Oregon 97420. The phone number is 541-269-5561. The fax number is 541-269-2481. The TTY number is 711. If requested, Mrs. Smith or another management designee shall meet with you within 5 working days of the request in an attempt to resolve the grievance. If the grievance is not resolved to your satisfaction, the management designee shall prepare a summary of the problem within 10 calendar days. You shall receive two copies, and additional copies will be provided to the Owner of this housing complex as well as the supervising governmental agency. If you desire a hearing, a written request for a hearing must be submitted to the management designee at the address detailed above, within 10 calendar days after receipt of the summary. The written request must specify the reasons for the grievance or contest of the management's proposed action and the action or relief sought. The management agent will provide you with a detailed copy of the grievance procedure upon request.

**Disclosure:**

This is a document testifying to accuracy or truth. Title 18, Section 1001 of the U.S. Code states that a person is guilty of a felony for knowingly and willingly making false and fraudulent statements to any department of the United States Government. USDA Rural Development, the Department of Housing and Urban Development, Public Housing Authorities, the Oregon Housing and Community Services Department, and any owner (or any employee of these agencies or the owner) may be subject to penalties for unauthorized disclosures or improper uses of information collected on the consent form. Use of the information collected based on this verification form is restricted to the purposes cited above. Any person who knowingly or willingly requests, obtains or discloses any information under false pretenses concerning an applicant or participant may be subject to a misdemeanor and fined not more than $5,000. Any applicant or participant affected by negligent disclosure of information may bring civil action for damages, and seek other relief, as may be appropriate, against the officer or employee of these agencies or the owner responsible for the unauthorized disclosure of improper use. Penalty provisions for misusing the social security number are contained in the Social Security Act at 42 U.S.C. 208 (f) (g) and (h). Violation of these provisions are cited as violations of 42 U.S.C. 408 (f) (g) and (h). The Fair Housing Act prohibits discrimination in the sale, rental or financing of housing on the basis of race, color, religion, sex, disability, familial status, or national origin. Federal law also prohibits discrimination on the basis of age. Complaints of discrimination may be forwarded to the Administrator, USDA Rural Development, Washington, D.C. 20250. Grand Management Services

**EXHIBIT 7 - Page 20 of 48**
GMS 001177

does not discriminate on the basis of handicapped status in the admission or access to, or treatment or employment in, its federally assisted programs and activities. The person named below has been designated to coordinate compliance with the nondiscrimination requirements contained in the Department of Housing & Urban Development's regulations implementing Section 504 (24 CFR Part 8 dated June 2, 1988).

**Kristin Smith**
**420 Park Avenue, Coos Bay, OR  97420**
**541-269-5561 phone   541-269-2481 Fax**
**711 TTY**

Tenant Signature: _John McKnight_

Tenant Signature: _____

Tenant Signature: _____

Tenant Signature: _____



EQUAL HOUSING
OPPORTUNITY

**EXHIBIT 7 - Page 21 of 48**
GMS 001178

### Tenant Grievance & Appeals Procedure

(a) *General.*

    (1) The requirements established in this section are designed to ensure that there is a fair and equitable process for addressing tenant or prospective tenant concerns and to ensure fair treatment of tenants in the event that an action or inaction by a borrower, including anyone designated to act for a borrower, adversely affects the tenants of a housing project.

    (2) Any tenant/member or prospective tenant/member seeking occupancy in or use of Agency facilities who believes he or she is being discriminated against because of age, race, color, religion, sex, familial status, disability, or national origin may file a complaint in person with, or by mail to the U.S. Department of Agriculture's Office of Civil Rights, Room 326–W, Whitten Building, 14th and Independence Avenue, SW., Washington DC 20250–9410 or to the Office of Fair Housing and Equal Opportunity, U.S. Department of Housing and Urban Development (HUD), Washington, DC 20410. Complaints received by Agency employees must be directed to the National Office Civil Rights Staff through the State Civil Rights Manager/ Coordinator.

(b) *Applicability.*

    (1) The requirements of this section apply to a borrower action regarding housing project operations, or the failure to act, that adversely affects tenants or prospective tenants.

    (2) This section does not apply to the following situations:

        (i) Rent changes authorized by the Agency in accordance with the requirements with § 3560.203(a);

        (ii) Complaints involving discrimination which must be handled in accordance with § 3560.2(b) and paragraph (a)(2) of this section;

        (iii) Housing projects where an association of all tenants has been duly formed and the association and the borrower have agreed to an alternative method of settling grievances;

        (iv) Changes required by the Agency in occupancy rules or other operational or management practices in which proper notice and opportunity have been given according to law and the provisions of the lease;

        (v) Lease violations by the tenant that would result in the termination of tenancy and eviction;

        (vi) Disputes between tenants not involving the borrower; and

        (vii) Displacement or other adverse actions against tenant as a result of loan prepayment handled according to subpart N of this part.

(c) *Borrower responsibilities.*

    Borrowers must permanently post tenant grievance procedures that meet the requirements of this section in a conspicuous place at the housing project. Borrowers also must maintain copies of the tenant grievance procedure at the housing project's management office for inspection by the tenants and the Agency upon request. Each tenant must receive an Agency summary of tenant's rights when a lease agreement is signed. If a housing project is located in an area with a concentration of non- English speaking individuals, the borrower must provide grievance procedures in both English and the non- English language. The notice must include the telephone number and address of USDA's Office of Civil Rights and the appropriate Regional Fair Housing and Enforcement Agency.

(d) *Reasons for grievance.*

    Tenants or prospective tenants may file a grievance in writing with the borrower in response to a borrower action, or failure to act, in accordance with the lease or Agency regulations that results in a denial, significant reduction, or termination of benefits or when a tenant or prospective tenant contests a borrower's notice of proposed adverse action as provided in paragraph (e) of this section. Acceptable reasons for filing a grievance may include:

        (1) Failure to maintain the premises in such a manner that provides decent, safe, sanitary, and affordable housing in accordance with § 3560.103 and applicable state and local laws;

        (2) Borrower violation of lease provisions or occupancy rules;

        (3) Modification of the lease;

        (4) Occupancy rule changes;

        (5) Rent changes not authorized by the Agency according to § 3560.205; or

        (6) Denial of approval for occupancy.

(e) *Notice of adverse action.*

    In the case of a proposed action that may have adverse consequences for tenants or prospective tenants such as denial of admission to occupancy and changes in the occupancy rules or lease, the borrower must notify the tenant or prospective tenant in writing. In the case of a Borrower's proposed adverse action including denial of admission to occupancy, the Borrower shall notify the applicant/tenant in writing. The notice must be delivered by certified mail return receipt requested, or a hand delivered letter with a signed and dated acknowledgement of receipt from the applicant/tenant. The notice must give specific reasons for the proposed action. The notice must also advise the tenant or prospective tenant of ''the right to respond to the notice within ten calendar days after date of the notice'' and of ''the right to a hearing in accordance with § 3560.160 (f), which is available upon request.'' The notice must contain the information specified in paragraph (a)(2) of this section. For housing projects in areas with a concentration of non-English speaking individuals, the notice must be in English and the non-English language.

(f) *Grievances and responses to notice of adverse action.*

    The following procedures must be followed by tenants, prospective tenants, or borrowers involved in a grievance or a response to an adverse action.

        (1) The tenant or prospective tenant must communicate to the borrower in writing any grievance or response to a notice within 10 calendar days after occurrence of the adverse action or receipt of a notice of intent to take an adverse action.

        (2) Borrowers must offer to meet with tenants to discuss the grievance within 10 calendar days of receiving the grievance. The Agency encourages borrowers and tenants or prospective tenants to make an effort to reach a mutually satisfactory resolution to the grievance at the meeting.

        (3) If the grievance is not resolved during an informal meeting to the tenant or prospective tenant's satisfaction, the borrower must prepare a summary of the problem and submit the summary to the tenant or prospective tenant and the Agency within 10 calendar days The summary should include: The borrower's position; the applicant/ tenant's position; and the result of the meeting. The tenant also may submit a summary of the problem to the Agency.

(g) *Hearing process.*

    The following procedures apply to a hearing process.

        (1) *Request for hearing.* If the tenant or prospective tenant desires a hearing, a written request for a hearing must be submitted to the borrower within 10 calendar days after the receipt of the summary of any informal meeting.

        (2) *Selection of hearing officer or hearing panel.* In order to properly evaluate grievances and appeals, the borrower and tenant must select a hearing officer or hearing panel. If the borrower and the tenant cannot agree on a hearing officer, then they must each appoint a member to a hearing panel and the members selected must appoint a third member. If within 30 days from the date of the request for a hearing, the tenant and borrower have not agreed upon the selection of a hearing officer or hearing panel, the borrower must notify the Agency by mail of the situation. The Agency will appoint a person to serve as the sole hearing officer. The Agency may not appoint a hearing officer who was earlier considered by either the borrower or the tenant, in the interest of ensuring the integrity of the process.

Page 1 of 3

**EXHIBIT 7 - Page 22 of 48**

GMS 001179

(3) *Standing hearing panel.* In lieu of the procedure contained in paragraph (g)(2) of this section for each grievance or appeal presented, a borrower may ask the Agency to approve a standing hearing panel for the housing project.

(4) *Examination of records.* The borrower must allow the tenant the opportunity, at a reasonable time before a hearing and at the expense of the tenant, to examine or copy all documents, records, and policies of the borrower that the borrower intends to use at a hearing unless otherwise prohibited by law or confidentiality agreements.

(5) *Scheduling of hearing.* If a standing hearing panel has been approved, a hearing will be scheduled within 15 calendar days after receipt of the tenant's or prospective tenant's request for a hearing. If a hearing officer or hearing panel must be selected, a hearing will be scheduled within 15 calendar days after the selection or appointment of a hearing panel or a hearing officer. All hearings will be held at a time and place mutually convenient to both parties. If the parties cannot agree on a meeting place or time, the hearing officer or hearing panel will designate the place and time.

(6) *Escrow deposits.* If a grievance involves a rent increase not authorized by the Agency, or a situation where a borrower fails to maintain the property in a decent, safe, and sanitary manner, rental payments may be deposited by the tenant into an escrow account, provided the tenant's rental payments are otherwise current.

　(i) The escrow account deposits must continue until the complaint is resolved through informal discussion or by the hearing officer or panel.

　(ii) The escrow account must be in a Federally-insured institution or with a bonded independent agent.

　(iii) Failure to make timely rent payments into the escrow account will result in a termination of the tenant grievance and appeals procedure and all sums will immediately become due and payable under the lease.

　(iv) Receipts of escrow account deposits must be available for examination by the borrower.

(7) *Failure to request a hearing*

　If the tenant or prospective tenant does not request a hearing within the time provided by paragraph (f)(1) of this section, the borrower's disposition of the grievance or appeal will become final.

(h) *Requirements governing the hearing.*

　The following requirements will govern the hearing process.

(1) Subject to paragraph (f)(2) of this section, the hearing will proceed before a hearing officer or hearing panel at which evidence may be received without regard to whether that evidence could be used in judicial proceedings.

(2) The hearing must be structured so as to provide basic due process safeguards for both the borrower and the tenants or prospective tenants, which must protect:

　(i) The right of both parties to be represented by counsel or another person chosen as their representative;

　(ii) The right of the tenant or prospective tenant to a private hearing unless a public hearing is requested;

　(iii) The right of the tenant or prospective tenant to present oral or written evidence and arguments in support of their grievance or appeal and to cross-examine and refute the evidence of all witnesses on whose testimony or information the borrower relies; and

　(iv) The right of the borrower to present oral and written evidence and arguments in support of the decision, to refute evidence relied upon by the tenant or prospective tenant, and to confront and cross-examine all witnesses in whose testimony or information the tenant or prospective tenant relies.

(3) At the hearing, the tenant or prospective tenant must present evidence that they are entitled to the relief sought, and the borrower must present evidence showing the basis for action or failure to act against that which the grievance or appeal is directed.

(4) The hearing officer or hearing panel must require that the borrower, the tenant or prospective tenant, counsel, and other participants or spectators conduct themselves in an orderly manner. Failure to comply may result in exclusion from the proceedings or in a decision adverse to the interests of the disorderly party and granting or denial of the relief sought, as appropriate.

(5) If either party or their representative fails to appear at a scheduled hearing, the hearing officer or hearing panel may make a determination to postpone the hearing for no more than five days or may make a determination that the absent party has waived their right to a hearing under this subpart. If the determination is made that the absent party has waived their rights, the hearing officer or hearing panel will make a decision on the grievance. Both the tenant or prospective tenant and the borrower must be notified in writing of the determination of the hearing officer or hearing panel.

(i) *Decision.*

　Hearing decisions must be issued in accordance with the following requirements.

(1) The hearing officer or hearing panel has the authority to affirm or reverse a borrower's decision.

(2) The hearing officer or hearing panel must prepare a written decision, together with the reasons thereof based solely and exclusively upon the facts presented at the hearing within 10 calendar days after the hearing. The notice must state that the decision is not effective for 10 calendar days to allow time for an Agency review as specified in paragraphs (i)(3) and (i)(4) of this section.

(3) The hearing officer or hearing panel must send a copy of the decision to the tenant, or prospective tenant, borrower, and the Agency.

(4) The decision of the hearing officer or hearing panel shall be binding upon the parties to the hearing unless the parties to the hearing are notified within 10 calendar days by the Agency that the decision is not in compliance with Agency regulations.

(5) Upon receipt of written notification from the hearing officer or hearing panel, the borrower and tenant must take the necessary action, or refrain from any actions, specified in the decision.

---

**The Management designee for tenant grievances is Kristin Smith, c/o Grand Management Services, 420 Park Avenue, Coos Bay, Oregon 97420. The phone number is 541-269-5561. The fax number is 541-269-2481. The TTY number is 711. If requested, Ms. Smith or another management designee assigned by Ms. Smith, shall meet with you in an attempt to resolve the grievance.**

Grand Management Services does not discriminate on the basis race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, genetic information, political beliefs, reprisal, or because all or part of an individual=s income is derived from any public assistance program, (not all prohibited bases apply to all programs) in the admission or access to, or treatment or employment in, its federally assisted programs and activities. The person named below has been designated to coordinate compliance with the nondiscrimination requirements contained in the Department of Housing & Urban Development's regulations implementing Section 504 (24 CFR Part 8 dated June 2, 1988).
**Kristin Smith, 420 Park Avenue, Coos Bay, OR  97420, Coos Bay 541-269-5561 phone 541-269-2481 Fax  711 TTY Operator**



The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, parental status, religion, sexual orientation, genetic information, political beliefs, reprisal, or because all or part of an individual=s income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Director, Office of Civil Rights, 1400 Independence Avenue, S.W., Washington, D.C.  20250-9410, or call (800) 795-3272 (voice), or (202) 720-6382 (TDD).  USDA is an equal opportunity provider and employer.

**EXHIBIT 7 - Page 23 of 48**
GMS 001180

CONFIDENTIAL



**GRAND MANAGEMENT SERVICES**
*PROPERTY MANAGEMENT & DEVELOPMENT*
420 Park Avenue, Coos Bay, Oregon  97420
Tel:  541-269-5561     Fax:  541-269-2481
Hearing Impaired:  711 TTY Operator
Website: www.grandmgmt.com

## TENANT'S GRIEVANCE AND APPEAL PROCEDURE

If you believe that Management has not acted in accordance with these occupancy rules, the lease agreement, program regulations, or state and local ordinances, you should notify the Management Agent. We will give you a specific reason or explanation for our actions. We are advising you that you have the right to respond to this explanation within 10 calendar days after receipt. You shall personally present to the management designee, either orally or in writing, any grievance or response. The Management designee is Kristin Smith, c/o Grand Management Services, 420 Park Avenue, Coos Bay, Oregon  97420. The phone number is 541-269-5561. The fax number is 541-269-2481. The TTY number is 711. If requested, Ms. Smith or another management designee shall meet with you within 5 working days of the request in an attempt to resolve the grievance. If the grievance is not resolved to your satisfaction, the management designee shall prepare a summary of the problem within 10 calendar days. You shall receive two copies, and additional copies will be provided to the Owner of this housing complex as well as the supervising governmental agency. If you desire a hearing, a written request for a hearing must be submitted to the management designee at the address detailed above, within 10 calendar days after receipt of the summary. The written request must specify the reasons for the grievance or contest of the management's proposed action and the action or relief sought.



EQUAL HOUSING
OPPORTUNITY

Grand Management Services does not discriminate on the basis of race, color, religion, sex, disability, familial status, or national origin in the admission or access to, or treatment or employment in, its federally assisted programs and activities. Grand Management Services, Inc. is an equal opportunity provider.

The person named below has been designated to coordinate compliance with the nondiscrimination requirements contained in the Department of Housing & Urban Development's regulations implementing Section 504 (24 CFR Part 8 dated June 2, 1988).

**Kristin Smith**
**420 Park Avenue, Coos Bay, OR  97420**
**541-269-5561 phone   541-269-2481 Fax**

> **USDA, Rural Development is an Equal Housing Opportunity Lender, Provider and Employer.  Complaints of discrimination should be sent to:  USDA Director, Office of Civil Rights, Washington, D.C. 20250-9410**

Tenant Signature _John McKnight_ Tenant Signature _____

Page 3 of 3

**EXHIBIT 7 - Page 24 of 48**
GMS 001181



Grand Management Services
420 Park Avenue
Coos Bay, OR 97420
Tel: 541-269-5561 Fax: 541-269-2481 TYY: 711
Website: www.grandmgmt.com

## <u>Section 504 Reasonable Accommodation Policies & Procedures</u>

*Overview: Grand Management Services is committed to compliance with the Fair Housing Act of 1968, the American's with disabilities act of 1988/1991 and Section 504 of the United States Code. According to these federal laws as well as other state statues, we are required as housing providers to make "reasonable accommodations or modifications" in our rules, policies, practices and procedures in order afford a person equal opportunity to use and enjoy a dwelling. According to section 504 "No otherwise qualified individual with handicaps in the United States... shall, solely by reason of her or his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance or under any program or activity conducted by any executive agency or by the U.S.P.S.*

## <u>Policies</u>

1) No eligible person with a disability can be denied to apply for housing because of the person's disability. Persons with a disability must meet the same eligibility criteria as all applicants prior to tenancy.
2) If the Grand Management Services application is in a format in which is not conducive to a person with disabilities, Grand Management Services will be required to alter the format and/or furnish auxiliary aids as to accommodate the applicant.
3) Requests by tenants or applicants for reasonable accommodation and/or modification to structure, rules, policies or procedure must be in writing and directed to either the site manager or Grand Management Services central office @ 420 Park Avenue, Coos Bay, Oregon 97420. If it is not possible for the person requesting the modification to provide a "written request" and alternate request can be made as an accommodation to the tenant or applicant. The form Grand Management Services uses to receive "reasonable accommodation requests" is attached for your review.
4) Reasonable accommodation requests will be evaluated within 14 days of receipt from tenant or applicant by central office personnel. A decision will be made to either accept or deny the accommodation within 14 days. The decision will be made in writing and delivered to tenant/applicant via first class mail. The applicant/tenant will have 30 day to file a grievance in the case of an adverse decision. All accommodation action will begin to take place no later than 30 days after approval of the accommodation.
5) No eligible person will be denied tenancy on the sole basis of a person's disability, either mental or physical.
6) Grand Management Services will not refuse to let a single person with a disability who needs a live-in personal care attendant to have a two-bedroom apartment.
7) Grand Management Services will not segregate tenants who have disabilities to a certain area of the housing complex.
8) Grand Management Services will not treat people differently on the basis of the disability unless asked to do so in the form of a reasonable accommodation.
9) Grand Management Services will reasonably alter our rules, policies, practices and procedures for a person with a disability if asked to do so as a part of a reasonable accommodation.
10) Grand Management Services will honor reasonable accommodation requests if such a request will benefit the applicant or tenant in such a way that the person will better benefit the use of the apartment, community room, laundry room or any other part of the complex as long as it does not pose undue financial hardship for the project.
11) Grand Management Services will make physical changes to the structure of the apartment as requested by a "reasonable accommodation" such as building ramps, widening doorways, installing grab bars, lowering cabinets, ect., as long as it does not pose undue financial hardship for the project.
12) Grand Management Services will never deny reasonable modifications requested that will be at the tenant's expense.
13) Grand Management Services will give persons with Disabilities to have the same choices as all other applicants, such as whether they wish to have first or second floor apartments.

**EXHIBIT 7 - Page 25 of 48**
GMS 001182

14) Grand Management Services will not prevent persons with disabilities to have a service and/or companion animal.
15) Grand Management Services will provide all employees with civil rights training and manuals for procedure.
16) Grand Management Services will limit verifying a person's disability to only that which is needed to establish eligibility and verification will only be required after a tenant or applicant has asked that their disability be considered by management.
17) Grand Management Services will give priority to renting modified and assessable units to those individuals that would benefit from the accessibility of the modified features.
18) Not all changes of rules, policies and procedures would be considered "reasonable". Under federal law, a change would not be considered reasonable if it would change the basic parts of the housing program. This means looking at the main purpose of the program and what it takes to serve this purpose.
19) All tenants/applicants have the right to file a grievance with the Equal Opportunity Office of Fair Housing. The address to file a complaint can be sent to the HUD Regional Office or to:

**Office of Fair Housing & Equal Opportunity**
**Department of Housing & Urban Development**
**Washington, D.C. 20410**

**Disclosure:**

This is a document testifying to accuracy or truth. Title 18, Section 1001 of the U.S. Code states that a person is guilty of a felony for knowingly and willingly making false and fraudulent statements to any department of the United States Government. USDA Rural Development, the Department of Housing and Urban Development, Public Housing Authorities, the Oregon Housing and Community Services Department, and any owner (or any employee of these agencies or the owner) may be subject to penalties for unauthorized disclosures or improper uses of information collected on the consent form. Use of the information collected based on this verification form is restricted to the purposes cited above. Any person who knowingly or willingly requests, obtains or discloses any information under false pretenses concerning an applicant or participant may be subject to a misdemeanor and fined not more than $5,000. Any applicant or participant affected by negligent disclosure of information may bring civil action for damages, and seek other relief, as may be appropriate, against the officer or employee of these agencies or the owner responsible for the unauthorized disclosure of improper use. Penalty provisions for misusing the social security number are contained in the Social Security Act at 42 U.S.C. 208 (f) (g) and (h). Violation of these provisions are cited as violations of 42 U.S.C. 408 (f) (g) and (h).

The Fair Housing Act prohibits discrimination in the sale, rental or financing of housing on the basis of race, color, religion, sex, handicap, familial status, or national origin. Federal law also prohibits discrimination on the basis of age. Complaints of discrimination may be forwarded to the Administrator, USDA Rural Development, Washington, D.C. 20250.

Grand Management Services does not discriminate on the basis of handicapped status in the admission or access to, or treatment or employment in, its federally assisted programs and activities.

The person named below has been designated to coordinate compliance with the nondiscrimination requirements contained in the Department of Housing & Urban Development's regulations implementing Section 504 (24 CFR Part 8 dated June 2, 1988).

**Kristin Smith**
**Grand Management Services**
**420 Park Avenue, Coos Bay, OR 97420**
541-269-5561 phone   541-269-2481 Fax

Tenant Signature: *John McKnight*      Tenant Signature: _____

**EXHIBIT 7 - Page 26 of 48**
GMS 001183



**Grand**
management

**420 Park Avenue Coos Bay, OR. 97420**
**541-269-5561 Phone/ 541-435-7132 Fax/711 TTY**
**www.grandmgmt.com**

## DECK-PATIO-STAIRWELL RULES

1. No carpet or astro-turf may be placed on the deck/patio as these items trap moisture and encourage rot.

2. There will be a limit of 5-6 plants or planters of any kind (hanging or in pots) on a tenant's patio area and they may not block the entrance to the doorway.

3. All planters or pots must be hanging or placed on the deck/patio surface with a tray under the pot.

4. All deck/patio planters and pots must be emptied and stored off the deck/patio during the rainy months and throughout winter.

5. No tarps or plastic may be tacked to the outside of the building or used to enclose the deck/patio.

6. You may not build or make any addition to the deck/patio with out written approval and this exception must be listed on the lease agreement.

7. The decks/patios may not be used for storage of household items. Refrigerators, freezers or other appliances are not allowed outside your unit.

8. Do not store garbage on your deck/patio. Take it to the dumpster or recycle area.

9. Seasonal and holiday decorations should be removed within 10 days following the holiday.

10. Acceptable deck or patio items include outdoor furniture (within reason), outdoor pots full of flowers, outdoor ornaments or decorations (within reason), BBQ.

### *STAIRWELLS*

The alcoves under the stairways are not storage areas and must be kept clean and free of all items at all times. Please do not dump trash in these areas.

Tenant Signature: *John McKnight*          Date: 4-27-18

Tenant Signature: _____          Date: _____

**EXHIBIT 7 - Page 27 of 48**
GMS 001184



**Grand Management Services**
**420 Park Avenue, Coos Bay, OR. 97420**
**541 269-5561 phone/ 541-435-7132 fax/711 TTY**
www.grandmgmt.com

# Laundry Room Rules

**Apartment Complex ____Evergreen Gardens____**

## \* <u>Use Correct Change in Machines.  Do not Use Bent or Canadian Coins!</u> \*

1.  Laundry Room is for Tenants use <u>ONLY!</u>

2.  Operation instructions are written on each machine.

3.  Do not wash or dry rubber backed rugs.

4.  Do not use <u>DYE</u> in machines.

5.  Do not wash excessively dirty, greasy or oily items.

6.  Clean dryer lint traps after <u>each use.</u>

7.  Clean machines, counter, and floor after each use of laundry room.

8.  Do not remove property or furniture from laundry room.

9.  Do not bring discarded items from your apartment to the laundry room.

10. <u>Please remove your clothes immediately after machines stop.</u>  If you do not, the next tenant has the right to remove your clothes from the washer or dryer and put them on the counter or in your laundry basket.

11. The laundry room is for your convenience and comfort.  Please help us keep it clean, neat and free of clutter.

12. <u>Tenants or guests are not allowed to loiter or play in or around the laundry room.</u>

13. Do not <u>over-fill</u> the washers or dryers with clothing.  This causes costly repairs plus your clothes will not be cleaned properly.

14. <u>TENANTS CAN LOSE THEIR LAUNDRY ROOM PRIVILEGES IF THEY DO NOT FOLLOW THE LAUNDRY ROOM RULES.</u>

_John McKnight_                    _4-27-18_
Signature                          Date

**EXHIBIT 7 - Page 28 of 48**
GMS 001185

VIOLENCE, DATING VIOLENCE
OR STALKING

CONFIDENTIAL

U.S. Department of Housing
and Urban Development
Office of Housing

OMB Approval No. 2502-0204
Exp. 6/30/2017

## Grand Management Services, Inc. (HP)

### Notice of Occupancy Rights under the Violence Against Women Act[1]

**To all Tenants and Applicants**

The Violence Against Women Act (VAWA) provides protections for victims of domestic violence, dating violence, sexual assault, or stalking. VAWA protections are not only available to women, but are available equally to all individuals regardless of sex, gender identity, or sexual orientation.[2] The U.S. Department of Housing and Urban Development (HUD) is the Federal agency that oversees that **Project Based HUD Section 8 and Rural Development 515 Housing or rental assistance** is in compliance with VAWA. This notice explains your rights under VAWA. A HUD-approved certification form is attached to this notice. You can fill out this form to show that you are or have been a victim of domestic violence, dating violence, sexual assault, or stalking, and that you wish to use your rights under VAWA."

**Protections for Applicants**

If you otherwise qualify for assistance under **Project Based HUD Section 8 and Rural Development 515 Housing or Rental Assistance,** you cannot be denied admission or denied assistance because you are or have been a victim of domestic violence, dating violence, sexual assault, or stalking.

**Protections for Tenants**

If you are receiving assistance under **Project Based HUD Section 8 and Rural Development 515 Housing or rental assistance,** you may not be denied assistance, terminated from participation, or be evicted from your rental housing because you are or have been a victim of domestic violence, dating violence, sexual assault, or stalking.

---

[1] Despite the name of this law, VAWA protection is available regardless of sex, gender identity, or sexual orientation.

[2] Housing providers cannot discriminate on the basis of any protected characteristic, including race, color, national origin, religion, sex, familial status, disability, or age. HUD-assisted and HUD-insured housing must be made available to all otherwise eligible individuals regardless of actual or perceived sexual orientation, gender identity, or marital status.

Form **HUD-91067**
**(9/2008)**

**EXHIBIT 7 - Page 29 of 48**
GMS 001186

Also, if you or an affiliated individual of yours is or has been the victim of domestic violence, dating violence, sexual assault, or stalking by a member of your household or any guest, you may not be denied rental assistance or occupancy rights under **Project Based HUD Section 8 and Rural Development 515 Housing or rental assistance** solely on the basis of criminal activity directly relating to that domestic violence, dating violence, sexual assault, or stalking.

Affiliated individual means your spouse, parent, brother, sister, or child, or a person to whom you stand in the place of a parent or guardian (for example, the affiliated individual is in your care, custody, or control); or any individual, tenant, or lawful occupant living in your household.

**Removing the Abuser or Perpetrator from the Household**

HP may divide (bifurcate) your lease in order to evict the individual or terminate the assistance of the individual who has engaged in criminal activity (the abuser or perpetrator) directly relating to domestic violence, dating violence, sexual assault, or stalking.

If HP chooses to remove the abuser or perpetrator, HP may not take away the rights of eligible tenants to the unit or otherwise punish the remaining tenants. If the evicted abuser or perpetrator was the sole tenant to have established eligibility for assistance under the program, HP must allow the tenant who is or has been a victim and other household members to remain in the unit for a period of time, in order to establish eligibility under the program or under another HUD housing program covered by VAWA, or, find alternative housing.

In removing the abuser or perpetrator from the household, HP must follow Federal, State, and local eviction procedures. In order to divide a lease, HP may, but is not required to, ask you for documentation or certification of the incidences of domestic violence, dating violence, sexual assault, or stalking.

**Moving to Another Unit**

Upon your request, HP may permit you to move to another unit, subject to the availability of other units, and still keep your assistance. In order to approve a request, HP may ask you to provide documentation that you are requesting to move because of an incidence of domestic violence, dating violence, sexual

**EXHIBIT 7 - Page 30 of 48**
GMS 001187

assault, or stalking. If the request is a request for emergency transfer, the housing provider may ask you to submit a written request or fill out a form where you certify that you meet the criteria for an emergency transfer under VAWA. The criteria are:

**(1) You are a victim of domestic violence, dating violence, sexual assault, or stalking.**
If your housing provider does not already have documentation that you are a victim of domestic violence, dating violence, sexual assault, or stalking, your housing provider may ask you for such documentation, as described in the documentation section below.

**(2) You expressly request the emergency transfer.** Your housing provider may choose to require that you submit a form, or may accept another written or oral request.

**(3) You reasonably believe you are threatened with imminent harm from further violence if you remain in your current unit.** This means you have a reason to fear that if you do not receive a transfer you would suffer violence in the very near future.

**OR**

**You are a victim of sexual assault and the assault occurred on the premises during the 90-calendar-day period before you request a transfer.** If you are a victim of sexual assault, then in addition to qualifying for an emergency transfer because you reasonably believe you are threatened with imminent harm from further violence if you remain in your unit, you may qualify for an emergency transfer if the sexual assault occurred on the premises of the property from which you are seeking your transfer, and that assault happened within the 90-calendar-day period before you expressly request the transfer.

HP will keep confidential requests for emergency transfers by victims of domestic violence, dating violence, sexual assault, or stalking, and the location of any move by such victims and their families. HP's emergency transfer plan provides further information on emergency transfers, and HP must make a copy of its emergency transfer plan available to you if you ask to see it.

**Documenting You Are or Have Been a Victim of Domestic Violence, Dating Violence, Sexual Assault or Stalking**

Form **HUD-90066**2
**(09/2008)**

**EXHIBIT 7 - Page 31 of 48**
GMS 001188

If you fail or refuse to provide one of these documents within the 14 business days, HP does not have to provide you with the protections contained in this notice.

If HP receives conflicting evidence that an incident of domestic violence, dating violence, sexual assault, or stalking has been committed (such as certification forms from two or more members of a household each claiming to be a victim and naming one or more of the other petitioning household members as the abuser or perpetrator), HP has the right to request that you provide third-party documentation within thirty 30 calendar days in order to resolve the conflict.  If you fail or refuse to provide third-party documentation where there is conflicting evidence, HP does not have to provide you with the protections contained in this notice.

**Confidentiality**

HP must keep confidential any information you provide related to the exercise of your rights under VAWA, including the fact that you are exercising your rights under VAWA.

HP must not allow any individual administering assistance or other services on behalf of HP (for example, employees and contractors) to have access to confidential information unless for reasons that specifically call for these individuals to have access to this information under applicable Federal, State, or local law.

HP must not enter your information into any shared database or disclose your information to any other entity or individual.  HP, however, may disclose the information provided if:

- You give written permission to HP to release the information on a time limited basis.
- HP needs to use the information in an eviction or termination proceeding, such as to evict your abuser or perpetrator or terminate your abuser or perpetrator from assistance under this program.
- A law requires HP or your landlord to release the information.

VAWA does not limit HP's duty to honor court orders about access to or control of the property. This includes orders issued to protect a victim and orders dividing property among household members in cases where a family breaks up.

Form **HUD-900662**
**(09/2008)**

**EXHIBIT 7 - Page 32 of 48**
GMS 001189

HP can, but is not required to, ask you to provide documentation to "certify" that you are or have been a victim of domestic violence, dating violence, sexual assault, or stalking. Such request from HP must be in writing, and HP must give you at least 14 business days (Saturdays, Sundays, and Federal holidays do not count) from the day you receive the request to provide the documentation. HP may, but does not have to, extend the deadline for the submission of documentation upon your request.

You can provide one of the following to HP as documentation. It is your choice which of the following to submit if HP asks you to provide documentation that you are or have been a victim of domestic violence, dating violence, sexual assault, or stalking.

- A complete HUD-approved certification form given to you by HP with this notice, that documents an incident of domestic violence, dating violence, sexual assault, or stalking. The form will ask for your name, the date, time, and location of the incident of domestic violence, dating violence, sexual assault, or stalking, and a description of the incident. The certification form provides for including the name of the abuser or perpetrator if the name of the abuser or perpetrator is known and is safe to provide.

- A record of a Federal, State, tribal, territorial, or local law enforcement agency, court, or administrative agency that documents the incident of domestic violence, dating violence, sexual assault, or stalking. Examples of such records include police reports, protective orders, and restraining orders, among others.

- A statement, which you must sign, along with the signature of an employee, agent, or volunteer of a victim service provider, an attorney, a medical professional or a mental health professional (collectively, "professional") from whom you sought assistance in addressing domestic violence, dating violence, sexual assault, or stalking, or the effects of abuse, and with the professional selected by you attesting under penalty of perjury that he or she believes that the incident or incidents of domestic violence, dating violence, sexual assault, or stalking are grounds for protection.

- Any other statement or evidence that HP has agreed to accept.

Form **HUD-90066**2<br>**(09/2008)**

**EXHIBIT 7 - Page 33 of 48**
GMS 001190

**Reasons a Tenant Eligible for Occupancy Rights under VAWA May Be Evicted or Assistance May Be Terminated**

You can be evicted and your assistance can be terminated for serious or repeated lease violations that are not related to domestic violence, dating violence, sexual assault, or stalking committed against you. However, HP cannot hold tenants who have been victims of domestic violence, dating violence, sexual assault, or stalking to a more demanding set of rules than it applies to tenants who have not been victims of domestic violence, dating violence, sexual assault, or stalking.

The protections described in this notice might not apply, and you could be evicted and your assistance terminated, if HP can demonstrate that not evicting you or terminating your assistance would present a real physical danger that:

1) Would occur within an immediate time frame, and

2) Could result in death or serious bodily harm to other tenants or those who work on the property.

If HP can demonstrate the above, HP should only terminate your assistance or evict you if there are no other actions that could be taken to reduce or eliminate the threat.


**Other Laws**

VAWA does not replace any Federal, State, or local law that provides greater protection for victims of domestic violence, dating violence, sexual assault, or stalking. You may be entitled to additional housing protections for victims of domestic violence, dating violence, sexual assault, or stalking under other Federal laws, as well as under State and local laws.

**Non-Compliance with The Requirements of This Notice**
You may report a covered housing provider's violations of these rights and seek additional assistance, if needed, by contacting or filing a complaint with the **U.S. Department of Housing and Urban Development, Edith Green-Wendall Wyatt Federal Office, 1220 SW 3rd Avenue, Portland, OR 97204. Telephone (971) 222-2600.**

**For Additional Information**

You may view a copy of HUD's final VAWA rule at **81 FR 80724**.

Additionally, HP must make a copy of HUD's VAWA regulations available to you if you ask to see them.

Form <strong>HUD-900662</strong><br>(09/2008)

**EXHIBIT 7 - Page 34 of 48**
GMS 001191

CONFIDENTIAL

For questions regarding VAWA, please contact **U.S. Department of Housing and Urban Development, Edith Green-Wendall Wyatt Federal Office, 1220 SW 3rd Avenue, Portland, OR 97204.  Telephone (971) 222-2600.**

For help regarding an abusive relationship, you may call the National Domestic Violence Hotline at 1-800-799-7233 or, for persons with hearing impairments, 1-800-787-3224 (TTY).  You may also contact your local police department.

For tenants who are or have been victims of stalking seeking help may visit the National Center for Victims of Crime's Stalking Resource Center at https://www.victimsofcrime.org/our-programs/stalking-resource-center.

For help regarding sexual assault, you may contact your local police department.

Victims of stalking seeking help may contact your local police department.

**Attachment:**  Certification form HUD-5382

| | | |
|---|---|---|
| **CERTIFICATION OF DOMESTIC VIOLENCE, DATING VIOLENCE, SEXUAL ASSAULT, OR STALKING, AND ALTERNATE DOCUMENTATION** | **U.S. Department of Housing and Urban Development** | OMB Approval No. 2577-0286 Exp. 06/30/2017 |

Form **HUD-90066**2
**(09/2008)**

**EXHIBIT 7 - Page 35 of 48**
GMS 001192

CONFIDENTIAL

**Purpose of Form:** The Violence Against Women Act ("VAWA") protects applicants, tenants, and program participants in certain HUD programs from being evicted, denied housing assistance, or terminated from housing assistance based on acts of domestic violence, dating violence, sexual assault, or stalking against them. Despite the name of this law, VAWA protection is available to victims of domestic violence, dating violence, sexual assault, and stalking, regardless of sex, gender identity, or sexual orientation.

**Use of This Optional Form:** If you are seeking VAWA protections from your housing provider, your housing provider may give you a written request that asks you to submit documentation about the incident or incidents of domestic violence, dating violence, sexual assault, or stalking.

In response to this request, you or someone on your behalf may complete this optional form and submit it to your housing provider, or you may submit one of the following types of third-party documentation:

(1) A document signed by you and an employee, agent, or volunteer of a victim service provider, an attorney, or medical professional, or a mental health professional (collectively, "professional") from whom you have sought assistance relating to domestic violence, dating violence, sexual assault, or stalking, or the effects of abuse. The document must specify, under penalty of perjury, that the professional believes the incident or incidents of domestic violence, dating violence, sexual assault, or stalking occurred and meet the definition of "domestic violence," "dating violence," "sexual assault," or "stalking" in HUD's regulations at 24 CFR 5.2003.

(2) A record of a Federal, State, tribal, territorial or local law enforcement agency, court, or administrative agency; or

(3) At the discretion of the housing provider, a statement or other evidence provided by the applicant or tenant.

**Submission of Documentation:** The time period to submit documentation is 14 business days from the date that you receive a written request from your housing provider asking that you provide documentation of the occurrence of domestic violence, dating violence, sexual assault, or stalking. Your housing provider may, but is not required to, extend the time period to submit the documentation, if you request an extension of the time period. If the requested information is not received within 14 business days of when you received the request for the documentation, or any extension of the date provided by your housing provider, your housing provider does not need to grant you any of the VAWA protections. Distribution or issuance of this form does not serve as a written request for certification.

**Confidentiality:** All information provided to your housing provider concerning the incident(s) of domestic violence, dating violence, sexual assault, or stalking shall be kept confidential and such details shall not be entered into any shared database. Employees of your housing provider are not to have access to these details unless to grant or deny VAWA protections to you, and such employees may not disclose this information to any other entity or individual, except to the extent that disclosure is: (i) consented to by you in writing in a time-limited release; (ii) required for use in an eviction proceeding or hearing regarding termination of assistance; or (iii) otherwise required by applicable law.

<u>**TO BE COMPLETED BY OR ON BEHALF OF THE VICTIM OF DOMESTIC VIOLENCE, DATING VIOLENCE, SEXUAL ASSAULT, OR STALKING**</u>

1. **Date the written request is received by victim:** _____

2. **Name of victim:** _____

3. **Your name (if different from victim's):** _____

Form **HUD-90066**
**(09/2008)**

**EXHIBIT 7 - Page 36 of 48**
GMS 001193

**4. Name(s) of other family member(s) listed on the lease:** _____

_____

**5. Residence of victim:** _____

**6. Name of the accused perpetrator (if known and can be safely disclosed):** _____

_____

**7. Relationship of the accused perpetrator to the victim:** _____

**8. Date(s) and times(s) of incident(s) (if known):** _____
_____

**10. Location of incident(s):** _____

In your own words, briefly describe the incident(s):

_____

_____

_____

_____

This is to certify that the information provided on this form is true and correct to the best of my knowledge and recollection, and that the individual named above in Item 2 is or has been a victim of domestic violence, dating violence, sexual assault, or stalking. I acknowledge that submission of false information could jeopardize program eligibility and could be the basis for denial of admission, termination of assistance, or eviction.

Signature _John McKnight_    Signed on (Date) _4-27-18_

**Public Reporting Burden:** The public reporting burden for this collection of information is estimated to average 1 hour per response. This includes the time for collecting, reviewing, and reporting the data. The information provided is to be used by the housing provider to request certification that the applicant or tenant is a victim of domestic violence, dating violence, sexual assault, or stalking. The information is subject to the confidentiality requirements of VAWA. This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid Office of Management and Budget control number.

Form HUD-900662
(09/2008)

**EXHIBIT 7 - Page 37 of 48**
GMS 001194

| VIOLENCE, DATING VIOLENCE OR STALKING | U.S. Department of Housing and Urban Development Office of Housing | OMB Approval No. 2502-0204 Exp. 6/30/2017 |
|---|---|---|

# LEASE ADDENDUM

## VIOLENCE AGAINST WOMEN AND JUSTICE DEPARTMENT REAUTHORIZATION ACT OF 2005

| TENANT JOHN MCKNIGHT | LANDLORD EVERGREEN GARDENS | UNIT NO. & ADDRESS 11A |
|---|---|---|

This lease addendum adds the following paragraphs to the Lease between the above referenced Tenant and Landlord.

**Purpose of the Addendum**

The lease for the above referenced unit is being amended to include the provisions of the Violence Against Women and Justice Department Reauthorization Act of 2005 (VAWA).

**Conflicts with Other Provisions of the Lease**

In case of any conflict between the provisions of this Addendum and other sections of the Lease, the provisions of this Addendum shall prevail.

**Term of the Lease Addendum**

The effective date of this Lease Addendum is ___5-1-18_____. This Lease Addendum shall continue to be in effect until the Lease is terminated.

**VAWA Protections**

1. The Landlord may not consider incidents of domestic violence, dating violence or stalking as serious or repeated violations of the lease or other "good cause" for termination of assistance, tenancy or occupancy rights of the victim of abuse.
2. The Landlord may not consider criminal activity directly relating to abuse, engaged in by a member of a tenant's household or any guest or other person under the tenant's control, cause for termination of assistance, tenancy, or occupancy rights if the tenant or an immediate member of the tenant's family is the victim or threatened victim of that abuse.
3. The Landlord may request in writing that the victim, or a family member on the victim's behalf, certify that the individual is a victim of abuse and that the Certification of Domestic Violence, Dating Violence or Stalking, Form HUD-91066, or other documentation as noted on the certification form, be completed and submitted within 14 business days, or an agreed upon extension date, to receive protection under the VAWA. Failure to provide the certification or other supporting documentation within the specified timeframe may result in eviction.

_____    ____4-27-18____
Tenant                              Date

_____    ____4-27-18____
Landlord                            Date

### Tenant Information Update Form

Dear residents, we are in the process of updating our records. Please fill out this form and return to the office within ten business days. Thank you for you time and cooperation.

Complex Name: _____

Your Name: _JOHN McKNIGHT_

Please list all household members: _SELF_

_____

Mailing Address: _3810 12th ST. #11A_

_TILLAMOOK, OR 97141_

E-mail address: _N/A_

Home Phone: _N/A_

Cell Phone: _███████_

Work Number: _N/A_

Message Number: _N/A_

Emergency Contact Name: _███████_

Emergency Contact Number: _███████_

Is this person allowed in your apartment in the case of an emergency? Yes ☒  No ☐

List any Pets: _N/A_

In the event of an emergency, who is authorized to remove your pet? Name and Contact Info:

_N/A_

_John McKnight_     _JOHN McKNIGHT_     _4-27-18_
Signature             Print Name           Date

**EXHIBIT 7 - Page 39 of 48**
GMS 001196



**Grand**
management

Grand Management Service
420 Park Avenue, Coos Bay, OR. 97420
541-269-5561 Phone / 269-2481 Fax /711 TTY
www.grandmgmt.com

## LEASE ADDENDUM FOR DRUG-FREE HOUSING

In consideration of the execution or renewal of a lease of the dwelling unit identified in the lease, owner and tenant agree as follows:

1.  Tenant, any member of the tenant's household, or a guest or other person under the tenant's control shall not engage in criminal activity. This includes drug-related criminal activity, on or near project premises. "Drug-related criminal activity" means the illegal manufacture, sale, distribution, use or possession with the intent to manufacture, sell distribute, or use of a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802).

2.  Tenant, any member of the tenant's household, or a guest or other person under the tenant's control shall not engage in any act intended to facilitate criminal activity, including drug-related criminal activity, on or near project premises.

3.  Tenant or members of the household will not permit the dwelling unit to be used for, or to facilitate, criminal activity, including drug-related criminal activity, regardless of whether the individual engaging in such activity is a member of the household or guest.

4.  Tenant or members of the household will not engage in the manufacture, sale, or distribution of illegal drugs at any location whether near project premises or otherwise.

5.  Tenant, any member of the tenant's household or a guest or other person under the tenant's control shall not engage in acts or awareness of threats of violence, including but not limited to, the unlawful discharge of firearms, on or near project premises.

6.  VIOLATION OF THE ABOVE PROVISONS SHALL BE A MATERIAL VIOLATION OF THE LEASE AND GOOD CAUSE FOR TERMINATION OF TENANCY. A single violation of any of the provision of this addendum shall be deemed a serious violation and a material non-compliance with the lease. It is understood and agreed that a single violation shall be good cause for termination of the lease. Unless otherwise provided by law. **Proof of violation shall not require criminal conviction, but shall be by a preponderance of the evidence.**

7.  In case of conflict between the provision of this addendum and any other provisions of this lease, the provisions of the addendum shall govern.

8.  This lease addendum in incorporated into the lease executed or renewed this day between the Owner and Tenant

_John McKnight_
Tenant                                    Date
                        4-27-18

_Cindy D. Fargher_
Resident Manager/Agent/Owner

| Tenant | Date |
| --- | --- |

Date

**EXHIBIT 7 - Page 40 of 48**
GMS 001197

CONFIDENTIAL



Home is better here

# Grand
management
services

**420 Park Avenue, Coos Bay, Or. 97420**
**541-269-5561 Phone / 435-7132 Fax / 711 TTY**
www.grandmgmt.com

## CAR REGISTRATION

For your safety and for our records, we ask that you please identify your vehicle/s that will be parked on your rental property or apartment complex. Due to the limited number of parking spaces that are provided for this property or complex, all residents are guaranteed one parking space per unit. If you have a second car and there are extra spaces for parking, see the manager and we will try and accommodate you.

If you plan to park on this property, please complete and return this form to the office. All vehicles must be registered if they are to be parked on the premises.

Date:  __05-01-2018__

| | | |
|---|---|---|
| ___Evergreen Gardens Apartments 3810 12th Street , Tillamook___ | | __11A__ |
| Property Name/Description | Address | Unit |

**Car/Vehicle #1**

| | | |
|---|---|---|
| _TOYOTA P/U_ | ███████ | _BLUE_ |
| Make | License No. | Color |

**Car/Vehicle #2**

| | | |
|---|---|---|
| _____ | _____ | _____ |
| Make | License No. | Color |

**Additional Vehicle/Boat/ATV or Recreational Equipment**

| | | |
|---|---|---|
| _____ | _____ | _____ |
| Make | License No. | Color |

| | |
|---|---|
| _John McKnight_ | __John McKnight_____ |
| Signature | Printed Name |



EXHIBIT 7 - Page 41 of 48
GMS 001198



**Grand Management Services, Inc.**
Professional Property Management
420 Park Avenue Coos Bay, Oregon 97420
Tel: 541-269-5561 Fax: 541-269-2481 TYY: 711
Website: www.grandmgmt.com



## GROUND RULES

Welcome Home! We have established basic ground rules at this housing development in order to allow our residents maximum use and pleasure from our facilities. These rules are an extension of the lease contract that you signed upon moving into this housing community. **Your signature indicates that you have read these provisions. Please read this document carefully before signing, and ask questions if there are any sections that you do not understand.**

**1. PARTIES.**

| TENANT | SITE MANAGER | MANAGEMENT AGENT |
|---|---|---|
| John McKnight Et, al | Cindy Fargher – Site Manager | Grand Management Services |
| 3810 12th Street #12D | 3810 12th Street | 420 Park Avenue |
| Tillamook, OR 97141 | Tillamook, OR 97141 | Coos Bay, OR 97420 |
| | | 541-269-5561 |

"Landlord" refers to the Landlord and/or the Management Agent as identified above. "Tenant" refers to the occupants of the household as identified as tenant above. Each tenant and all tenants are fully responsible for specific performance under this agreement. "Premises" refers to the tenant's apartment unit individually and the apartment complex "footprint", grounds, and total area.

**2. TENANT DUTIES.** Tenant is obligated to comply with the following duties and rules:

A. <u>Cleaning.</u>   Tenant must keep his/her apartment clean at all times. Tenant shall be financially liable for any violation of health or safety codes caused by tenant or a person in tenant's control. The Owner/Agent definition of "clean" shall be the final definition.

B. <u>Safety.</u> Tenant shall not use the apartment for any purpose considered dangerous to health or safety, of persons or property. Tenant shall take particular caution again cigarettes and other fire hazards. Tenant shall not store flammable or hazardous materials.

1. <u>Smoking.</u> This property has been designated as a smoke free property. Smoking is not allowed inside any apartments, outside on any common areas, parking lots, entryways, patios, balconies, or public buildings, including the community room, laundry, and restrooms. You must go <u>off</u> of the property and at least 25 feet away from any building to smoke. Failure to comply with this policy will be a violation of the property ground rules and your lease agreement. The reason for this policy is due to the fact that exposure to second hand smoke causes adverse health outcomes and we are encouraging smoke free policies that pertain to our buildings, grounds and common areas. Within their units, residents are responsible for enforcing the policy among inhabitants, guests and visitors.

2. <u>Guns and Explosives.</u> Use of firearms of any type, caliber or description, or bows and arrows is prohibited anywhere within or on the project grounds. Firearms shall not be displayed in public on the grounds nor shall any tenant or visitor point a firearm at anyone from within an apartment unit or threaten anyone with the use of a firearm. The use of any type of explosive, including firecrackers or fireworks, is prohibited at this housing community.

3. <u>Alcohol in Public Places.</u> Alcoholic beverages may not be consumed or publicly displayed in the common areas of the complex. If alcoholic beverages are consumed on the front porch or back porch, they must be inconspicuously consumed from colored glasses or cups and not from the actual container. Beverage containers may not be thrown onto the grounds and must be properly disposed of.

C. <u>Garbage.</u> Tenant must regularly dispose of garbage in a sanitary manner. Garbage shall be bagged before placement in the garbage receptacles provided by the landlord. If tenant fails to properly dispose of garbage, tenant will pay for all costs of pest extermination or receptacle cleaning. All boxes and bulky materials must be broken down before depositing into a receptacle. Do not place any large items such as furniture, mattresses, etc. in or along the sides of the receptacle area. Arrange to have these articles picked up and hauled from the premises at tenant's expense. Garbage shall not be placed in the recycling bin. If recycling is offered at this complex, tenants shall be encouraged to participate in recycling and will be provided with information regarding how to prepare recyclables for pickup.

D. <u>Use of Property.</u> Tenant must properly use our property, including heaters, plumbing, appliances, and any other items. Tenant shall properly report leaky or defective faucets at once. Expense or damage caused by stoppage of waste pipes or overflow of bathtubs, toilets or wash basins must be paid by the tenant as well as any damage to the building or furnishing other than ordinary wear and tear. In severe weather, reasonable precautions will be taken by tenant (ex. Leave water dripping, keep heat on) to keep pipes from freezing. Report immediately, in writing, all malfunctions of equipment, failure of essential services, or need for repair. Tenant shall not tamper with the

**EXHIBIT 7 - Page 42 of 48**
GMS 001199

smoke detector, heaters, refrigerator, locks, appliances, hot water heater, etc., and shall not make any alterations of any nature to the premises. Tenant agrees to use the premises only as a dwelling. Disorderly conduct shall be grounds for eviction. Tenant shall restrict all noise to a reasonable level. Tenants and their guests shall conduct themselves in a manner that will not disturb their neighbors' peaceful enjoyment of the premises.

E. Utilities. Tenant must not waste the utilities paid by landlord.

F. Your Appliances. Tenant must not install a dishwasher, washing machine, dryer, air conditioner, etc; This includes portable appliances such as a portable dishwasher or washing machine.

G. Fixtures. Tenant must not attach anything to the apartment building, or construct a fence, without landlord's prior written approval; prior written approval will not be unreasonably withheld. Tenant must remove any such items when tenant leaves, without damage to landlord's property, unless landlord permits it to remain. The use of air conditioners must be approved, in writing, by the landlord and are subject to installation and use restrictions established by management.

H. Alterations. Tenant must not alter, paint, or in any way change the property, including changing of door locks or installing of additional locks without landlord's prior written approval; prior written approval will not be unreasonably withheld.

I. Locks and Keys. Doors of tenant's dwelling should be kept locked. Tenant shall notify landlord in writing if locks fail to operate. The landlord will not be liable or responsible in any way for loss or damage to articles or property belonging to tenant. Tenant should maintain fire and theft insurance for his/her personal property. The tenant may not install additional locks on outside doors or change the key cylinders. Tenant is responsible for maintaining door keys. In the event of loss of keys, contact the site manager. The manager can make you additional keys and charge you for the cost of making the additional keys. If you lock yourself out of your apartment, during business hours, the manager can let you in. During non-business hours or on the weekend, you will need to call a locksmith. It may be a good idea to keep an extra key with a trusted friend or relative, in cases when you accidentally lock yourself out of your unit.

J. Waterbeds, Aquariums, Pianos or Organs. No waterbeds, aquariums, pianos or organs are allowed without written consent of the landlord.

K. Pets. Tenant must not have pets or other animals without landlord's prior written approval, except that a tenant may keep a seeing eye, hearing ear animal or other assistance animal as required by such tenant. Tenant shall be permitted to have an assistance animal on the premises only with the prior written approval of landlord. Written consent shall only be provided when tenant has furnished documentation from a doctor, other medical professional, or a non-medical agency that a pet is medically necessary for the well being of the tenant or household member. Form of documented need is available from the manager and must be completed and sign by a qualified person. . If tenant keeps a dog, cat, or other pet on the premises in violation of the lease, landlord may deliver a written notice to tenant specifying the violation and stating that the lease will terminate on a date not less than ten (10 days after receipt of the notice unless tenant removes the pet from the premises prior to the date specified.

L. Drape or Curtain Rod. Any drape or curtain rod bracket or track or blind, or any other article, affixed by tenant to the premises, must receive prior written consent and shall become part of the real property of the landlord and shall not be removed by tenant without prior written consent of the landlord. All window coverings must have a white lining facing toward the outside unless otherwise provide by management.

M. Woodwork, Walls and Floors. Nails, tacks, brads or screws shall not be driven into the woodwork, walls, or floors of said premises, nor shall there by any boring or marring of the woodwork or plaster, without prior written consent of the landlord. The landlord approves, within reason, the use of small finish nails (5d or smaller) and picture hangers to hang pictures on the walls. No tape or putty shall be applied to walls or woodwork. "Glow in the dark decals" and "planetary stars" shall not be applied to walls or ceilings. These items may be applied to paper or felt, which can then be attached to the structure with a small fastener in each corner.

N. Satellite Dishes and Extra Cable Hookups. The tenant must have the prior written consent of the landlord before installing a satellite dish, external antennae, or additional cable outlets. The landlord will insist upon the professional installation of these devices and the installation location will be restricted such that no external devices may be attached to the building or roofs of the structures (installation in shrubbery bed areas is preferred). Typically, if a tenant wishes to have satellite television, the satellite dish must be affixed to a 2x4 piece of wood and cemented in a flower pot. Another option, is to have the satellite dish affixed to a 2x4 and driven into the flower beds. Under no circumstances may the dish be attached in any way to the roof or siding of the building.

O. Signs, Advertisements, and Notices. No signs, advertisements, notices, door plates or other similar devices shall be inscribed, painted, engraved or affixed to any part of the outside of said premises.

P. Smoke Detectors. Tenant hereby acknowledges the presence of a smoke detector in good working condition in the rental unit. Tenant acknowledges to have been instructed in how to test this detector and is aware that tenant is responsible for testing this detector at least once a month, but preferably every week. Tenant will notify the landlord if the smoke detector is not operating. The landlord may conduct quarterly inspections to make sure smoke detectors are operating properly.

Q. Bikes, Trikes, Remote Control Cars, Toys. No toys, games, bicycles, tricycles, sports equipment, or other items shall be left unattended in parking lots or on sidewalks. Tenant is not allowed to store personal belongings in entryways and stairways. All items must be stored in the unit, when not in use, except that bicycles may be placed in bicycle racks, if provided. Toys and other personal items that are left unattended in common areas may be removed by the manager, placed in temporary storage and ultimately disposed of within ten days if not claimed by tenant. Skateboards, roller blades, scooters, remote control cars, etc... are not permitted on the apartment property.

R. Patios and Decks. Patios and entrances to apartments are to be kept clean and free of debris. Only patio type furniture and planters are allowed on patios or decks. No carpet or astro-turf may be placed on the deck or patio. There will be a limit of 6 plants or planters on a tenant's patio area and these planters shall not exceed 12" in diameter and may not block the entrance to the doorway. No plants or pots or decorative items may be placed on a handrail ledge. Pots or planters must be raised off the surface of decking to allow water drainage. During the winter months, planters and pots must be emptied and stored off the deck. Tarps or plastic may not be tacked to the building or used to enclose a patio. Storage of household items, including refrigerators and freezers, is not permitted outside of units.

S. Wading Pools. Wading pools are only permitted with the prior consent of the landlord and are subject to restrictions. Pools are for daytime use only between the hours of noon and 7 p.m. Pools will be filled with water only. Pools must be drained and removed when unattended. Pools must be flexible, plastic type, portable, weigh less then ten pounds, have an overall width less than 8 feet, and shall not exceed a water depth of twelve inches.

T. Parking Areas, Automobiles, Other Vehicles. All vehicles must be parking in specified areas only. Vehicles, other than automobiles, including boats, trailers, all terrain vehicles, etc... may not be parked on the premises without the prior written consent of the landlord. Car repairs are not permitted on site. Disabled automobiles that are not repaired within three days after written notice is posted on the car or

notice given to the tenant will be towed away at owner's expense. All automobiles must have the proper number of wheels and tires (properly inflated). All automobiles will be licensed, insured, and legal for road use.

U. Prior Approval. The following items have our prior written approval (we will describe the time, date of approval and place our initials below):

_____

_____

V. Exceptions. If landlord gives special permission or fails to enforce these duties against some tenants, it does not mean that they do not bind tenant. If tenant has any problems or concerns, please discuss them with landlord.

**3. TENANT CONDUCT**. Tenant is obligated to act in a caring and compassionate manner:

A. Damage to Apartment/Property. Tenant must not damage or remove any of landlord's property or permit any family member or visitors, whether invited or not invited onto property, to do so. Tenant will pay for any damages caused by tenant, tenant's family, or any visitor to property, whether or not the visitor in invited or not invited.

B. Nuisance and Curfew. Tenant shall not do anything which interferes with the right of other tenants to have a safe, healthy and comfortable place to live, or which disturbs the quiet enjoyment of their apartments. Quiet time shall be from 10 p.m. to 8 a.m. daily, during which time additional noise restrictions shall be enforced. Noise shall not be heard outside or beyond the tenant's apartment during the designated quiet time. Beyond this time, noise levels must be reasonable. Responsibility for reporting disturbances to law enforcement agencies is assumed by tenants. Do not call the Site Manager in the middle of the night to report a disturbance – call the police directly and then report the incident to the manager during normal business hours.

C. Outrageous Conduct. Landlord may immediately terminate the lease and take possession after twenty-four (24) hours written notice if:

(1) Tenant, or anyone visiting in the unit, or the tenant's pet threatens to immediately inflict personal injury or actually inflicts substantial personal injury upon the landlord or the landlord's employees or any other tenant or neighbor living in the immediate vicinity,

(2) Tenant, someone in tenant's control, or tenant's pet intentionally inflicts any substantial damage to the premises, or

(3) Tenant has vacated the premises, and a person is holding possession, contrary to a written lease agreement that prohibits subleasing the premises without written permission of the landlord and the landlord has not knowingly accepted rent from the person in possession, or

(4) Tenant, or visitor to tenant's premise commits any act that is outrageous in the extreme. An "act outrageous in the extreme" includes, but is not limited to, the following acts that tenant or visitor to tenant's premise has in fact committed on the premises or in the immediate vicinity of the premises:

[a] Prostitution or promotion of prostitution, as described in ORS 167.007 and 167.012.

[b] Manufacture or delivery of a controlled substance, as described in ORS 475.005, but including delivery as described in ORS 475.9992 (2)(b).

[c] Intimidation, as described in ORS 166.165, or

[d] Burglary, as described in ORS 164.225.

With regard to "acts outrageous in the extreme" as described in subsection "b" of this section, an act can be proven to be "outrageous in the extreme" even if it is one that does not violate a criminal statute. In addition, notwithstanding the reference in subsection "b" of this section to existing criminal statutes, the landlord's standard of proof in an action for possession under this subsection remains the civil standard, proof by a preponderance of the evidence.

D. Illegal Controlled Substances. It is understood that the use, attempted use, or possession, manufacture, sale, or distribution of an illegal controlled substance (as defined by local, State, or federal law) while in or on any part of this apartment complex is an illegal act. It is further understood that such action is a material lease violation. Such violations (hereafter called a "drug violation") may be evidenced upon the admission to or conviction of a drug violation.

The landlord may require any tenant or other members of the tenant household occupying the unit (or other person outside the tenant household who is using the unit) who commits a drug violation to vacate the leased unit permanently, within timeframes set by the landlord, and not thereafter enter upon the landlord's premises or the lessee unit without the landlord's prior consent as a condition for continued occupancy by members of the tenant household. The landlord may deny consent for entry unless the person agrees to not commit a drug violation in the future and is either actively participating in a counseling or recovery program, complying with court orders related to a drug violation, or completed a counseling or recovery program.

The landlord may require any tenant to show evidence that any member of the tenant household occupying the unit, who committed a drug violation, agrees to not commit a drug violation in the future, and to show evidence that the person is either actively seeking or receiving assistance through a counseling or recovery program, complying with court orders related to a drug violation, and has completed a counseling or recovery program within timeframes specified by the landlord as a condition for continued occupancy in the unit. Should any person occupying the unit commit a further drug violation the landlord may require the person to be severed from tenancy as a condition for continued occupancy by the tenant. If a person vacating the unit, as a result of the above policies, is one of the tenants, the person shall be severed from the tenancy and the lease shall continue among any other remaining tenants and the landlord.

Should any of the above provisions governing a drug violation be found to violate any of the laws of the land the remaining enforceable provisions shall remain in effect. The provisions set out above do not supplant any rights of tenants afforded by law.

E. Home Business and Soliciting. The tenant shall not use the premises for any other purpose other than residential living. Tenant upon the premises can conduct no selling of goods, no yard sales, and no business operations. No door-to-door soliciting (sales, promotion, advertising, etc…) is permitted without the prior written approval of management personnel.

F. Absences from Premises. I understand that I must promptly notify the landlord of any extended absences and that if I do not personally reside in the unit for a period exceeding 60 consecutive days, for reasons other than health or emergency, landlord may take the appropriate steps to terminate my tenancy.

G. Guests. Anyone who stays in the apartment and is not listed on this lease will be treated as a guest. The apartment is to be used only as tenant's private dwelling, and tenant may not sublease or take in lodgers. If a guest stays longer than 14 days and/or nights in a 45-day period,

**EXHIBIT 7 - Page 44 of 48**

GMS 001201

CONFIDENTIAL

that guest will be considered an unauthorized household member and the tenant will be in violation of the lease agreement. An exception to the fourteen (14) day limit will be granted when a household member requires care during physician certified illness or recuperation from illness or injury. Written permission may be obtained from the landlord for this exception. The landlord reserves the right to control the use of all common areas. Non-residents may be directed to leave the property and may be barred from returning to the premises when that person either substantially interferes with the quiet enjoyment, comfort or convenience of any resident or who damages, defaces, or destroys any property belonging to the complex, approved residents or guests, or employees.

H. Abuse of Management Personnel. Verbal abuse (including yelling or swearing), mental abuse, or physical abuse towards the resident manager, management agency or personnel, maintenance personnel, other tenants, neighbors, guests, or other persons is expressly prohibited and will lead to the termination of tenancy immediately upon the first occurrence.

**4. MAINTENANCE**. Basic rules of maintenance, tenant responsibilities, and procedures for requesting maintenance are as follows:

A. Maintenance Requests. All requests for maintenance must be in writing. Tenant shall request a "Maintenance Request Form" from the Manager, or secure a form online. Tenant will be asked to specifically identify the problem and indicate the best time that a repair can be completed and also indicate whether the maintenance individual may enter in the tenant's absence.

B. Windows. The tenant will be held responsible for window breakage, unless such breakage can be evidenced to be caused by something or someone directly under the control of management.

C. Plumbing. The landlord will repair most maintenance items at no charge to the tenant and the tenant is encouraged to report all maintenance problems, however minor. The tenant will be held financially responsible for stoppages or breakages due to the negligence of the tenant or the tenant's guests.

D. Electrical. Tenant shall not overload electrical outlets by adding additional multi-electrical strips. Tenant shall never leave the apartment with the stove or other small appliances turned on. The use of portable heaters is not permitted.

E. Cleaning, Floors, Countertops, Etc... Tenant must keep the unit clean and sanitary at all times.

F. Laundry Facilities. Laundry facilities may be provided as a convenience for residents. Do not leave clothes in the washing machines and dryers after the cycle is completed. Please measure your detergent carefully to prevent suds from overflowing and spilling onto the floor. Do not use machines for dyeing clothes. Laundry detergent boxes that are empty need to be properly broken down, folded, and placed in the garbage receptacles. Please keep laundry door closed to prevent heat loss in cold weather. The landlord is not responsible for lost, damaged, or stolen articles. The tenant is asked to notify management if a machine is inoperable. The use of the laundry machines is at the risk of the tenant -- the landlord shall not provide refunds for lost quarters or for the improper operation or unsatisfactory performance of the laundry machines.

**5. TENANT GRIEVANCES AND APPEAL.** If tenant has a grievance, tenant has the right to request a hearing. Grievance forms are available in the community room of certain complexes, or from the manager or from the landlord. A hearing request may be sent to: Kristin Smith @ *Grand Management Services, 420 Park Avenue, Coos Bay, Oregon 97420.* In tenant's request, tenant should explain tenant's interpretation of the circumstances surrounding the appeal or grievance. Tenant should attach any information supporting the grievance. Within 10 days of the receipt of the grievance, a meeting will be held by the landlord to review your request.

**6. SIGNATURE CLAUSE.** I/We certify that I/we are legally capable, have read this document, and agree to be bound by its provisions. The parties have executed this document on the date first written below. I/We further agree that we have read and agree to be bound by any signed attached agreement that is a part of this document and the residential lease.

MANAGEMENT AGENT (Representing the Landlord)

_Cindy Fargher_
Signature
Cindy Fargher
Printed Name
_4-27-18_
Date

TENANT

Signature

Printed Name

Date

TENANT

_John McKnight_
Signature
John McKnight
Printed Name
_4-27-18_
Date

TENANT

Signature

Printed Name

Date

Grand Management Services Inc. is an equal opportunity provider. This institution is an equal opportunity provider and employer. If you wish to file a civil rights program complaint of discrimination, complete the USDA Program discrimination complaint form, found online at http://www.ascr.usda.gov/complaint filing cust.html, or at any USDA office, or call (866) 632-9992 to request the form. Send your completed complaint form or letter to us by mail at U.S. Department of Agriculture, Director, Office of Adjudication, 1400 Independence Avenue, S.W., Washington, D.C. 20250-9410 by fax (202) 690-7442 or email at program.intake@usda.gov.

Ground Rules (Rev 03/14)

**EXHIBIT 7 - Page 45 of 48**
GMS 001202

## ADDENDUM # 1 TO GROUND RULES
### GRILLING AT ALL PROJECTS

The following safety tips will be adhered to in their entirety.

- Barbeque grills, hibachis, smokers, turkey fryers, and similar cooking devices may only be used outside. Using them indoors or in any enclosed space poses a fire hazard and exposes you and your family to deadly gases. In addition, damages to your apartment are your responsibility, and greases, oils, and drippings create severe damages that become your responsibility.
- Keep the grill, smoker, hibachi, turkey fryer, or other device away from siding, deck railings, and out from under eaves or overhanging branches according to the manufacturer's instructions, and using good common sense.
- Grills, smokers, hibachis, turkey fryers, etc. should never be used on a porch or balcony, including any porch or balcony on the upper level of a building.
- Maintain a three-foot safe-zone around your grill/cooking device. This will keep kids and pets safe.
- Periodically remove grease or fat buildup from catch-trays to prevent it from being ignited by a hot grill.
- Never leave the grill, smoker, turkey fryer, or other cooking device unattended.
- For propane grills, make sure to check the propane cylinder hose for leaks. A light soap-and-water solution applied to the hose will reveal escaping propane quickly by releasing bubbles.
- Only use proper starter fluid for charcoal grills. Store the charcoal starter fluid out of the reach of children and away from heat sources.
- Never add charcoal starter fluid to coals or kindling that has already been ignited.
- Make sure you dispose of ashes properly. Ashes may not be scattered on the grounds of the apartment complex. Even though ashes may feel cool to the touch, treat them as if they are hot. Soak them with water and place them in a metal container with a tight-fitting lid. Store the container away from things that can burn. Do not store ashes on a wooden deck or walkway.

MANAGEMENT AGENT (Representing the Landlord)

Signature: *Cindy D. Fargher*

Printed Name: *Cindy D. Fargher*

Date: *4-27-18*

TENANT

Signature:

Printed Name:

Date:

TENANT

Signature: *John McKnight*

Printed Name: *JOHN MCKNIGHT*

Date: *4-27-18*

TENANT

Signature:

Printed Name:

Date:

Ground Rules (Rev 03/14)

EXHIBIT 7 - Page 46 of 48
GMS 001203

CONFIDENTIAL

# RELEASE OF INFORMATION AUTHORIZATION

I authorize the Employment Division, State of Oregon, to release to:

> USDA RURAL DEVELOPMENT
> RURAL HOUSING SERVICE
> 625 SE SALMON AVENUE, SUITE 5
> REDMOND, OREGON 97756

Information from my records on file with the Employment Division.  I understand that this authorization will be in effect for the term of assistance received from Rural Development

_____          ████████████
Signature                                      Social Security Number



John R. McKnight_____          _4-27-18_____
Name (typed or printed)                        Date




Evergreen Gardens Apartments_____          _____#11A_____
Apartment Name                                 Apartment Number




☐  This tenant is being added to an existing household.

**X**  This is a new household. Former tenants have vacated.

**EXHIBIT 7 - Page 47 of 48**
GMS 001204



Grand Management Services
420 Park Avenue, Coos Bay, OR. 97420
541-269-5561 Phone / 541-435-7132 Fax /711 TTY
www.grandmgmt.com

## NON-SMOKING POLICY

Evergreen Gardens Apartment complex and property became non-smoking as of January 1, 2012

**This policy requires you and your guests to go off of the property and at least 25 feet away from any building to smoke.  It also designates the entire property as non-smoking so you will not be allowed to smoke inside any apartments, outside on any common areas, parking lots, entryways, patios, balconies, or public buildings, including the community room, laundry, and restrooms.**

Violation of the above provision shall be a material violation of the lease and good cause for termination of tenancy. It is understood and agreed that a single violation shall be good cause for termination of the lease.

This rule in incorporated into the lease executed or renewed this day between the Owner and Tenant

_John McKnight_  _4-27-18_ _____
Tenant Signature        Date              Tenant Signature            Date

___John McKnight_____          _____
Printed Name                                      Printed Name

Unit: _____11A_____

_Cindy D. Fargher_
Resident Manager/Agent/Owner                    Date

**EXHIBIT 7 - Page 48 of 48**
GMS 001205